IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| STURGIS MOTORCYCLE RALLY, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> RUSHMORE PHOTO & GIFTS, INC., ) <br> JRE, INC., CAROL NIEMANN, ) <br> PAUL A. NIEMANN, and ) <br> BRIAN M. NIEMANN, ) <br> ) <br> Defendants. ) <br> _____) | Civil No. 11-5052 <br><br> **PLAINTIFF'S MEMORANDUM IN RESISTANCE TO DEFENDANTS' MOTION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUCTION** |

COMES NOW Plaintiff Sturgis Motorcycle Rally, Inc. ("SMRi"), by and through its undersigned counsel of record, and respectfully submits the following Memorandum In Resistance To Defendants' Motion For Temporary Restraining Order And Temporary Injunction.

**INTRODUCTION AND BACKGROUND**

The Complaint in this matter was filed June 22, 2011. This is an action for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114 and 1125, for false advertising under The Lanham Act, 15 U.S.C. § 1125(a)(1)(B), for trademark dilution under the Federal Trademark Dilution Revision Act, 15 U.S.C. § 1125(c), for violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), for unfair competition and trademark infringement under the common law of South Dakota, for trademark infringement in violation of SDCL Ch. 37-6 and related provisions, and for deceptive trade practices in violation of SDCL Ch. 37-24 and related provisions.

As alleged in the Complaint, SMRi and its predecessors-in-interest have organized, sponsored, marketed and promoted a motorcycle rally known in recent decades as the "Sturgis Motorcycle Rally," which takes place annually in and near the city of Sturgis, South Dakota and the Black Hills area of South Dakota and Wyoming. SMRi, together with its licensee, the City of Sturgis, South Dakota, has been the official sponsor of the Sturgis Motorcycle Rally for many years. A principal purpose of this annual event is to promote economic development in the City of Sturgis and the surrounding Black Hills area of South Dakota and Wyoming.

In promoting and otherwise supporting the Sturgis Motorcycle Rally, SMRi and its predecessors-in-interest have used, and permitted others to use, certain proprietary trademarks and service marks to identify the activities comprising this annual event and the goods sold in conjunction therewith. Those proprietary designations have included the terms STURGIS®, STURGIS MOTORCYCLE RALLY™, STURGIS RALLY & RACES™, TAKE THE RIDE TO STURGIS®, STURGIS BIKE WEEK® and a composite design mark which includes at its center and as the largest and most prominent textual component thereof the term STURGIS (the "STURGIS Composite Design Mark") (collectively, the foregoing shall be referred to herein as the "STURGIS Marks").

Over the last two decades, for example, SMRi, its predecessors and their respective licensees have sold tens of millions of dollars in licensed goods in conjunction with the STURGIS Marks. Sponsors of the Sturgis Rally have included Harley-Davidson, R.J. Reynolds, Coca-Cola of the Black Hills, GEICO and Jack Daniels.

As a result of royalties generated from the sale of licensed goods and sponsorships of the Sturgis Motorcycle Rally, SMRi and its predecessors have made substantial

contributions to the betterment of the Sturgis community, such as by making contributions to over 90 different causes and organizations, including the Meade County summer school program, Salvation Army's food cupboard, Sturgis Arts Council, Sturgis Jaycees, Sturgis Little League, Sturgis Police Department D.A.R.E. program, Sturgis Volunteer Fire Department, Black Hills Area Habitat for Humanity, Crisis Intervention Shelter, special projects of the City of Sturgis, and Girl Scouts of the USA. These activities have engendered a great deal of goodwill for SMRi, its predecessors, their respective sponsorship and promotion of the Sturgis Motorcycle Rally and for the STURGIS Marks.

It is undisputed that SMRi and its predecessors have obtained and/or acquired, and SMRi owns, a number of U.S. registrations for several of the STURGIS Marks. These registrations, attached to the Complaint, provide nationwide notice to others of the rights of SMRi and further strengthen the Sturgis Motorcycle Rally and the goodwill of SMRi associated with the STURGIS Marks. Such registrations are comprised of or include:

- STURGIS®, U.S. Reg. No. 3,923,284, for use in connection with an extensive array of goods and services;

- TAKE THE RIDE TO STURGIS®, U.S. Reg. No. 2,698,677, for use in connection with clothing, namely, t-shirts and sweatshirts and caps;

- STURGIS BIKE WEEK®, U.S. Reg. Nos. 2,070,955; 3,825,398; 3,818,703; 3,838,171; 3,911,270; 3,923,236 for use in connection with a wide variety of merchandise; and

- The STURGIS Composite Design Mark, U.S. Reg. No. 1,948,097, for use in connection with, *inter alia*, "promoting sports competitions and/or events of others, namely motorcycle rallies, exhibits and competitions" (shown below);

®.

(The foregoing registrations shall be referred to hereinafter as the "STURGIS Registrations").

The U.S. trademark registration certificates for the STURGIS Registrations, which STURGIS Registrations are owned by Plaintiff, are live and subsisting, and constitute evidence of the validity of each of the respective registered marks, Plaintiff's ownership of each of the registered marks, and Plaintiff's exclusive right to use each of the registered marks in commerce on or in connection with the goods and services set forth in each of the respective STURGIS Registrations. As a result of the longstanding use by SMRi and its predecessors of the STURGIS Marks, and the tremendous goodwill derived from such ownership and use of the STURGIS Marks and the ownership of the STURGIS Registrations, the STURGIS® mark is distinctive and has become a famous mark within the meaning of the U.S. Trademark Dilution Revision Act.

The Complaint also alleges that without authorization, license or consent from Plaintiff, the Defendants have been using reproductions, counterfeits, copies and colorable imitations of Plaintiff's registered STURGIS® mark, in connection with the sale, offering for sale, distribution and advertising of Defendants' goods, and in a manner which is likely to cause confusion, to cause mistake and to deceive consumers and potential consumers. Defendants are also alleged to have applied unauthorized reproductions, counterfeits, copies, and colorable imitations of Plaintiff's STURGIS® mark to the labels, signs, prints, packages, wrappers, receptacles and advertisements used and intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, and advertising of goods sold in this country, and which use is likely to cause confusion, to cause mistake and to deceive consumers and potential consumers.

By offering for sale, selling, distributing, marketing and advertising goods sold under the Defendants' Infringing Designations, Defendants are alleged to have intentionally violated the Plaintiff's rights in and to the STURGIS Marks and the STURGIS Registrations, and with the knowledge and intention that the use in commerce of Defendants' Infringing Designations were and are intended to cause confusion, to cause mistake, and to deceive consumers and potential consumers. Further and additional allegations raised against the Defendants are set forth in Plaintiff's Complaint.

### DEFENDANT'S MOTION SHOULD BE DENIED

Defendants' motions turn on its head the long-standing judicial support and oversight for holders and owners of federal trademarks *against* infringing parties. Injunctive relief in trademark actions favors trademark owners, not infringers and counterfeiters. In the area of federal trademark law, it is almost uniformly the trademark owner who seeks, and typically receives, injunctive relief against alleged infringers. *See*, e.g., Playboy Enterprises, Inc. v. Calvin Designer Label, 985 FSupp 1218, 1219 (ND Cal 1997), Nokota Horse Conservancy, Inc. v. Bernhardt, 666 FSupp2d 1073, 1080-81 (D.N.D 2009); Supports Design And Development, Inc. v. Schoneboom, 871 FSupp 1158 (N.D. Iowa 1995) (motion for temporary restraining order as to product sales granted, with civil seizure request denied). In the present case, it is the Defendants (alleged infringers and counterfeiters) who are seeking injunctive relief to forbid the enforcement of existing and presumptively valid federal trademarks. This requested relief is entirely inconsistent with the law of federal trademark enforcement and the strong policy considerations attending trademark ownership.

## FEDERAL RULE 65 AND DATEPHASE FACTORS

Pursuant to Rule 65(b), in determining whether a temporary restraining order should be granted, the Court must look to the specific facts shown by an affidavit to determine whether immediate and irreparable injury, loss, or damage will result to the applicant. It is well-established that applications for preliminary injunctions and temporary restraining orders are generally measured against the same factors. Wachovia Sec., L.L.C. v. Stanton, 571 F.Supp.2d 1014, 1031 (N.D.Iowa 2008). In determining whether preliminary injunctive relief should be granted, the Court is required to consider the factors set forth in Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir.1981). Whether a preliminary injunction or temporary restraining order should be granted involves consideration of "the movant's probability or likelihood of success on the merits, the threat of irreparable harm or injury to the movant absent the injunction, the balance between the harm to the movant and the harm that the injunction's issuance would inflict on other interested parties, and the public interest." Wachovia, 571 F.Supp.2d at 1032 (citing Dataphase Sys., Inc., 640 F.2d at 114).

It is well-established that the burden of establishing the necessity of a temporary restraining order or a preliminary injunction is on the movant. Baker Elec. Coop., Inc. v. Chaske, 28 F.3d 1466, 1472 (8th Cir.1994) (citing Modern Computer Sys., Inc. v. Modern Banking Sys., Inc., 871 F.2d 734, 737 (8th Cir.1989) (en Banc).) "No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction." Baker Elec. Coop., Inc., 28 F.3d at 1472 (quoting Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc., 815 F.2d 500, 503 (8th Cir.1987)); (Dataphase Sys., Inc., 640 F.2d at 114).

## A. PROBABILITY OF SUCCESS ON THE MERITS

When evaluating a movant's likelihood of success on the merits the court should "flexibly weigh the case's particular circumstances to determine 'whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined.'" Calvin Klein Cosmetics Corp., 815 F2d at 503 (quoting *Dataphase Sys., Inc.,* 640 F2d at 113). At this preliminary stage, the court does not decide whether the party seeking the temporary restraining order will ultimately win. PCTV Gold, Inc. v. SpeedNet, LLC, 508 F3d 1137, 1143 (8th Cir.2007). Although a temporary restraining order cannot be issued if the movant has no chance on the merits, "the Eighth Circuit has rejected a requirement as to a 'party seeking preliminary relief prove a greater than fifty per cent likelihood that he will prevail on the merits.' "*Id.* (quoting Dataphase Sys., Inc., 640 F2d *at* 113). The Eighth Circuit has held that of the four factors to be considered by the district court in considering preliminary injunctive relief, the likelihood of success on the merits is most significant." S & M Constructors, Inc. v. Foley Co., 959 F2d 97, 98 (8th Cir.1992).

*Presumption of Validity of Registered Mark*

Critical for purposes of Defendants' Motion, the trademarks owned by the Plaintiff are live and presumed to be valid. Registration, according to 15 U.S.C.A. § 1057(b), is prima facie evidence of the validity of the registration and of the registrant's exclusive right to use the mark on the goods and services specified. In the case of Curtis-Stephens-Embry Co. v. Pro-Tek-Toe Skate Stop Co., 199 F2d 407, loc.cit. 413, the 8th Circuit Court of Appeals said:

> 'Therefore, when a mark is registered upon the principal register under the Act of 1946, the presumption arises that the statutory prerequisites to its

7

> valid registration have been met, i.e. (1) its dissimilarity to other registered marks for similar goods, (2) its secondary meaning, (3) its 'ownership' by the applicant, and (4) the applicant's exclusive right to use the trade-mark in commerce in connection with the goods specified.'

*See* also, Farmers Educ. & Co-op. Union of Am. v. Farmers Educ, & Co-op. Union of Am., Iowa Div., 141 F Supp. 820, 823 (S.D. Iowa 1956) affd sub nom. Iowa Farmers Union v. Farmers' Educ. & Co-op. Union, 247 F.2d 809 (8th Cir. 1957) and decision supplemented sub nom. Farmers' Educ. & Co-op. Union of Am. v. Iowa Farmers Union, 150 F Supp. 422 (S.D. Iowa 1957) affd sub nom. Stover v. Farmers' Educ. & Co-op. Union of Am., 250 F2d 809 (8th Cir. 1958). The presumption of validity and lack of compelling evidence to the contrary puts this prong in favor of the Plaintiff.

*RPG is estopped to contest SMRi's rights because RPG is a former licensee of SMRi's predecessor-in-interest with respect to these rights, the Sturgis Area Chamber of Commerce.*

The success on the merits prong is further weighed in Plaintiff's favor given Defendants' prior status as a licensee. In 1999, RPG was a licensee of Sturgis Rally & Races, Inc., the then-licensing agent for the Sturgis Area Chamber of Commerce, and agreed, in a July 22, 1999 agreement: "The Sturgis Area Chamber of Commerce is the owner of mark registration rights of the logo and the protected language "Black Hills Motor Classic", "Sturgis Rally & Races" and Black Hills Motorcycle Rally & Races". The Chamber has licensed and assigned the exclusive use of its officially licensed logo and the language to Sturgis Rally & Races, Inc."

The Eighth Circuit has held:

> "Even in the absence of any proviso in the contract not to contest the validity of the trademark or trade name, we think that the dealer, in

8

> recognizing the manufacturer as the owner of the trademark or trade name under the terms of the agreement, would be estopped to claim otherwise." Cf. Pacific Supply Coop. v. Farmers Union Central Exch., Inc., 318 F2d 894 (9th Cir. 1963); Smith v. Dental Products Co., 140 F2d 140 (7th Cir. 1944), cert. denied, 322 US 743, 64 SCt 1146, 88 Led. 1576 (1944); E. F. Prichard Co. v. Consumers Brewing Co., 136 F2d 512 (6th Cir. 1943), cert. denied, 321 US 763, 64 SCt 486, 88 LEd. 1060 (1944).
>
> Heaton Distrib. Co. v. Union Tank Car Co., 387 F2d 477, 482 (8th Cir. 1967)

RPG previously was a licensee of the mark STURGIS RALLY & RACES and cannot now challenge the validity of the rights of SMRi, the successor-in-interest to the Sturgis Area Chamber of Commerce with respect to an identical mark ("STURGIS" when used in conjunction with goods relating to the Sturgis Motorcycle Rally). RPG is estopped from obtaining the relief it seeks, and certainly fails to establish likely success on the merits.

**B.   IRREPARABLE HARM**

"When deciding the propriety of issuing a preliminary injunction the court considers the type of harm plaintiffs allege will occur." Bloom v. O'Brien, 841 FSupp 277, 279 (D. Minn. 1993). ILO Investments, Inc, v. City Of Rochester, 816 FSupp 516, 521 (D. Minn. 1993). rev'd on other grounds, 25 F3d 1414 (8th Cir.), cert. den, 513 US 1017, 115 SCt 578, 130 LEd2d 493 (1994). Further, "[to] satisfy the threat of irreparable harm, the plaintiffs must prove that harm will result without injunctive relief and the harm will not be compensable without money damages. Possible or speculative harm is not enough." Bloom, 841 FSupp at 279. Defendants in their submissions repeatedly claim potential harm or losses to their business. Plainly Plaintiffs have an adequate remedy at law, to wit, damages on their counterclaim. The availability of monetary damages dispels a claim for irreparable injury and alone warrants denial of the motion.

9

## C. BALANCE OF HARM

Owing largely to the high regard and policy considerations favoring trademark owners, the balance of harm factor frequently weights in favor of the owner and against the alleged infringer. *See,* e.g., Northwest Airlines, Inc. v. Bauer, 467 FSupp2d 957, 964:

> Northwest asserts that the balance of harm weighs in Northwest's favor because protecting its valuable intellectual property outweighs any financial loss Bauer will incur by complying with trademark law. Northwest asserts that is has made a substantial investment in developing its trademark over 80 years and that it harm outweighs that of Bauer.
>
> The Court finds that the irreparable harm that Northwest has and will arguably continue to suffer, outweighs any potential harm that Bauer may suffer from the issuance of a temporary restraining order. The court finds that his factor weight in favor of the issuance of a temporary restraining order.

Here, granting the relief to preclude enforcement of a live and presumptively-valid trademark would cause great harm to the Plaintiff. Defendants, on the other hand, have been on notice of Plaintiff's rights and should not now be heard to claim harm resulting from potential enforcement of Plaintiff's rights, about which they have been aware.

## D. PUBLIC INTEREST

The public has an interest in protecting the integrity of trademarks and trade dress. *See* Hyatt Corp. v. Hyatt Legal Servs., 736 F2d 1153, 1159 (7th Cir. 1984), cent. denied, 469 US 1019, 105 SCt 434, 83 LEd2d 361 (1984). In the context of trademark infringement, this factor involves balancing the interest of protecting the public from confusion or deception with the interest of facilitating a competitive market. Woodroast Sys., Inc., v. Restaurants Unlimited, Inc., 793 FSupp 906, 919 (D. Minn. 1992).

> The policy considerations favoring trademark owners is strong and undisputed:
>
> As important as what is implied in the language of the Lanham Act and the corresponding regulations is the clear policy behind federal registration of

> trademarks. The federal registration of a trademark does not create an exclusive property right in the mark. The owner of the mark already has the property right established by prior use. The mark identifies and distinguishes the owner's goods from others. It also signifies the source and quality of the goods. These attributes are not established or granted by federal registration of the mark.5 The owner of a trademark need not register his or her mark in accordance with the Lanham Act in order to use the mark in connection with goods or to seek to prevent others from using the mark. *See* In re Beatrice Foods Co., 57 C.C.P.A. 1302, 429 F.2d 466, 472, 166 USPQ 431, 435 (1970) ("Rights appurtenant to the ownership of a federal trademark registration ... may be considered supplemental to those recognized at common law, stemming from ownership of a trademark."). However, those trademark owners who register their marks with the PTO are afforded additional protection not provided by the common law. See id. For example, the Lanham Act provides a federally registered trademark owner a forum in federal court in which to adjudicate infringement claims, see 15 U.S.C. § 1121 (1994), and it allows, in certain cases, a registrant whose mark has been infringed to seek costs, treble damages, attorneys fees, *see* id. § 1117; the destruction of infringing articles, see id. § 1118; and the ability to prevent the importation of infringing goods, *see* id. § 1124. These additional protections are granted by the Lanham Act to encourage trademark owners to register their marks with the PTO.

In re Intl Flavors & Fragrances, Inc., 183 F.3d 1361, 1366-67 (Fed. Cir. 1999)

The referenced federal legislation and federal common law establish the strong public policy and significant public interest supporting intellectual property owners. This factor too weighs in favor of the Plaintiff and against Defendants' requested relief.

### RELIEF FAVORING NON-PARTIES

Defendant's Motion seeks relief favoring persons and entities not party to this action. While these persons or entities may choose to file their own action(s), non-parties cannot be afforded relief in the context of this action.

Relatedly, the Defendants' Motion seeks to compel action against non-parties, including federal law enforcement agencies and officials. Plainly this too is overbroad and improper.

## SECURITY

Rule 65(c) mandates that the movant give security in an amount that the Court considers proper to pay the costs and damages sustained by a party found to be wrongfully enjoined or restrained. Should the court consider granting any portion of Defendants' requested relief, proper security should be mandated.

## CONCLUSION

For the reasons stated, Plaintiff respectfully requests the Court deny the Motion.

Dated this 4th day of August, 2011.

CLAYBORNE, LOOS & SABERS

electronically signed

/s/
Michael C. Loos
2834 Jackson Blvd., Suite 201
P.O. Box 9129
Rapid City, SD 57709
605/721-1517
mloos@clslawyers.net

SNEED LEGAL
Jason M. Sneed
610 Jetton St., Suite 120-107
Davidson, NC 28036
704/779-3611
JSneed@sneedlegal.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that he served a true and correct copy of the PLAINTIFF'S MEMORANDUM IN RESISTANCE TO DEFENDANTS' MOTION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION by electronic filing through the South Dakota CM/ECF system, upon the following:

Aaron W. Davis
Patterson Thuente Christensen Pederson, PA
4800 IDS Center
80 South 8th Street
Minneapolis, MN 55402
davis@ptslaw.com

J. Crisman Palmer
Gunderson, Palmer, Nelson & Ashmore
440 Mt. Rushmore Road
P.O. Box 8045
cpalmer@gpnalaw.com
*Attorneys for Defendants*

Jason M. Sneed
Sneed Legal
610 Jetton St., Suite 120-107
Davidson, NC 28036
JSneed@sneedlegal.com
*Attorneys for Plaintiff*

Dated this 8th day of August, 2011.

electronically signed

                 /s/
                 Michael C. Loos