UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| STURGIS MOTORCYCLE RALLY, INC., )<br><br>Plaintiff, )<br><br>v. )<br><br>RUSHMORE PHOTO & GIFTS, INC., )<br>JRE, INC., CAROL NIEMANN, )<br>PAUL A. NIEMANN, BRIAN M. NIEMANN, )<br>AND WAL-MART STORES, INC. )<br><br>Defendants. )<br><br>-AND- )<br><br>RUSHMORE PHOTO & GIFTS, INC., )<br>JRE, INC., CAROL NIEMANN, )<br>PAUL A. NIEMANN, AND )<br>BRIAN M. NIEMANN, )<br><br>Counterclaimants, )<br><br>v. )<br><br>STURGIS MOTORCYCLE RALLY, INC., )<br><br>Counterclaim Defendant. )<br>) | Case No. 11-5052-JLV |

## PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE'S MARCH 6, 2013 REPORT AND RECOMMENDATIONS

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff Sturgis Motorcycle Rally, Inc. ("SMRI") files its written objections to the U.S. Magistrate's Report and Recommendations filed March 6, 2013 (Doc. No. 107, hereinafter "Report"), respectfully requesting that the Court disregard the Report entirely and consider the pending motions *de novo*.

## Table of Contents

I.   Introduction ........................................................................................................ 3

II.   Procedural Context Leading Up to the Motions for Summary Judgment and Motions
to Strike............................................................................................................... 3

III.  General Objections To The Magistrate's Recommended Factual Findings.................... 6

IV.  Specific Objections to the Magistrate's Recommended Factual Findings...................... 8

V.   Objections to Magistrate's Legal Conclusions ............................................... 15

   A.  Plaintiff Objects to the Magistrate's Recommended Denial of Plaintiff's Motion to Strike
   Wal-Mart's Answer ..................................................................................................... 15

   B.  Plaintiff Objects to the Magistrate's Conclusion that "Sturgis Did Not Respond to
   Rushmore's Summary Judgment Motion" .............................................................. 17

   C.  The Court Has an Obligation to Determine Whether Defendants' Motion for Summary
   Judgment is Properly Before the Court.................................................................. 21

   D.  Plaintiff Objects to the Report's Depiction of the Procedural Posture of this Action....... 25

VI.  Objections to the Report's Application of Law to Facts ................................................ 26

VII. Objections to the Recommendations ............................................................................ 32

## I.    INTRODUCTION

In the Report, the U.S. Magistrate Judge recommends that the District Court deny SMRI's motion for summary judgment, deny SMRI's motion to strike the Defendants' motion for summary judgment, and deny SMRI's motion to strike the impertinent portions of Defendant Wal-Mart's answer and any requests for affirmative relief set forth therein. The Magistrate also recommends denial of the Defendants' motion for summary judgment, but nevertheless recommends adoption of many of the alleged facts advanced by Defendants.

The District Court's reliance on the report, however, would impose error after error on the Court, as set forth in detail below. Among other deficiencies, the Report misunderstands the procedural context for the District Court's stay of the discovery to allow for the motions for summary judgment to be decided, relies on facts not placed in the record by either party and which did not even exist at the time of briefing, fails to recommend the entry of judgment in SMRI's favor where the parties have resolved every issue to be decided with respect to certain claims, misstates relevant law, accepts hearsay and other inadmissible facts advanced by Defendants, and even selectively edits a quote in a manner not appearing in any party's briefings before concluding that the edited quote constituted a false statement. SMRI would be prejudiced, procedurally and substantively, by the District Court's adoption of the Report.

## II.    PROCEDURAL CONTEXT LEADING UP TO THE MOTIONS FOR SUMMARY JUDGMENT AND MOTIONS TO STRIKE

A reminder of the procedural context in which the summary judgment motions and motions to strike arose is useful to understanding the matters referred to the Magistrate for recommendation. SMRI instigated this suit in June 2011, alleging that Defendants Rushmore Photo & Gift, Inc. ("RPG"), JRE, Inc. ("JRE"), Carol Niemann, Paul A. Niemann and Brian M. Niemann (collectively, the "RPG Defendants") committed trademark infringement and false

advertising, among other violations of law, to the injury of SMRI and consumers. (Doc. No. 1).
On July 6, 2011, the RPG Defendants answered and asserted counterclaims, including a
counterclaim alleging that the federally-registered STURGIS trademark owned by SMRI was
"generic." (Doc. No. 10). SMRI moved to dismiss that genericness claim on July 27, 2011. (Doc.
No. 18). In early August 2011, the defendants sought a restraining order and preliminary
injunction against SMRI to bar the enforcement of SMRI's rights, which motions the District
Court denied. Thereafter, and before SMRI's motion to dismiss was decided, on August 16,
2011 the RPG Defendants amended their answer and counterclaims to withdraw voluntarily the
genericness claim without leave of court, while pleading additional facts in an effort to overcome
SMRI's motion to dismiss the RPG Defendants' other claims, such as those arising in fraud.
(Doc. No. 39). SMRI answered the re-pleaded claims, which did not include any claim for
genericness. (Doc. No. 41).

The parties requested and began engaging in written discovery. In April 2012, SMRI
moved to amend to add as a party Wal-Mart Stores, Inc. ("Wal-Mart"), a retailer of the RPG
Defendants' infringing products, and Wal-Mart was added as a party by the Court on April 23,
2012. (Doc. No. 51). The pre-existing defendants filed their answer on May 16, 2012, and Wal-
Mart answered on May 18, 2012. (Doc. Nos. 55 and 60).

Though discovery remained in the early stages and no depositions had yet been taken,
and after the deadline for further amendment of claims without leave of court, SMRI moved for
summary judgment on May 25, 2012, seeking judgment as a matter of law pursuant to Rule 56,
and submitting its Statement of Uncontroverted Facts and accompanying factual materials,
including declarations and contractual documents. (Doc. Nos. 66-68). SMRI aimed to resolve,
*inter alia*, the issue of whether Defendants, or any of them, could instigate an attack on SMRI's

4

rights pertaining to its registered and unregistered trademarks, where Defendant RPG was barred by licensee estoppel and contractual estoppel from contesting SMRI's rights, and where the other defendants (except Wal-Mart) were RPG owners, agents and/or related companies.

Defendants responded to SMRI's motion for summary judgment on June 15, 2012, (Doc. Nos. 72-75), and, before completing discovery, filed their own motion for summary judgment on June 26, 2012, asserting that judgment should be granted in their favor on the issue of genericness, the same claim that had been withdrawn 10 months prior. (Doc. Nos. 76-86). Instead of responding to the merits of the motion seeking judgment on the withdrawn claim, SMRI moved to strike it, citing a wealth of authority to the Court that a motion to strike was not only proper, but it was the necessary motion to avoid having the genericness claim entered back into the case by consent. (Doc. No. 93). SMRI also moved to strike portions of the Wal-Mart answer, such as Wal-Mart's request for cancellation of SMRI's federal registration of the STURGIS® mark absent the assertion of a denominated affirmative claim to that effect. (Doc. No. 70).

The parties continued to engage in discovery, including deposition discovery, during the Summer of 2012, but Plaintiff approached the Court at the end of July 2012 to seek additional time to submit rebuttal expert reports, particularly in light of the still-pending motions of SMRI to strike and the cross-motions for summary judgment which, if granted, would obviate the need for expert testimony on the issues raised in defendants' report. (Doc. No. 96). The District Court, on August 28, 2012, granted SMRI's motion to amend the scheduling order, referred SMRI's motion to strike portions of Wal-Mart's answer to the U.S. Magistrate, and *sua sponte* stayed discovery "because of the dispositive nature of the cross-motions for summary judgment" (Doc. No. 104). Finally, on September 24, 2012, the Court referred the cross-motions for summary

5

judgment and the SMRI motion to strike the Defendants' motion for summary judgment to the U.S. Magistrate for recommendations (Doc. 105). Within that framework, the U.S. Magistrate issued his Report on March 6, 2013.

### III.   GENERAL OBJECTIONS TO THE MAGISTRATE'S RECOMMENDED FACTUAL FINDINGS

In his Report, the Magistrate recommends that the District Court reject SMRI's motion to strike the summary judgment motion of Defendants, asserting that a motion to strike is not a proper means of responding to a motion for summary judgment. This is contrary to law, including decisions of the District of South Dakota and the Eighth Circuit (See Section V.B below). Moreover, even a denial of Plaintiff's motion to strike under Rule 56(a) and motion for additional time under Rule 56(d) should be accompanied by sufficient time to enter a response on the merits. (Doc. No. 100, Plaintiff's Reply in Support of Motion to Strike Defendants' Motion for Summary Judgment, at 12) (*citing Diesel Mach., Inc. v. Manitowoc Crane Group*, CIV 09-4087-RAL, 2011 WL 677458 (D.S.D. Feb. 16, 2011) (denying Rule 56(d) motion and granting opposing party sixteen days to file a response to motion for summary judgment); *Benish v. Corbit*, 2007 WL 3203110, *2 (D. Neb. Oct. 29, 2007) (granting 30 days for Plaintiff to respond "because Plaintiff was unaware until this memorandum and order that Defendants' motion for summary judgment would be accepted for filing")). Otherwise, a party would have to submit a response to a motion for summary judgment along with any motion to strike or motion for additional time or risk entry of default in the event the court denied the motion. Thus, the Report's recommendation to deny Plaintiff's motion to strike pursuant to Rule 56(a) and Plaintiff's motion for additional time pursuant to Rule 56(d) should have been accompanied by a recommendation to permit SMRI to file a response within a reasonable period of time. As Plaintiff was "unaware until this [Report] that Defendants' motion for summary judgment would

6

be accepted," *Benish*, 2007 WL 3203110 at *2, this Court should not adopt Defendants' statement of facts without affording Plaintiff an opportunity to respond.

In addition to denying SMRI's motion to strike, the Magistrate then proceeds to recognize many of the then-unopposed facts, recommending that the Court endorse them for not having been controverted by SMRI. At the same time, the Magistrate all but ignores the facts advanced by SMRI in support of its summary judgment motion (Doc. No. 68), neither rejecting or accepting them, and only referring to those facts twice, once to point out that SMRI submitted facts (Report, at 23 n. 49) and later to identify the duration of the license taken by RPG (Report, at fn. 97). The rest of the factual citations in the Report are to facts advanced by Defendants. As set forth below in Sections IV and VI, however, the facts relied upon in the Report are self-contradictory, supported in many instances only by hearsay and thus inadmissible, and unreliable.

Decisions on motions for summary judgment must be supported by the record. *St. Martin v. City of St. Paul*, 680 F.3d 1027, 1032 (8th Cir. 2012) ("This court reviews a district court's grant of summary judgment *de novo* and may affirm the district court on any basis supported by the record."). However, by recommending that Defendants' facts be accepted as true pursuant to D.S.D. Civ. LR 56.1(D), the Report fails to consider that Defendants' own statement of facts sets forth contradictory statements that preclude acceptance by this Court even in light of D.S.D. Civ. LR 56.1(D). And even criticizing Plaintiff and accepting Defendants' statement of facts as true for failure to contest, the Court still must "view[] the evidence and draw[] all reasonable inferences in the light most favorable to the nonmovant." *Small v. McCrystal*, --- F.3d ----, 12-1933, 2013 WL 599567, *2 (8th Cir. Feb. 19, 2013).

## IV.   SPECIFIC OBJECTIONS TO THE MAGISTRATE'S RECOMMENDED FACTUAL FINDINGS

Accordingly, Plaintiff sets forth the following objections:

1.  Plaintiff objects to the Report's finding that "[t]here is a complicated history of sponsorship for this annual event, but the simple centerpiece when it began in 1938 was a motorcycle race with nine participants. Before the early 1990s the rally was comprised of numerous fragmented activities organized and promoted numerous for-profit and not-for-profit organizations, with no single entity controlling all rally activities or the promotion of the rally and all its various fragmented activities." (Report, at 2-3) (citing Doc. No. 78 ¶68A). The citation in the record is to a declaration of Francie Ruebel-Alberts dated April 17, 2000, submitted in another matter and attached at Exhibit D48 to the Affidavit of Aaron W. Davis. (Doc. No. 79, ¶49). As Ms. Ruebel-Alberts is a nonparty to this action, Exhibit D48 constitutes inadmissible hearsay prohibited by Rule 56(e). Further, the Davis Affidavit sets forth no facts showing that Mr. Davis has any personal knowledge of the matters contained in Ms. Reubel-Alberts' declaration and is therefore inadmissible. Rule 56(e); Fed.R.Evid. 901.

2.  Plaintiff objects to the Report's finding that Plaintiff was "formed...by adversaries to the STURGIS trademark application who settled their differences and joined together to form Sturgis Motorcycle Rally, Inc. and acquired the disputed STURGIS trademark." (Report, at 3) (citing Doc. No. 78, at 12 ¶74; 14-17, ¶¶80-93). The citation in the record is to oppositions filed before the Trademark Trial & Appeal Board of the U.S. Patent & Trademark Office and attached at Exhibits D7 and D8 to the Davis Affidavit. (Doc. No. 79, ¶8-9). As the entities filing those oppositions are nonparties to this action and were filed before Plaintiff even existed as a corporate entity, Exhibits D7 and D8 constitute inadmissible hearsay prohibited by Rule 56(e). Further, the Davis Affidavit sets forth no facts

showing that Mr. Davis has any personal knowledge of the matters contained in the aforementioned oppositions and is therefore inadmissible. Rule 56(e); Fed.R.Evid. 901.

3. Plaintiff objects to the Report's finding that "[a] major part of Rushmore's business has been Sturgis Motor Classic merchandise since the mid-1980s." (citing Doc. 78, at 8, ¶44). The citation in the record is to the Affidavit of Brian M. Niemann. (Doc. No. 82, hereinafter "Niemann Aff."). The Niemann Affidavit sets forth that Mr. Niemann joined the business in 2003, nearly twenty years after the events of which he is presumably testifying from personal knowledge. Further, the Niemann Affidavit sets forth that Paul and Carol Niemann purchased the business in 1992. (Id., at 2 ¶4). The Niemann Affidavit offers no facts to show that Mr. Niemann has any personal knowledge about what Rushmore Photo & Gift, Inc. may or may not have sold in the "mid-1980s." Accordingly, the statements are inadmissible for lack of personal knowledge. Fed.R.Evid. 901. Still further, the proffered statement is contradicted by the application of JRE, Inc. for the STURGIS MOTOR CLASSIC mark submitted by Plaintiff. (Doc. No. 68-8). According to that application, the mark was first used by JRE, Inc. and not Rushmore Photo & Gift, Inc. (Id., at 1). Finally, the first use date provided in that application for all classes is December 31, 2000. (Id., at 3). Accordingly, as the claimed statement is contradicted by facts in the record, including those facts pertaining to the RPG Defendants' own sworn statements made before they were sued for infringement and false advertising, the Report erred in accepting Defendants' claim of use since the "mid-1980s."

4. Plaintiff objects to the Report's finding that "[a]ll of JRE's assets, which included trademark applications and registrations, were purchased by Rushmore Photo and Gifts on June 25,

9

2009, and are currently owned by Rushmore." (Report, at 4) (citing Doc. No. 78, at 17 ¶94).[1] The Report overlooks Plaintiff's facts on this point (Doc. No. 68, at 4 ¶¶9-10) and Defendants' rebuttal facts. (Doc. No. 73, at 5 ¶¶9-10). As this material fact is in dispute, the Report should not have made a determination regarding this fact.

5.  Plaintiff objects to the Report's findings that "[b]y 1964 the City of Sturgis closed main street for the event. In 1979 the City of Sturgis began providing temporary vendor permits for sale of wares on the streets for Sturgis during the rally." (Report, at 4). The citation in the record is to a putative printout from the website of nonparty The Sturgis Area Chamber of Commerce ("The Sturgis Chamber"), attached at Exhibit D1 to the Davis Affidavit. (Doc. No. 79-1). As The Sturgis Chamber is a nonparty to this case, Exhibit D1 constitutes inadmissible hearsay prohibited by Rule 56(e). Further, the Davis Affidavit sets forth no facts showing that Mr. Davis has any personal knowledge of the matters contained in the aforementioned oppositions and is therefore inadmissible. Rule 56(e); Fed.R.Evid. 901.

6.  Plaintiff objects to the Report's finding that "[i]n 1984 the Sturgis Areas [sic] Chamber of Commerce first became involved with the rally." (Report, at 4). The citation to the record is to the inadmissible Exhibit D1 (see above). (Doc. 78, at 3 ¶16). Notwithstanding that objection, Exhibit D1 makes no representation, inadmissible or otherwise, concerning when The Sturgis Chamber "first became involved with the rally." The Report should not have made this finding of fact unsupported by the record. *St. Martin*, 680 F.3d at 1032.

7.  Plaintiff takes issue with the Report's finding that "[t]his is the Tom Monohan [sic] composite logo." (Report, at 6). The Report offers no citation to the record for the proffered

---

[1] Plaintiff also notes that the Report's finding that "Defendant JRE is a dissolved South Dakota corporation with its former principal place of business in Custer, South Dakota" is based on an improper citation to the pleadings, both to Plaintiff's First Amended Complaint (Doc. No. 52) and the RPG Defendants' Answer (Doc. No. 55), rather than the summary judgment materials. (Report, at 4) (citing Doc. No. 52, at 3 ¶16; Doc. No. 55, at 12, ¶2).

image. And while Plaintiff does prepare artwork annually reflecting the year and anniversary of the Sturgis Motorcycle Rally, no such artwork with the year "2013" or "73rd Anniversary" was provided by either party in the summary judgment record. Rather, the image subject to U.S. Federal Trademark Registration No. 1,948,097 is depicted in the record as follows:



(See Doc. Nos. 52, at 6 ¶17 and 79-2, at 1). Plaintiff objects to the logo depicted in the Report as independent fact research by the Magistrate. *See, e.g., Araoz v. United States*, 337 F. App'x 207, 210 (3d Cir. 2009) (finding that the Magistrate did not "did not improperly rely on 'extraneous research' in reaching her decision"); *c.f., CoxCom, Inc. v. Chaffee*, 536 F.3d 101, 108 (1st Cir. 2008) (noting that independent legal research does not constitute error). To the extent that the Court intends to take judicial notice of the logo depicted in the Report, Plaintiff objects pursuant to Fed.R.Evid. 201(e). ("On timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed. If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard.").

8.  Plaintiff objects to the Report's finding that "Marlin Martin[] declared to the Patent and Trademark Office ('PTO') that 'as a result of ... the Chamber's continuous and substantially exclusive use of the STURGIS mark ... the purchasing public has come to identify the

STURGIS mark with the source of the Sturgis Chamber's Rally Products ... and to recognize that the STURGIS mark distinguishes the Sturgis Chamber's Rally Products ... from those sold by others.'" (Report, at 6-7) (citing Doc. 78, at 12-13 ¶76). Astonishingly, the Court has edited the Martin Declaration selectively, so as to alter the meaning of the statement and create a new statement that the Court declares "false." The record shows Mr. Martin's statement as follows (emphasis added as to portions omitted by use of ellipses in the Report):

> **It is my opinion** that, as a result of **the extensive marketing and promotional efforts of the Sturgis Chamber in connection with the Rally and** the Sturgis Chamber's continuous and substantially exclusive use of the STURGIS mark **in connection with the marketing and promotion of the Rally since at least as early as July 1, 1987,** the purchasing public has come to identify the STURGIS mark with the source of the Sturgis Chamber's Rally Products **and its Rally promotion and entertainment services** and to recognize that the STURGIS mark distinguishes the Sturgis Chamber's Rally Products **and promotion and entertainment services** from those sold by others.

(Doc. 78, at 12-13 ¶76). Additionally, Defendants in their brief in support of their motion for summary judgment cite the entire unedited quotation and opine: "It is hard to imagine how Marlin Martin could honestly swear to the [aforementioned statement]." (Doc. No. 77, at 20). The U.S. Magistrate's elided version of the quote that the Report then deems false does not appear in the record. Indeed, Defendants never even claim in their brief that the Marlin Martin statement is false, merely stating that it is "hard to imagine" the statement being true. Yet the Report selectively quotes Mr. Martin, removes the terms "marketing", "promotion", and "entertainment services", among others, and then finds the edited statement false. The Report's statement of fact is not supported by the record and must be rejected, as the District Court's adoption of this selectively-edited statement would constitute plain error. *St. Martin*, 680 F.3d at 1032. Still further, the Court has an obligation to consider the facts in the light most favorable to the nonmovant. *Small v. McCrystal*, --- F.3d. at ----, 2013 WL 599567 at *2. Accordingly, the Court must consider Mr. Martin's full statement and the fact that

12

Defendants never allege falsity in their summary judgment brief. Therefore, the Report should affirm the statement as true.[2]

9.  Plaintiff objects to the Report's finding that "Marlin Martin's assertion of exclusive use of STURGIS by the Chamber was not true as is evidenced by the many examples of the Chamber's own acknowledgments of the common use of Sturgis by others." (Report, at 7). As set forth above, the "assertion" upon which the Report bases this finding of fact is not supported by the record and is not viewed in the light most favorable to the nonmovant, as Mr. Martin did not make the selectively quoted statement cited by the Report.[3]

10. Plaintiff objects to the Report's finding that "[i]n truth, hundreds of others used 'Sturgis' before and after the 1987 date Martin had asserted as the date the Chamber's exclusive use began, e.g. 'Sturgis Rally & Races,' 'Sturgis Rally,' 'Sturgis Bike Week,' and 'STURGIS.'" The Report cites to a list in the appendix to the report for the alleged "hundreds of others." (Doc. No. 107, at 7 n.38). However, the Appendix reveals no such list. (Doc. No. 107-1). The Report also cites to the inadmissible Exhibits D1, D7 and D8 (see above). (Doc. 78, at 2-3 ¶¶13-16, 80-85). Likewise, Exhibit D19 to the Davis Affidavit constitute inadmissible hearsay, as each of the exhibits is a statement of a nonparty to some other proceeding and

---

[2] As this Court found in deciding the RPG Defendants' motion for a temporary restraining order: "Well, on the state of the present record, I cannot make a finding that those elements have been carried by the movant [RPG Defendants] in this case. Now we have got this document which has been blown up and indeed, there is a phrase on it that no one really has referred to, but it all relates to, in paragraph 4, not only the promotion of the rally, but also relates to the purchasing public has come to identify the Sturgis mark with the source of the Sturgis Chamber's rally products and its rally promotion and entertainment services to recognize that the Sturgis mark distinguishes Sturgis Chamber rally products and promotion and entertainment services from those sold by others. There really hasn't been any attack launched on that submission to the patent trademark office in this hearing that the goods are separate from others." (TRO Transcript, Aug. 5, 2011, at 6-7). None of the witnesses at that hearing could identify any false statement made by Mr. Martin. Defendants' motion for summary judgment does not allege falsity. For the Court to adopt the Report's finding of falsity based on a heavily edited statement would be extremely prejudicial to Plaintiff.

[3] Still further, the Report's statement constitutes an incorrect mixed statement of fact and law, as the Report does not assert that any of the alleged uses of the term STURGIS have any bearing on Plaintiff's marks. These uses very well could be purely geographic uses to connote the respective users' locations, which would not impact SMRI's ownership of the STURGIS mark in conjunction with motorcycle-rally related goods or entertainment services.

concern matters of which Mr. Davis claims no personal knowledge. Rule 56(e); Fed.R.Evid. 901. Still further, the Report cites to Exhibits D15 and D16 to the Davis Affidavit, which purport to be letters granting licensing exemptions as to t-shirts but do not mention "marketing", "promotion", or "entertainment services" related to the Sturgis Motorcycle Rally. Thus, the Report's finding of fact attempting to connect these documents with Mr. Martin's statement is not supported by the record and must be rejected. *St. Martin*, 680 F.3d at 1032.

11. Plaintiff objects to the Report finding that "[s]everal entities opposed registration of STURGIS claiming the use for decades by hundreds of vendors rendered STURGIS as lacking distinctiveness." (Report, at 7). The Report cites to the inadmissible Exhibits D7 and D8 for this proposition. Accordingly, the Report's finding is not supported by admissible evidence and must be rejected. Rule 56(e); Fed.R.Evid. 901; *St. Martin*, 680 F.3d at 1032.

12. Plaintiff objects to the Report's finding that "[t]he opposition to the Chamber's application to register STURGIS continued until 2010 when some opponents to the registration banded together with the applicant Sturgis Chamber of Commerce to create the plaintiff here, Sturgis Motorcycle Rally, Inc. On March 31, 2010, Jerry Berkowitz of Good Sports, Jim Burgess of Black Hills Harley Davidson, John Johnson of First Interstate Bank, and Dean Kinney of HomeSlice and the Sturgis Chamber banded together to form Sturgis Motorcycle Rally, Inc." (Report, at 7). The Report cites to Exhibits D9 and D10 to the Davis Affidavit, copies of Plaintiff's Articles of Incorporation and 2011 Annual Report, respectively. (Doc. Nos. 79-9, 79-10). However, neither document refers to any of the corporate entities referenced in the Report and in Defendant's statement of facts. Accordingly, the Report's finding is not supported by the record. *St. Martin*, 680 F.3d at 1032. Viewing the facts in the light most

favorable to Plaintiff as the nonmovant, the Report should have found that Plaintiff's Board members are appointed in their individual capacities, and distinguished the organization's incorporators from its Board of Directors, which also has included representatives of The Sturgis Chamber and the City of Sturgis from Plaintiff's inception to the present.

## V.   OBJECTIONS TO MAGISTRATE'S LEGAL CONCLUSIONS

### A.   Plaintiff Objects to the Magistrate's Recommended Denial of Plaintiff's Motion to Strike Wal-Mart's Answer

SMRI's Motion to Strike Defendant Wal-Mart's Answer is mentioned only in the introduction and conclusion to the Report, when the Magistrate first listed the items it must decide on referral and then denied the motion. (Report, at 1, 27).  The Magistrate offers no rationale whatsoever for his Recommendation on this motion.

Plaintiff, in the Motion to Strike, challenged Wal-Mart's so-called "additional affirmative defenses" on two grounds: defenses cannot give rise to affirmative relief and the "additional affirmative defenses" are not entitled to be designated as counterclaims under Rule 8(c). (Doc. 70). In response, Defendants admitted as much with respect to their claim for damages pursuant to 15 U.S.C. § 1120. (Doc. 87, at 5 n.2) ("The one inadvertent reference to '1120' in paragraph (e) is withdrawn."). The Report, however, does not recommend striking Wal-Mart's claim for damages under 15 U.S.C. § 1120 even after Wal-Mart admitted that the claim should not have been brought. Accordingly, Plaintiff requests that the Court review *de novo* Plaintiff's Motion to Strike Wal-Mart's Answer.

Plaintiff also objects to the Report's citation to *Aromatique, Inc. v. Gold Seal*, 28 F.3d 863, 875 (8th Cir. 1994) for the proposition that "[t]hese statutes [15 U.S.C. § 1115(a)-(b) and 15 U.S.C. § 1119] do not require a counterclaim as a condition precedent to ordering cancellation." The Court in *Aromatique* explicitly stated that the defendant "**counterclaimed** for cancellation of

the registration." *Id.*, at 866. (emphasis added). Thus, *Aromatique* cannot support the premise for which it is cited in the Report, as it actually supports Plaintiff's position that a counterclaim is a prerequisite for cancellation. And while a fraudulently obtained trademark registration may be cancelled, even the cancellation of a registration for a mark offers no protection against a trademark infringement claim. As Professor McCarthy states so well in his treatise,

> It is difficult to understand why defendants in many trademark infringement suits expend so much time, effort and money in vigorously pursuing the claim that plaintiff's federal registration was obtained by fraud. It has been held several times that even if defendant succeeds in proving that the plaintiff's registration was fraudulently obtained, plaintiff's common law rights in the mark continue unabated and are sufficient to require an injunction against an infringing defendant.

*McCarthy on Trademarks and Unfair Competition* § 31:60 (4th ed.). In short, fraud is not a defense because a finding of fraud does not relieve Defendants of any liability. The trademark registration provides evidence of and notice of Plaintiff's rights in the STURGIS mark; it does not create those rights. *Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc.*, 989 F.2d 985, 991 (8th Cir. 1993) ("Unlike the registration of a patent, a trademark registration of itself does not create the underlying right to exclude. Nor is a trademark created by registration. While federal registration triggers certain substantive and procedural rights, the absence of federal registration does not unleash the mark to public use. The Lanham Act protects unregistered marks as does the common law.")

Furthermore, Plaintiff objects to the Report's denial of the motion to strike Wal-Mart's Answer "because licensee estoppel and equitable estoppel do not preclude Walmart from contesting the validity of STURGIS®." (Report, at 27). That, however, was not the issue presented in the motion to strike. The sole question to be answered by Plaintiff's motion to strike Wal-Mart's Answer is whether a party can request affirmative relief, namely cancellation of Plaintiff's STURGIS registration, while intentionally avoiding the pleading of a counterclaim.

16

Whether Wal-Mart should be estopped has no bearing on this question. In fact, Wal-Mart's manner of pleading precludes Plaintiff from even asserting estoppel or any other defense to Wal-Mart's claim for cancellation in the first place. Wal-Mart, by seeking cancellation of a registration without pleading an affirmative claim, seeks to have it both ways – to be granted relief as a claimant without risking the loss on an adverse decision on a pleaded claim.

Finally, Plaintiff objects to the Report's claim regarding the motion to strike Wal-Mart's Answer that "[c]ancellation can also occur by filing a petition to cancel under 15 U.S.C. § 1064. **A petition to cancel is not involved in this case.** Rather, Sturgis commenced litigation and cancellation has been raised in the context of the lawsuit." (Report, at 15 n.69) (emphasis added). Wal-Mart's Answer cites **explicitly** to 15 U.S.C. § 1064(3) as the basis for cancelling Plaintiff's STURGIS mark. (Doc. No. 60, at 24 ¶¶ 136, 139-40). According to 15 U.S.C. § 1064, a party may file "[a] petition to cancel a registration of a mark, stating the grounds relied upon..." As Plaintiff argued, a "petition to cancel" is a claim, such as before the U.S. Trademark Trial & Appeal Board, and can be brought only when denominated as a claim or a counterclaim. (See Doc. No. 92, at 2-4). 15 U.S.C. § 1119 merely provides this Court with jurisdiction to hear a claim brought pursuant to 15 U.S.C. § 1064. Accordingly, Plaintiff requests that the Court consider *de novo* Plaintiff's Motion to Strike Wal-Mart's Answer. (Doc. No. 70).

### B. Plaintiff Objects to the Magistrate's Conclusion that "Sturgis Did Not Respond to Rushmore's Summary Judgment Motion"

At page 11 of the Report, the Magistrate found:

> Of exceptional significance, Sturgis did not respond to Rushmore's motion for summary judgment as contemplated by Federal Rule of Civil Procedure 56 and Local Rule 56.1. Instead Sturgis moved to strike Rushmore's motion for summary judgment or in the alternative to postpone the deadline for Sturgis' response until 30 days following the close of discovery.

At page 12, the Report states critically: "But Sturgis' first line of defense to Rushmore's motion

17

for summary judgment is to 'strike, pursuant to Rule 56(a).' But Rule 56(a) nowhere mentions a motion to strike. And nowhere else does Rule 56 mention a motion to strike."[4]

This notion appears to have come from Defendants' brief, wherein they assert that "[t]here is no such thing as a 'motion to strike' summary-judgment materials," (Doc. No. 99, at 1). Plaintiff, however, rebutted this position with abundant case law demonstrating that the Eighth Circuit has considered motions to strike summary-judgment materials to be an appropriate procedural tool for at least forty years. (Doc. 100, at 3) (citing *McSpadden v. Mullins*, 456 F.2d 428, 430 (8th Cir. 1972) (summary judgment affidavits not offered on personal knowledge are "subject to a motion to strike"); *Anderson v. Raymond Corp.*, 340 F.3d 520, 522 (8th Cir. 2003) (affirming grant of motion to strike expert testimony on summary judgment); *c.f.*, *Brannon v. Luco Mop Co.*, 521 F.3d 843 (8th Cir. 2009) *cert. denied*, 555 U.S. 1072 (2008) (denying on the merits a motion to strike a statement of uncontroverted facts); (see also Doc. No. 100, at 3-5).

Moreover, *McSpadden* explicitly states that denying a motion to strike summary-judgment materials not proffered on personal knowledge constitutes reversible error:

> Affidavits in support of summary judgment must be made on personal knowledge and contain admissible evidence. Where an affidavit does not meet this standard, it is subject

---

[4] The apparent confusion appears to arise from a false equivalence between "motions to strike" and Rule 12(f). Certainly, motions to strike are explicitly referenced in Rule 12(f), affording a party the opportunity to ask the Court to strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." However, as with the adage that every square is a rectangle, but not every rectangle is a square, every Rule 12(f) motion is a motion to strike but not every motion to strike must be a Rule 12(f) motion. In Plaintiff's reply brief, Plaintiffs gave numerous examples of district courts in the Eighth Circuit considering on the merits motions to strike summary judgment materials, not only for violations of Rule 56 but also for violations of Rules 6, 7, 26, and 37, not to mention various local rules. (Doc. No. 100, at 3-5). In addition, SMRI cited in its briefs to decisions from almost every district in the Eighth Circuit deciding motions to strike related to a motion for summary judgment. (Id., at 4 n.1). The Magistrate, however, does not comment on any of these citations in concluding that it was improper for SMRI to move to strike the Defendants' motion for summary judgment on an unpleaded claims on the part of Wal-Mart and a withdrawn claim on the part of the RPG Defendants.

to a motion to strike. ... **Therefore, it was error to have denied the motion to strike** and to grant the motion for summary judgment.

456 F.2d 428, 430 (8th Cir. 1972) (emphasis added). Accordingly, courts in the Eighth Circuit

regularly grant motions to strike related to motions for summary judgment. *See, e.g., Custom*

*Hardware Eng'g & Consulting, Inc. v. Dowell*, 4:10-CV-000653-ERW, 2013 WL 269143, \*7

(E.D. Mo. Jan. 24, 2013) (*citing McSpadden*, 456 F.2d at 430); *Scorpiniti v. Fox Television*

*Studios, Inc.*, 11-CV-64-LRR, 2012 WL 3791314, \*3 (N.D. Iowa Aug. 31, 2012) (same); *Volden*

*v. Innovative Fin. Sys., Inc.*, CIV. 03-4024, 2004 WL 5566572, \*3 (D.S.D. Sept. 24, 2004) *aff'd*,

440 F.3d 947 (8th Cir. 2006) (granting motion to strike affidavit filed in support of motion for

summary judgment) (J. Simko).[5]

The most pertinent case SMRI cited is *Jones v. Gale*. 2005 WL 2388114 (D. Neb. 2005)

(cited at Doc. No. 100, at 4). In *Jones*, one of the plaintiffs "filed an untimely two-sentence brief

in opposition, an untimely affidavit, and his own untimely Motion for Summary Judgment." *Id.*,

at 1. The offending documents attempted to incorporate by reference claims to which the moving

plaintiff was not a party, of which the Court observed, "In fact, DeCamp **purports to seek**

**summary judgment on four causes on [sic] action not raised in his Amended Complaint.**"

*Id.*, at n.1. (emphasis added). Defendants in *Jones* moved to strike the documents opposing their

motion for summary judgment and the plaintiff's untimely motion for summary judgment on

unpleaded claims. *Id.*, Doc. Nos. 58 and 59 (filed Sept. 20, 2005). **Defendants filed no other**

**response to Plaintiffs' motion for summary judgment,** *i.e.*, they did not oppose the Plaintiff's

---

[5] Motions to strike summary judgment materials clearly are permissible. However, the 2010 Amendments to Rule 56(c)(2) may have rendered certain motions obsolete: "The objection functions much as an objection at trial, adjusted for the pretrial setting. ... There is no need to make a separate motion to strike." Advisory Committee's Note to the 2010 Amendments to Rule 56(c)(2). Yet the fact that there is now no "need" to file such a motion shows that such a motion remains permissible. *See, e.g., Cutting Underwater Technologies USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512 (5th Cir. 2012) (converting a motion to strike affidavit to an objection pursuant to Rule 56(c)(2)). Moreover, the Eighth Circuit has not overruled *Brannon* or *McSpadden*. *See, e.g., Custom Hardware*, 2013 WL 269143, \*7 (citing *McSpadden* in a Jan. 24, 2013 decision); *Scorpiniti* 2012 WL 3791314, \*3 (same, Aug. 31, 2012).

untimely motion for summary judgment by controverting the facts therein or opposing the substantive issues raised. The Court granted the *Jones* defendants' motion, striking the untimely brief and untimely affidavit and summarily denying the plaintiff's motion for summary judgment on unpleaded claims. *Id.*, at *1. The Magistrate similarly should have recommended denying the Defendants' Motion for Summary Judgment for seeking judgment on unpleaded claims on the part of Wal-Mart and a withdrawn and unpleaded claim on the part of the RPG Defendants.

Numerous cases outside the Eighth Circuit also demonstrate that the proper response to a defective motion for summary judgment is to move to strike. *Negrete v. Allianz Life Ins. Co. of N. Am.*, 2011 WL 2909246 (C.D. Cal. July 18, 2011) (striking a partial motion for summary judgment on a motion brought pursuant to Rules 16 and 23); *Teltschik v. Williams & Jensen, PLLC*, 683 F. Supp. 2d 33, 38 (D.D.C. 2010) (granting in part a motion to strike "unpled theories"); *Tripodi v. Microculture, Inc.*, 397 F. Supp. 2d 1308, 1317 (D. Utah 2005) (finding a defense waived where "Plaintiff did not have notice of Defendants' intent to raise the affirmative defense until after the close of fact discovery"); *Montalvo-Padilla v. Univ. of P.R.*, 492 F. Supp. 2d 36, 37 *on reconsideration*, 498 F. Supp. 2d 464 (D.P.R. 2007) (striking a motion for summary judgment due to lack of proper translation of the supporting evidence); *Merrill Scott & Associates, Ltd. v. Concilium Ins. Services*, 253 F. App'x 756, 763 (10th Cir. 2007) (affirming striking of motion for summary judgment as untimely); *Boyd v. Unified Gov't Of Kansas City, Kan.*, 3 F. App'x 731, 732 (10th Cir. 2001) (noting that the "district court's ruling also granted defendant's motion to strike plaintiff's summary judgment motion for failure to follow local rules"); *Anderson v. LaSalle Steel Co.*, 2:07 CV 169, 2009 WL 857511 (N.D. Ind. Mar. 31, 2009) (granting motion to strike counter-motion for summary judgment); *JMB Mfg., Inc. v. Child Craft, LLC*, 4:11-CV-00065-TWP, 2013 WL 623517 (S.D. Ind. Feb. 19, 2013) (granting a

motion to strike summary judgment motion filed outside the dispositive motion deadline).

Accordingly, Plaintiff asks the Court to review *de novo* Plaintiff's Motion to Strike Defendants' Motion for Summary Judgment and acknowledge the same as a proper response to Defendants' Motion for Summary Judgment precluding imposition of the evidentiary sanction found in D.S.D. Civ. LR 56.1(D).

### C. The Court Has an Obligation to Determine Whether Defendants' Motion for Summary Judgment is Properly Before the Court

"Notwithstanding the court's conclusion that it should not 'strike' plaintiff's motion for partial summary judgment, the court still must determine whether plaintiff's motion is properly before the court for consideration." *Jones v. City of Topeka*, 764 F. Supp. 1423, 1425 (D. Kan. 1991). Moreover, the Eighth Circuit has expressed that "the requirements of the rules of procedure should be liberally construed and mere technicalities should not foreclose our consideration of a case on its merits." *Hawkins v. City of Farmington*, 189 F.3d 695, 704 (8th Cir. 1999) (*citing Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316, 108 S. Ct. 2405, 2408, 101 L. Ed. 2d 285 (1988)); *Adams v. Heyward*, 5:12-CV-479-GRA-KDW, 2013 WL 773065 (D.S.C. Feb. 28, 2013) ("[T]he language of Rule 56(e) does not mean that a moving party is automatically entitled to summary judgment if the opposing party does not [properly] respond.") (*quoting Baez v. Connelly*, 2012 WL 4062796, at *3 (D.R.I. Sept.14, 2012). "As the commentary to the federal rules explains, 'summary judgment cannot be granted by default even if there is a complete failure to respond to the motion ....' Fed.R.Civ.P. 56(e) (advisory comm. note to 2010 amendment)." *Adams*, 2013 WL 773065.

And, *Brannon* shows that failure to consider a motion to strike summary judgment materials could constitute reversible error even if a party mistakenly cites Rule 12, which by its terms applies only to pleadings. In *Brannon*, the district gave no consideration to the plaintiff's

motion to strike:

> The Plaintiff moves this Court to strike both Defendant's statement of Uncontroverted
> Material Facts, as well as John Shalhoub's affidavit which was submitted in support of
> Defendant's Motion for Summary Judgment. **Plaintiff's motion requires only a brief
> response**, as Rule 12(f) by its terms, applies only to pleadings, not to motions for
> summary judgment, or the documents filed in support of a motion for summary
> judgment.

*Brannon v. Luco Mop Co.*, 4:05-CV-01713-ERW, 2007 WL 172374 (E.D. Mo. Jan. 18, 2007)

*aff'd*, 521 F.3d 843 (8th Cir. 2008). However, when the Eighth Circuit affirmed the decision on

the motion to strike, it did not affirm the result for failure to bring the motion under the proper

rule of procedure but rather went on to decide the motion to strike summary-judgment materials

*on the merits*:

> First we address Brannon's claim that the district court abused its discretion in refusing to
> (1) strike Luco Mop's Statement of Uncontroverted Material Facts for failure to comply
> with local rules and the Federal Rules of Civil Procedure, and (2) either strike or ignore
> John Shalhoub's affidavit because it was filed in bad faith and did not comply with the
> Federal Rules of Civil Procedure. Luco Mop's Statement of Uncontroverted Material
> Facts cited to specific pages of the deposition testimony it relied upon, but not to specific
> lines of the pages...[W]e do not find that the district court abused its discretion in
> denying Brannon's motion to strike the statement. We agree with the district court that
> nothing in the rule required Luco Mop's citations to be line-specific, and we decline to
> reverse based on local rule over which the district court retains considerable discretion.
>
> ... Brannon also argues that the district court should have struck John Shalhoub's
> affidavit because it violated Federal Rule of Civil Procedure 56(e) ... and 56(g). ...
> Specifically, Brannon claims that the affidavit contradicted Shalhoub's earlier deposition
> testimony and was not based on admissible evidence because Shalhoub stated, in the
> affidavit, his "beliefs" as to why terminating Brannon was the proper decision. The
> purported inconsistencies, which appear to clarify and not contradict, are not
> determinative of the decision on Luco Mop's motion for summary judgment, and thus are
> not genuine issues of material fact. Further, Shalhoub certainly possessed "personal
> knowledge" of his reasons for terminating Brannon. Thus, we find that the district court
> did not abuse its discretion in denying Brannon's motion to strike the affidavit.

*Brannon v. Luco Mop Co.*, 521 F.3d 843, 847-48 (8th Cir. 2008) (citations and parentheticals

omitted). The Eighth Circuit did not consider the district court's summary dismissal of the

motion to strike.[6] *See also Arnold v. Treadwell*, 642 F. Supp. 2d 723, 728 n.1 (E.D. Mich. 2009) (considering a motion to strike a motion for summary judgment on the merits in spite of the motion "cit[ing] Rule 12(f) as authority").

Finally, Plaintiff objects to the Report's finding that "[t]he Rushmore defendants have alleged [certain] defenses" and that SMRI "needed to defend its Amended Complaint from Rushmore's summary judgment attack." (Report, at 15-16). However, the Report misapprehends that the Defendants seek judgment on claims, not defenses. With the exception of the defense of failure to state a claim upon which relief can be granted, each and every defense asserted by the Rushmore Defendants begins "Plaintiff's claims are barred in whole or in part..." Yet Defendants' Motion for Summary Judgment does not seek a mere finding that Plaintiff's claims are "barred," the only relief available if Defendants were seeking merely to establish defenses. Rather, the RPG Defendants move for judgment on the claims asserted at pages 12-31 of the Answer to the First Amended Complaint and an unpled and withdrawn claim alleging genericness, (Doc. No. 55), while Wal-Mart moves for summary judgment wholly on the basis of unpleaded claims. (Doc. No. 60).

And according to Defendants, "[t]his case presents the fundamental principle of trademark law that generic terms, the common name or the basic nature of goods or services, can never function as a trademark." (Doc. No. 77, at 1). This directly contradicts Defendants' representation to this Court and Plaintiff that "Defendants have chosen not to proceed with original Counterclaim Count TWO, which is not included in Defendants' Amended

---

[6] Notably, the district court decision in *Brannon* (2008) summarily denying a motion to strike without considering the merits and the decision granting a motion to strike in *Custom Hardware* cited at page 19 above (2013) were both authored by the Honorable E. Richard Webber of the Eastern District of Missouri. In other words, Judge Webber recognized that a motion to strike summary-judgment materials was proper after the Eighth Circuit in *Brannon* disregarded his "shortcut" of denying a motion to strike without consideration on the merits.

Counterclaims." (Doc. No. 40, at 7); (See Doc. 10, at 16 ¶27) (which Counterclaim COUNT

TWO alleged that the terms "Sturgis," "Sturgis Bike Week," "Sturgis Motorcycle Rally," and

"Sturgis Rally & Races" are "generic"). SMRI took Defendants at their word and assumed that

the genericness claim had been abandoned in light of Plaintiff's prior motion to dismiss the

genericness claim as nonsensical, only to find Defendants attempting to raise the claim from the

ashes by arguing it on a motion for summary judgment. The Report acknowledges that

"Rushmore moves for an Order to dismiss all of Sturgis' claims, and specifically moved for an

Order that the registered STURGIS trademarks are generic and invalid." (Report, at 26).

However, the Report does not address Plaintiff's argument that the claim had been abandoned

and that Plaintiff seeks to avoid the trap of answering the motion on the merits only to have the

Court find the claim resurrected, presumably by "consent" but without mentioning Rule 15(b)(2).

Instead, the Report presents Plaintiff with a Hobson's choice: Plaintiff may take any

course of action they so choose, so long as they consent that genericness is a valid and subsisting

claim in the case and consent that Wal-Mart can seek affirmative relief without pleading any

counterclaims. But Plaintiff is not at liberty simply to respond on the merits. To do so may revive

Defendants' previously dismissed claim and to make unpleaded claims a part of this case. *See,

e.g., Whitaker v. T.J. Snow Co.*, 151 F.3d 661, 663 (7th Cir. 1998) ("Because both parties

squarely addressed the strict liability theory in their summary judgment briefs, the complaint was

constructively amended to include that claim."). Defendants apparently expect Plaintiff to correct

Defendants' failure to plead a non-dismissible counterclaim for genericness because a response

on the merits effectively would amend Defendants' pleading under Fed.R.Civ.P. 15(b). *Mouser

v. Caterpillar, Inc.*, 336 F.3d 656, 666 (8th Cir. 2003); *see also Wallin v. Fuller*, 476 F.2d 1204,

1210 (5th Cir. 1973) ("Amendment is thus not merely discretionary but mandatory in such a

case."). However, the Eighth Circuit has made clear that implied consent does not result where a party argues that a claim is not properly pled or to request supplemental briefing should the opposing party be permitted to amend. *Fanning v. Potter*, 614 F.3d 845, 851 (8th Cir. 2010) (*citing Whitaker*, 151 F.3d at 663-64); *Culpepper v. Vilsack*, 664 F.3d 252, 259 (8th Cir. 2011). That is exactly what SMRI did.

Accordingly, Plaintiff objects to the Report's characterization that the "Sturgis' thought process is revealed in footnote 4 of this brief: 'As set forth in Plaintiffs memorandum in support of this motion, Plaintiff cannot address the merits without incurring the risk of trial by consent. Fed.R.Civ.P. 15(b)(2).'" (Report, at 14). Indeed, it is not the "Sturgis' thought process" that is at issue; what is at issue is Defendants' pleading and filing of motions in contravention of Rule 56(a). By concluding that "Rule 56(a) nowhere mentions a motion to strike" and then proceeding to consider the one-sided motion on unpled and withdrawn claims, the Court never assessed whether the claims argued by Defendants in their motion were properly before the Court in the first place. To endorse the Report would be in error.

### D.      Plaintiff Objects to the Report's Depiction of the Procedural Posture of this Action

Plaintiff objects to the Report's conclusion that SMRI should have objected to the District Court's stay of the discovery so that the Court could decide the summary judgment and related motions and perhaps narrow the case. In the Report, the Magistrate stated that this amounted to SMRI putting "its eggs in its motion to strike basket," which it characterized as "the wrong choice." (Report, at 12). According to the Magistrate,

> Because of the pending motions for summary judgment an Order was filed suspending discovery pending resolution of the motions because the cross motions for summary judgment could be dispositive. Sturgis did not object the Order. Sturgis did not move to set the Order aside so that Sturgis could acquire facts to respond to Rushmore's motion for summary judgment.

25

(Report, 11). The Magistrate then declared Defendants' facts as "undisputed" because of SMRI's choice.

The Report is highly prejudicial to SMRI, faulting SMRI for not contesting the District Court's *sua sponte* stay order that the Court entered for the benefit of the parties, so as to consider whether the claims and issues could be narrowed. The Magistrate's Report, however, errs for several reasons. First, only Plaintiff's motions had the potential to be dispositive: if the RPG Defendants are estopped and Wal-Mart has no claims, this Court can dispose of all of Defendants' counterclaims, including any and all attempts to cancel Plaintiff's marks. To the contrary, Defendants' motion has no dispositive effect: cancelling any or all of Plaintiff's registrations does not deprive SMRI of its common law rights, which include the right to enforce its trademarks. Accordingly, Plaintiff can still enforce its marks and hold Defendants liable for infringement. Second, the parties had been conducting discovery throughout the Summer of 2012, conducting depositions and working on expert witness matters. (Doc. No. 96). Clearly, Plaintiff was conducting discovery. When the Court issued its Order referring the instant matter and staying discovery, the Court was permitting the issues to be narrowed before the parties invested tens of thousands of dollars on potentially unnecessary discovery on issues such as genericness. The Court should not make any inference based on neither party objecting to the stay of discovery.

## VI.    OBJECTIONS TO THE REPORT'S APPLICATION OF LAW TO FACTS

1.    Plaintiff objects to the Report's finding of the dates by which "the name 'STURGIS' was first used on Rushmore Photos and Gifts ('RPG') merchandise" and that "all have continued in one form or another to the present." (Report, at 22). The cited "facts" were raised first in opposition to Plaintiff's motion for summary judgment (Doc. No. 73, at 11-12, ¶47). As the cited facts are rebuttal facts, they do not stand admitted for purposes of

26

summary judgment. Further, as set forth above, the proffered Niemann Affidavit does not set forth any basis for Mr. Niemann's personal knowledge of what RPG was or was not selling in the "mid-1980s" (when Mr. Niemann was approximately five years old and his parents had yet to purchase the business for another seven years).

2.   Plaintiff objects to the Report's finding that "RPG was solicited to create a postcard featuring the composite logo, as distinguished from STURGIS." (Report, at 23). Plaintiff's Statement of Material Facts sets forth that "Carol Niemann executed a license agreement with Plaintiff's predecessor-in-interest with respect to its intellectual property rights, The Sturgis Chamber of Commerce..." (Doc. No. 68, at 2 ¶1). Accordingly, to the extent that it is material, the issue of whether one party "solicited" another is in dispute.

3.   Plaintiff objects to the Report's finding that "[t]his postcard was licensed from Sturgis Rally & Races, Inc., (as distinguished from plaintiff here which was not created until 2010) for use from the end of July 1999 to September 30, 1999." (Report, at 23). Plaintiff's Statement of Material Facts sets forth that "Carol Niemann executed a license agreement with Plaintiff's predecessor-in-interest with respect to its intellectual property rights, The Sturgis Chamber of Commerce..." (Doc. No. 68, at 2 ¶1). Further, the license itself, a part of the record and entitled to proper consideration, states that "Sturgis Rally & Races, Inc. is assigned the sole agent for the logo and protected language owned by the Sturgis Area Chamber of Commerce..." (Doc. No. 68-3, at 11 ¶13(d)). Accordingly, Sturgis Rally & Races, Inc. was the licensing agent for Plaintiff's predecessor-in-interest with respect to the intellectual property rights at issue here. As an assignee stands in the shoes of the assignor with respect to assigned trademarks, the benefits associated with the license inure to Plaintiff irrespective of Plaintiff's date of incorporation.

27

4.      Plaintiff objects to the Report's finding that "Rushmore has never licensed or attempted

to license STURGIS from the plaintiff, Sturgis Motorcycle Rally, Inc., or any other

party." (Report, at 23). This allegation was made in rebuttal to Plaintiff's motion for

summary judgment and, accordingly, remains an undecided issue of fact. Moreover, RPG

did affirmatively agree, in the License Agreement, that SMRI's predecessor owned rights

in the mark "STURGIS RALLY & RACES", a mark nearly identical or legally the same

as "STURGIS" used for motorcycle rally merchandise and services.

5.      Plaintiff objects to the Reports finding that "[t]he representation to the PTO that the

Sturgis Chamber of Commerce was the 'substantially exclusive' user of STURGIS for

products related to the rally from 1987-2001 is false." (Report, at 23). As set forth above,

the selectively quoted "representation" cited by the Report is not found in the record.

6.      Plaintiff objects to the Report's finding that "[a]mong the opposition were two entities

who now support the registration now that they are owners, in the sense that each has a

person on the five member board of directors of plaintiff Sturgis Motorcycle Rally, Inc."

(Report, at 23). As set forth above, no document in the record shows that any of

Plaintiff's board members serve other than in an individual capacity. Moreover, SMRI's

board does not have just five members and as a non-profit entity SMRI has no owners.

Viewing the evidence in a light most favorable to Plaintiff as the nonmovant, *Small v.*

*McCrystal*, --- F.3d. ----, 2013 WL 599567, *2, the Report's finding must be rejected.

7.      Plaintiff objects to the Report's finding:

> When Good Sports was not the owner of the registered trademark "Daytona
> Beach Bike Week," Good Sports argued the registered trademark "Daytona Beach
> Bike Week" should be cancelled. There appears no difference between "Sturgis
> Bike Week" and "Daytona Bike Week" when it comes to trademark. To be clearly
> understood, Good Sports advanced the same argument in the "Daytona Bike
> Week" trademark case which it opposes in this lawsuit about STURGIS, and

28

> Good Sports advanced the same argument in "Daytona Bike Week" as the
> Rushmore defendants make here. The previously registered Daytona Bike Week
> trademark was cancelled by the District Judge.

(Report, at 23-24). As set forth above, the statements upon which these findings are based

constitute inadmissible hearsay and are not properly before the Court. For the Court's

benefit, Plaintiff would like to point out that Jerry Berkowitz, as President of Good

Sports, joined the Daytona Regional Chambers of Commerce in opposing the registration

of "Daytona Bike Week" by an out-of-town corporation. *Good Sports Daytona, Inc.,*

*Good Sports, Inc., and Daytona Regional Chambers of Commerce, Inc. v. Consolidated*

*Distributors, Inc., et al.*, 6:11-cv-00233-CEH-DAB (M.D. Fla. filed Dec. 20, 2011).[7]

Here, Mr. Berkowitz, as a member of Plaintiff's board, supports Plaintiff as the

successor-in-interest to The Sturgis Chamber's STURGIS-formative marks. Accordingly,

Mr. Berkowitz supports both the position of the respective chambers of commerce:

Daytona Beach does not desire to control or license the term, while Plaintiff as successor-

in-interest to the The Sturgis Chamber has managed carefully its licensing program for

decades. The Report misses entirely how one geographic term may constitute a

protectable trademark, and how another term may lack that additional meaning (compare,

e.g., TALLADEGA, which is both the name of a city in Alabama and subject to U.S.

Trademark Registration No. 1,819,675 since February 8, 1994 for "clothing; namely,

caps and T-shirts" and "entertainment services; namely, organizing and conducting

automobile racing events" and owned by International Speedway Corporation, as

opposed to "Pell City," which is just the name for a nearby city in Alabama not subject to

any trademark registrations).

---

[7] Plaintiff finds it curious that the Report proffers no citation to any opinion of the Middle District of Florida.

8.  Plaintiff objects to the Report's finding that "If STURGIS means the source of products,
    then STURGIS is registrable because it identifies the source of products. If STURGIS
    means the event itself, then STURGIS is not registrable because it does not identify the
    source of a product." (Report, at 21). SUPER BOWL® (U.S. Reg. No. 3,138,590 and
    other registrations, owned by the National Football League) and MARCH MADNESS®
    (U.S. Reg. No. 2,795,200, owned by the National Collegiate Athletic Association) are
    among many phrases that refer to both "the source of products" and "the event itself."
    The Report's juxtaposition of "the source of products" over and against "the event itself"
    is a false choice not recognized by the Lanham Act or otherwise in trademark law. A
    word or phrase can connote a "source of products," "the event itself," or *both*. Here,
    Plaintiff's STURGIS®-formative marks represent both a source of products and services
    *and* an event. Further, the mere fact of geographic uses of the term "Sturgis" by
    nonparties does not preclude Plaintiff from holding a registration for the STURGIS®
    trademark with respect to the Sturgis Motorcycle Rally. TALLADEGA®,
    DARLINGTON®, WATKINS GLEN®, AUGUSTA®, and IDITAROD® each represent
    all three: an event, a place name, and a source of goods. The Report misstates the law of
    trademarks by creating a false choice.

9.  Plaintiff objects to the Report's finding that "[u]nder the circumstances of this case it is
    inequitable to invoke the licensee estoppel doctrine. RPG never was a licensee of
    STURGIS (RPG licensed the composite logo, but not STURGIS)." (Report, at 24). As set
    forth in Plaintiff's statement of facts, Defendant RPG executed a license which stated, in
    part, "The Sturgis Area Chamber of Commerce is the owner of mark registration rights of
    the logo and the protected language 'Black Hills Motor Classic', 'Sturgis Rally & Races',

and 'Black Hills Motorcycle Rally & Races'." (Doc. No. 68, at 2 ¶3). As argued in Plaintiff's brief in support of Plaintiff's Motion for Summary Judgment, Defendant RPG was permitted to use only the Composite Logo, not the aforementioned "protected language," which Defendant RPG acknowledged in writing were the property of SMRI's predecessor. However, the Report unnecessarily restricts its view of the license to ignore this acknowledgement of ownership. Coupled with Defendants' admissions that all of these various terms refer to the Rally, it would be inequitable for Defendants to acknowledge Plaintiff's ownership, on the one hand, and then conflate the terms into a reference such as "Sturgis Motor Classic" to which Defendant RPG now claims exclusive ownership, on the other hand. Accordingly, Defendant RPG should be estopped from challenging Plaintiff's rights either under the doctrine of licensee estoppel or promissory estoppel, as argued by SMRI in its brief. (Doc. No. 67, at 6-11).

10. Plaintiff objects to the Report's finding that "Walmart [sic] is not barred by licensee estoppel because it never was a licensee even of the composite logo." (Report, at 24). Plaintiff does not concede that Wal-Mart can avoid estoppel in light of its selling products produced by Defendant RPG. However, what is clear is that Wal-Mart's own failure to plead counterclaims estops Wal-Mart from challenging Plaintiff's marks as set forth above. Moreover, by not pleading counterclaims, Wal-Mart has precluded Plaintiff from asserting any proper defenses to the claim for cancellation in the first place. In short, Wal-Mart's improper pleading works to prevent Plaintiff from asserting any defense. This is prejudicial to Plaintiff and improper under the Federal Rules.

11. Plaintiff objects to the Court's finding that "RPG's license expired more than 23 years ago." (Report, at 25). As set forth in the record, the license expired in 1999. Accordingly,

the license expired thirteen years ago, not "more than 23 years ago." Even overlooking the counting error, the acknowledgment of ownership was not an acknowledgement that could disappear with the natural expiration of the license, as the license itself did not limit the duration of the acknowledgement to the duration of the license.

12. Plaintiff objects to the Report's finding that "RPG has made no representations or misrepresentations, and has engaged in no conduct which has caused Sturgis to change its position as it relates to STURGIS. Sturgis Motorcycle Rally, Inc., has not been prejudiced or suffered any damage as a result of RPG's conduct, other than the alleged infringement itself which is disputed." (Report, at 25). Plaintiff presented specific facts on this point, most importantly Defendant RPG's acknowledgement of Plaintiff's ownership of specific terms. (Doc. No. 68, at 2-3 ¶¶1-5). Defendant RPG denied that the license constituted a representation of ownership. (Doc. No. 73, at 3). However, the license agreement is part of the summary judgment record, constitutes a written contract, and the legal effect of the terms therein are ripe for decision on summary judgment. (Doc. No. 68-3, at 2). Based on the unambiguous statement of Plaintiff's ownership, the Court should find that Defendant RPG acknowledged that ownership. At minimum, the Court should declare that the issue is in dispute. The Report's conclusion that the licensee addressed only the Composite Logo is in error.

## VII.   OBJECTIONS TO THE RECOMMENDATIONS

1. As set forth above, Plaintiff objects to the recommendation that "the motion by Sturgis Motorcycle Rally, Inc., for summary judgment be DENIED because licensee estoppel and equitable estoppel do not preclude Rushmore from contesting the validity of STURGIS®…" (Report, at 27).

2. Plaintiff objects to the recommendation that Plaintiff's motion for summary judgment be

denied "because Rushmore's application for OFFICIALLY LICENSED STURGIS has

been abandoned and is no longer in dispute in this lawsuit." (Report, at 27). There are no

material facts in dispute over this claim. Indeed, the Report notes that "Rushmore admits

its application to register OFFICIALLY LICENSED STURGIS has been abandoned."

(Id.). Accordingly, Plaintiff is entitled to judgment on this claim and, pursuant to the

Lanham Act, its costs and attorney's fees. Merely concluding that this claim "is no longer

in dispute in this lawsuit" constitutes reversible error.[8] Plaintiff has prevailed completely

on that claim, and renews its request that the Court recognize the resolution of this claim.

3.    Plaintiff objects to the recommendation that "the motion by Sturgis Motorcycle Rally,

Inc., to strike Walmart's [sic] Answer to the Amended Complaint be DENIED because

licensee estoppel and equitable estoppel do not preclude Walmart [sic] from contesting

the validity of STURGIS® and because the challenge to the validity of the registered

STURGIS trademark does not need to be in the form of a counterclaim and can be

challenged by asserting defenses to the claims asserted in the Amended Complaint."

(Report, at 27). Whether Wal-Mart should be estopped under the doctrines of licensee

estoppel or equitable estoppel has no bearing on whether Wal-Mart must plead its

requests for affirmative relief as counterclaims. As set forth above, asking the Court to

cancel Plaintiff's registrations is a request for affirmative relief that must be pled as a

counterclaim. Accordingly, Plaintiff's motion to strike should be granted.

4.    Plaintiff objects to the Report's recommendation that "the motion by Sturgis Motorcycle

Rally, Inc. to strike the defendants' motion for summary judgment be DENIED because

---

[8] Moreover, regardless of the application, Defendants' use of "Officially Licensed Sturgis" will remain a part of this
action insofar as Plaintiff has alleged that such use constitutes infringement of the marks. Merely abandoning the
application does not relieve Defendants of liability for using "Officially Licensed Sturgis" to deceive the public
about the Defendants' right to sell authentic SMRI-licensed STURGIS® goods.

the defendants' motions for summary judgment are not about unpleaded claims as Sturgis Motorcycle Rally, Inc., asserts…" (Report, at 27). As set forth above, Defendants clearly are moving for affirmative relief by asking the Court to cancel Plaintiff's marks. Accordingly, Plaintiff's motion to strike should be granted in full.

5.    Plaintiff objects to the Report's recommendation that "the alternative motion by Sturgis Motorcycle Rally, Inc. to postpone its deadline to submit an opposing brief and supporting materials be DENIED because Sturgis Motorcycle Rally, Inc., did not otherwise respond to the defendants' motion for summary judgment as contemplated by Federal Rule of Civil Procedure 56." (Report, at 27). Again, the Recommendation foists upon SMRI a Hobson's choice: Plaintiff's only choice is to respond to the motion for summary judgment on the merits. As such, and in the instance the Court is not inclined to strike Defendants' motion for summary judgment, Plaintiff respectfully requests that the Court grant Plaintiff's alternative relief that it be permitted to submit an opposing brief and supporting materials until thirty days following the close of discovery (doc. 94, p. 7-8).

6.    Plaintiff objects to the Report's finding that the only facts precluding entry of judgment in favor of Defendants only "relate to the classification of STURGIS as descriptive or generic, to its secondary meaning if classified as descriptive, and to fraud on the Patent and Trademark Office." As set forth above, Defendants' motion for summary judgment has numerous evidentiary and factual problems to which Plaintiff reserves all objections.

Respectfully submitted this 20th day of March, 2013.

                                          */s/*
                                        Michael C. Loos
                                        CLAYBORNE, LOOS & SABERS, LLP
                                        2834 Jackson Blvd., Suite 201
                                        P.O. Box 9129
                                        Rapid City, SD 57709
                                        605/721-1517 (tel)
                                        605/721-1518 (FAX)
                                        mloos@clslawyers.net


                                        Jason M. Sneed
                                        Charles M. Landrum III
                                        SNEED PLLC
                                        610 Jetton St., Suite 120-107
                                        Davidson, North Carolina 28036
                                        704/779-3611 (tel)
                                        JSneed@SneedLegal.com
                                        CLandrum@SneedLegal.com


                                        Attorneys for Plaintiff
                                        Sturgis Motorcycle Rally, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Motion for Admission Pro Hac Vice was served through the Court's ECF system, addressed to the following:

J. Crisman Palmer
GUNDERSON, PALMER, NELSON & ASHMORE, LLP
506 Sixth Street
P.O. Box 8045
Rapid City, SD 57709
cpalmer@gpnalaw.com


Aaron W. Davis (admitted *pro hac vice*)
PATTERSON THUENTE CHRISTENSEN PEDERSEN, P.A.
4800 IDS Center
80 South Eighth Street
Minneapolis, MN 55402-2100
davis@ptslaw.com

Attorneys for Defendants/Counterclaimants

This the 20th day of March, 2013.


_____/s/_____
Michael C. Loos