UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| STURGIS MOTORCYCLE RALLY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-5052-JLV |
| | ) | |
| RUSHMORE PHOTO & GIFTS, INC., | ) | |
| JRE, INC., CAROL NIEMANN, | ) | |
| PAUL A. NIEMANN, BRIAN M. NIEMANN, | ) | |
| AND WAL-MART STORES, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| -AND- | ) | |
| | ) | |
| RUSHMORE PHOTO & GIFTS, INC., | ) | |
| JRE, INC., CAROL NIEMANN, | ) | |
| PAUL A. NIEMANN, AND | ) | |
| BRIAN M. NIEMANN, | ) | |
| | ) | |
| Counterclaimants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STURGIS MOTORCYCLE RALLY, INC., | ) | |
| | ) | |
| Counterclaim Defendant. | ) | |
| | ) | |

**PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST
DEFENDANT WAL-MART STORES, INC. AND/OR, IN THE ALTERNATIVE,
FOR AN ADVERSE INSTRUCTION AGAINST WAL-MART**

Plaintiff, Sturgis Motorcycle Rally, Inc. ("SMRi") moves a default judgment against

Defendant Wal-Mart Stores, Inc. ("Wal-Mart") and/or, in the alternative for an adverse

instruction for failing to collect, preserve, or produce data during the more than three years

Wal-Mart has been a defendant in this case for the sale of counterfeit, infringing and falsely

advertised goods. For the reasons set forth below, the Court should: (1) instruct the jury as to Wal-Mart's destruction of and failure to disclose sales information, except for a seven-month period from February 2015 through August 2015, for which a belated production was needed, and that the jury must presume that the evidence was adverse to Wal-Mart; (2) prohibit Wal-Mart from introducing testimony or materials showing any deductible expenses within the meaning of the Lanham Act, 15 U.S.C. § 1117; (3) upon a finding of infringement, false advertising, or unfair competition, enter judgment in an amount no less than the number of months of infringing sales to Wal-Mart multiplied by the average 2015 monthly sales disclosed by Wal-Mart; and, (4) determine that Plaintiff should be awarded attorney's fees under the "exceptional case" provision of 15 U.S.C. § 1117 in light of Wal-Mart's dilatory discovery conduct.

## I.      RELEVANT HISTORY OF DISCOVERY

SMRI had sought production Wal-Mart's sales and deductible expenses evidence for over three years, but Defendant Wal-Mart evaded such discovery entirely until the day its Rule 30(b)(6) witnesses were deposed in Bentonville, Arkansas on August 26, 2015 pursuant to this Court's August 20, 2015 Order. [Filing No. 155].

On August 20, 2012, Wal-Mart responded as follows to Plaintiff's requests for production regarding sales and purchase data:

*REQUEST FOR PRODUCTION NO. 2:*

*Any and all documents containing or comprising any contracts, purchase orders, invoices, sales receipts, or otherwise reflecting the transaction of business, among any Defendant, on the one hand, and Wal-Mart, on the other hand, pertaining to any goods that have on them or were sold in conjunction with Defendants' Infringing Designations.*

*RESPONSE TO REQUEST FOR PRODUCTION NO. 2:*

*10. Defendant objects to this request on the grounds it is vague and ambiguous and overbroad and seeks confidential and sensitive financial and business information. Defendant objects to the phrase "Infringing Designations" on the grounds it is an erroneous legal conclusion. Subject to and without waiving its objections, defendant responds as follows: **Defendant will produce Gross Ship and Point of Sale reports.***

*REQUEST FOR PRODUCTION NO. 3*

*Any and all documents containing or comprising any contracts, purchase orders, invoices, sales receipts, or otherwise reflecting the transaction of business, among any Defendant, on the one hand, and Wal-Mart, on the other hand.*

*RESPONSE TO REQUEST FOR PRODUCTION NO. 3:*

*Defendant objects to this request on the grounds it is vague and ambiguous and overbroad and seeks confidential and sensitive financial information. The burden of responding to this request outweighs any benefit. Subject to and without waiving its objections, defendant responds as follows: **Defendant will produce Gross Ship and Point of Sale reports regarding the products at issue in this case.***

[Exh. A, Wal-Mart's RFP Responses (emphases added)]. Wal-Mart produced no documents in conjunction with its responses to the requests for production. On August 27, 2012, the Court stayed discovery in this action. [Filing No. 102]. Wal-Mart produced no documents prior to the stay of discovery, pertaining to these or any other requests for production.

On December 2, 2014, the Court lifted the stay of discovery. [Filing No. 135]. The very next day, on December 3, 2014, Plaintiff's counsel inquired via letter as to the status of Wal-Mart's production of documents, to which Wal-Mart's counsel responded on December 17:

*We are in receipt of your letter dated December 3, 2014. We are currently working with Walmart to supplement its responses to Plaintiff's discovery requests. Given the holidays, however, we do not anticipate being able to get the information we need until after the first of the year. We plan on supplementing Walmart's responses during the first or second full week of January 2015.*

[Exh. B, Email Between Counsel]. With no documents forthcoming, Plaintiff again inquired as to the status of the production of documents and Wal-Mart responded on January 13, 2015:

3

> *I am still waiting on a sales report from Walmart before I can supplement the*
> *discovery responses and document production. I hope to receive the report yet*
> *this week, but it's not for certain.*

[Id.]. On January 15, 2015, Wal-Mart's counsel again responded:

> ***The sales report is integral to the supplementation of Walmart's responses that***
> ***we are preparing.*** *Obtaining information from Walmart takes some time, given*
> *the giant nature of the corporation and its bureaucratic structure. We will*
> *produce all of the information together when it is ready, which I mentioned before*
> *should be within the next week. That supplementation will constitute our response*
> *to Plaintiff's letter.*

[Id.]. On April 29, 2015, the Rushmore Defendants produced additional documents, but

Wal-Mart failed to produce any documents from its files or the promised sales reports.

On June 15, 2015, long prior to the close of discovery, Plaintiff noticed Wal-Mart's

deposition for June 30, 2015. [See Filing No. 154, Memorandum in Support of Plaintiff's Motion

to Compel Deposition of Wal-Mart]. The parties reached a stipulation to hold the deposition of

Wal-Mart on August 26th, but Wal-Mart reneged on that stipulation. [Id.]. Plaintiff moved to

compel Wal-Mart's deposition, which motion the Court granted. [Filing No. 155].

On the morning of August 26, 2015—less than two hours before Wal-Mart was to be

deposed—Wal-Mart produced two reports, covering only the period for "fiscal year 2016,"

namely February 1, 2015 through January 31, 2016. [Exh. C, Deposition of Howard Sallerson,

73:22–74:1]. This is a mere seven months of data out of a period of 40 months just since

Wal-Mart was added as a Defendant in this case, not including the many months of sales

preceding Plaintiff filing its amended complaint. Wal-Mart's "production" was insufficient on its

face. Accordingly, Plaintiff inquired about the production during Wal-Mart's deposition.

Shockingly, Wal-Mart testified that the data for prior years *does not exist*:

4

*Q. As of fiscal year 2016, you can ascertain those sales amounts because you changed Wal-Mart's system so as to be able to preserve that information in the Retail Link database, correct?*

**A. That is correct.**

*Q. It's something that's important to your business as being a Buyer for these stores?*

**A. Correct.**

*Q. But for the years 2015 and 2014 and 2013 and 2012, you have no idea, do you?*

**A. Correct.**

*Q. Nor do you even know where to start to find that information?*

**A. Correct.**

*Q. Do you know whether document preservation instructions were provided to each of the Wal-Mart stores that sells Rushmore Photo's Sturgis goods?*

**A. I would not know that.**

[Exh. C, Sallerson, 76:25-77:17 (underlines added)]. Thus, contrary to the representations of Defendants' counsel, Wal-Mart was not preparing sales reports in 2014—Wal-Mart took no steps whatsoever to obtain such data, or even to determine whether the data could be obtained or to instruct its employees to ensure that the data would be preserved.

Wal-Mart further explained that "they wouldn't be able to" collect this data that Wal-Mart admitted, in response to Plaintiff's question, is "one of the most important documents involved" in this litigation:

*Q. Wal-Mart would have to go to each store to determine the nature and quantity and price of purchases made from Rushmore Photo & Gifts for local or regional items prior to fiscal year 2016, correct?*

**A. Correct, <u>but they wouldn't be able to</u>—it comes up as a total department. It doesn't give any specific information as to the category or item, so it would be a very global number that would consist of many things.**

*Q. So how would, for example, Wal-Mart be able to determine the quantity or amount in dollars of Rushmore's Sturgis products sold to the say Spearfish South Dakota store in fiscal year 2014?*

**A. I would have no transparency to that.**

*Q. You don't know how to find that information?*

**A. It would be at the store level.**

*Q. Is that information being preserved and maintained at each of the store levels since this lawsuit was filed in 2011—excuse me, since Wal-Mart was added to the lawsuit in 2012, <u>has that information been preserved at the store level</u>?*

**A. I do not know that.**

*Q. Have you gone to look for that information?*

**A. I have not.**

*Q. Is it possible that that information has been destroyed?*

**A. I do not know that.**

*Q. What would you do to determine if that information even exists at each of the store levels?*

**A. What would I do?**

*Q. Yes. How would you go about finding if that information even exists at a store in Spearfish, South Dakota?*

*A. Since I don't work in the stores I'm not familiar with the accounting practices at the store level.*

*Q. Well, you do understand that my client has sued Wal-Mart for infringement and counterfeiting pertaining to its Sturgis mark and other trademarks, correct?*

*A. Correct.*

*Q. And that it's one of the most important documents involved and series of documents involved is diehard documents that show Wal-Mart's sales of the infringing or counterfeit goods, correct?*

*A. Correct.*

[Exh. C, Sallerson, 74:22–76:14 (underlines added)]. In short, Wal-Mart has taken no steps to identify, preserve, collect, or produce sales data except for a brief period of time during the current calendar year—all in spite of being a party to this litigation for over three and a half years. Wal-Mart's Rule 30(b)(6) witness—the person charged with testifying for the entire company about Wal-Mart's infringing activities—testified under oath that nothing had been done to ascertain Wal-Mart's sale of the counterfeit and infringing goods at issue in this case.

## II.   ARGUMENT

The Eighth Circuit recently held that "federal law applies to the imposition of sanctions for the spoliation of evidence." *Sherman v. Rinchem Co.*, 687 F.3d 996, 1006 (8th Cir.2012). "Under federal law, 'there must be a finding of intentional destruction indicating a desire to suppress the truth.' " *Id.* (quoting *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 746 (8th Cir. 2004)). However, a district court may impose sanctions "even absent an explicit bad faith finding, where a party destroys specifically requested evidence after litigation has commenced." *Gallagher v. Magner*, 619 F.3d 823, 845 (8th Cir. 2010) (*citing Stevenson*, 354 F.3d at 749–50).

In a Lanham Act case, the Court may enter judgment for an amount that the Court finds to be just, in the event that recovery based on profits is inadequate or excessive. *Peter Kiewit Sons', Inc. v. Wall St. Equity Grp., Inc.*, No. 8:10-CV-365, 2014 WL 4843674, at *9–10 (D. Neb. Sept. 29, 2014) (citing 15 U.S.C. § 1117(a)(3)). "Under this method, the benchmark is the likely benefit accruing to the defendant on account of its infringement." *Peter Kiewit*, 2014 WL 4843674 at *9 (*citing Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1157 (7th Cir. 1994)).

"The Court's primary function in making such an award is to make violations of the Lanham Act unprofitable to the infringing party." *Peter Kiewit*, 2014 WL 4843674 at *9 (*citing BASF Corp. v. Old World Trading Co., Inc.*, 41 F.3d 1081, 1092 (7th Cir. 1994); *Playboy Enters., Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1274 (9th Cir. 1982)).

In *Peter Kiewit*, the District of Nebraska found an enhanced profit award to be appropriate, based both on the Lanham Act and broader evidentiary principles. 2014 WL 4843674 at *9. The court found that it would have been unjust "to limit its award solely to proven profits because that would reward the defendants for successfully concealing and destroying evidence." *Id.* ("The Court has no doubt that the defendants' actual profit resulting from use of the Kiewit mark was substantially greater than that for which direct evidence was obtained."). The court also found that it is "well established that sanctions for spoliation of evidence are appropriate where there is an intentional destruction of evidence indicating a desire to suppress the truth." *Id.* at *10 (*citing Hallmark Cards, Inc. v. Murley*, 703 F.3d 456, 460 (8th Cir. 2013); *Sherman v. Rinchem Co., Inc.*, 687 F.3d 996, 1006 (8th Cir. 2012); *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007). The *Pieter Kiewit* court accepted the U.S. Magistrate's recommendation of entry of a default judgment but noted in passing, "[I]f this case had gone to a jury trial, an adverse inference instruction would have been warranted." 2014 WL 4843674 at *10.

Here, Plaintiff has been prejudiced by Wal-Mart's failure to produce, concealment, and destruction of highly relevant sales information. Wal-Mart unquestionably has frustrated Plaintiff's efforts to collect evidence of Wal-Mart's sales of infringing goods, having produced a report covering a mere seven months out of *years* of infringing conduct and false advertisement.

This is unacceptable, especially because Wal-Mart agreed to produce the data in discovery in response to multiple requests for production served by Plaintiff: "Defendant will produce Gross Ship and Point of Sale reports regarding the products at issue in this case." [Exh. A, Wal-Mart's RFP Responses (emphases added)]. Wal-Mart's counsel repeatedly represented that he actively was working to collect that data and merely was waiting on Wal-Mart to provide the reports. [Exh. B]. And Wal-Mart testified that it understood how important this data is:

> *Q. Well, you do understand that my client has sued Wal-Mart for infringement and counterfeiting pertaining to its Sturgis mark and other trademarks, correct?*
> *A. Correct.*
> *Q. And that it's one of the most important documents involved and series of documents involved is diehard documents that show Wal-Mart's sales of the infringing or counterfeit goods, correct?*
> *A. Correct.*

[Exh. C, Sallerson Dep., 76:6–76:14]. Yet Wal-Mart did nothing to collect, preserve, or produce this highly relevant information.

Accordingly, the Court should impose severe sanctions if it finds that Wal-Mart engaged in "intentional destruction indicating a desire to suppress the truth." *Sherman*, 687 F.3d 1006. But sanctions still are appropriate "even absent an explicit bad faith finding, where a party destroys specifically requested evidence after litigation has commenced." *Gallagher*, 619 F.3d at 845. Therefore, Plaintiff asks that the Court to: (A) enter Default Judgment against Wal-Mart for its dilatory discovery conduct; and/or, (B) (1) instruct the jury as to Wal-Mart's destruction of and failure to disclose sales information, except for a seven-month period from February 2015 through August 2015, for which a belated production was needed, and that the jury must presume that the evidence was adverse to Wal-Mart; (2) prohibit Wal-Mart from introducing testimony or materials showing any deductible expenses within the meaning of the Lanham Act, 15 U.S.C. § 1117; (3) upon a finding of infringement, false advertising, or unfair competition,

enter judgment in an amount no less than the number of months of infringing sales to Wal-Mart multiplied by the average 2015 monthly sales disclosed by Wal-Mart; and, (4) determine that Plaintiff should be awarded attorney's fees under the "exceptional case" provision of 15 U.S.C. § 1117 in light of Wal-Mart's dilatory discovery conduct.

### III.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its motion for an adverse instruction against Wal-Mart.

Dated this 5th day of October, 2015.

/s/  Michael C. Loos

Michael C. Loos
CLAYBORNE, LOOS & SABERS, LLP
2834 Jackson Blvd, Suite 201
P.O. Box 9129
Rapid City, SD 57709
605/721-1517 (tel)
605/721-1518 (FAX)
mloos@clslawyers.net

Jason M. Sneed, admitted *pro hac vice*
Charles M. Landrum III, admitted *pro hac vice*
Megan Sorokes
SNEED PLLC
610 Jetton St., Suite 120-107
Davidson, NC 28036
844/763-3347 (tel)
jsneed@sneedlegal.com
clandrum@sneedlegal.com
msorokes@sneedlegal.com

*Attorneys for Plaintiff,*
*Sturgis Motorcycle Rally, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was served through the Court's ECF system, addressed to the following:

J. Chrisman Palmer
Jeffrey R. Connolly
GUNDERSON, PALMER, NELSON & ASHMORE, LLP
506 Sixth Street
P.O. Box 8045
Rapid City, SD 57709
cpalmer@gpnalaw.com
jconnolly@gpnalaw.com


Aaron W. Davis (admitted *pro hac vice*)
Brian Stender (admitted *pro hac vice*)
PATTERSON THUENTE PEDERSEN, P.A.
4800 IDS Center
80 South Eighth Street
Minneapolis, MN 55402-2100
davis@ptslaw.com
stender@ptslaw.com

*Attorneys for Defendants / Counterclaimants*

Dated this 5th day of October, 2015.

/s/  Michael C. Loos

_____

Michael C. Loos