UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| STURGIS MOTORCYCLE RALLY, INC., | CIV. 11-5052-JLV |
| Plaintiff, | |
| vs. | |
| RUSHMORE PHOTO & GIFTS, INC.; JRE, INC., CAROL NIEMANN; PAUL A. NIEMANN; BRIAN M. NIEMANN, and WAL-MART STORES, INC., | |
| Defendants, | ORDER AUTHORIZING THE RPG DEFENDANTS TO MARKET CERTAIN SYMBOLS AND ARTWORK |
| -AND- | |
| RUSHMORE PHOTO & GIFTS, INC.; JRE, INC., CAROL NIEMANN; PAUL A. NIEMANN; and BRIAN M. NIEMANN, | |
| Counterclaimants, | |
| vs. | |
| STURGIS MOTORCYCLE RALLY, INC., | |
| Counterclaim Defendant. | |

**INTRODUCTION**

On May 13, 2016, during a hearing held on a number of matters, the defendants Rushmore Photo & Gifts, Inc., Carol Niemann, Paul A. Niemann, and Brian M. Niemann ("RPG Defendants") orally moved for authorization to market the symbols and artwork contained in Exhibit A and Exhibit D of Docket 308-1. The court entered an order requiring plaintiff to file its brief in response to the oral motion and requiring the RPG Defendants to file a reply brief.   (Docket 344

at p. 3).   Plaintiff opposes the RPG Defendants' motion (Docket 347).   For the reasons stated below, the RPG Defendants' oral motion is granted.

## ANALYSIS

On February 11, 2016, the court entered a preliminary injunction. (Docket 299).   Relevant to the present oral motion, the preliminary injunction contained the following directive:

> IT IS FURTHER ORDERED that defendants RUSHMORE PHOTO & GIFTS, INC., CAROL NIEMANN, PAUL A. NIEMANN, BRIAN M. NIEMAN and WAL-MART STORES, INC., ("the enjoined defendants") are hereby immediately restrained and enjoined from engaging in the following activities:
>
> 1. Using the following trademarks and composite design trademark:
>
>    A.   STURGIS, U.S. Reg. No. 3,923,282;[1]
>
>    B.   STURGIS BIKE WEEK, U.S. Reg. Nos. 2,070,955; 3,825,398; 3,838,171; 3,911,270; and 3,923,236;
>
>    C.   BLACK HILLS MOTOR CLASSIC STURGIS RALLY & RACES BLACK HILLS S.D., U.S. Reg. No. 1,948,097;
>
>    D.   STURGIS MOTORCYCLE RALLY, a common law trademark;
>
>    E.   STURGIS RALLY & RACES, a common law trademark;
>
>    or any colorable imitations of these marks in any advertisement, promotion, offer for sale, or sale of any goods bearing one or more of the marks;

---

[1] In preparing this order, the court noticed a clerical error in the citation to the United States Patent and Trademark Office registration.   The correct registration number is: "3,923,284."   (Trial Exhibit 1 at p. 2).   The preliminary injunction is amended to reflect this correction and all future references will be to "3,923,284."

2

2. Using in commerce any reproduction, counterfeit, copy or colorable imitation of SMRI's Marks, including but not limited to the infringing designations "Officially Licensed Sturgis," "Authentic Sturgis," "Legendary Sturgis," "Licensed Sturgis," "Official Sturgis," "Sturgis Central," "Sturgis Motor Classic," and "Sturgis Rally" (collectively referred to as "Defendants' Sturgis Designations"), without SMRI's consent in a manner likely to cause confusion, mistake, or deception as to the source, origin, sponsorship or approval of the defendant's product;

3. Diluting SMRI's famous STURGIS® mark by blurring or tarnishment;

4. Acting, using, or employing any deceptive act or practice, fraud, false pretense, false promise or misrepresentation or concealed, suppressed or omitted material facts in connection with the sale or advertisement of any merchandise;

5. Registering, trafficking in, or using any domain name that is identical to, confusingly similar to, or likely to dilute SMRI's Marks, including but not limited to:

> AuthenticSturgis.com,
> Legendary-Sturgis.com,
> LicensedSturgis.com,
> OfficialSturgis.com,
> SturgisCentral.com,
> SturgisMotorClassic.com, or
> SturgisRallyOnline.com.

Id. at pp. 8-10.

SMRI's registered and common law trademarks are specifically limited to the motorcycle rally event held annually in Sturgis, South Dakota. See United States Patent and Trademark Office Registrations: No. 3,923,284; No. 2,070,955; No. 3,825,398; No. 3,838,171; No. 3,911,270; and No. 3,923,236. (Trial Exhibit 1 at pp. 2, 7-8 & 10-12). For this reason, the preliminary injunction contained a

provision specifically excluding certain material from the conduct being enjoined:

> IT IS FURTHER ORDERED that use of the name Sturgis or other phrases which contain the name Sturgis in the distribution, marketing and sale of non-rally-related Sturgis, South Dakota, products is not enjoined or prohibited by this preliminary injunction.

Id. at p. 11.

"[T]he legal posture of this case places a heavier burden upon the [RPG Defendants] of avoiding a colorable imitation of or diluting [SMRI's] trade . . . marks than upon a party not already preliminarily enjoined from engaging in such activity."   Howard Johnson Co. v. Khimani, 892 F.2d 1512, 1517 (11th Cir. 1990).   "The effect of an injunction barring the use of plaintiff's trademark is also a bar to the use of any words in close imitation or resemblance to the mark." World's Finest Chocolate, Inc. v. World Candies, Inc., 409 F. Supp. 840, 845 (N.D. Ill. 1976), aff'd, 559 F.2d 1226 (7th Cir. 1977.   "It is well established that the protection of a trademark requires that a party once [found liable for] infringement or unfair competition should keep a safe distance from the margin line between compliance with the order and a violation."   Id. at 844 (referencing Independent Nail & Packing Co. v. Stronghold Screw Products, Inc., 215 F.2d 434, 436 (7th Cir. 1954), and Broderick & Bascom Rope Co. v. Manoff, 41 F.2d 353, 354 (6th Cir. 1930)).   "Like the original infringement itself, the safe distance rule is 'founded on a likelihood of confusion standard.'"   John Allan Co. v. Craig Allen Co. L.L.C., 540 F.3d 1133, 1142 (10th Cir. 2008) (citing

4

Taubman Co. v. Webfeats, 319 F.3d 770, 779 (6th Cir. 2003) (quotation

omitted)).   Where the defendants have been held responsible for "infringing the

trade-mark rights of others, they should thereafter be required to keep a safe

distance away from the dividing line between violation of, and compliance with,

the injunction.   They must do more than see how close they can come with

safety to that which they are enjoined from doing."   Eskay Drugs v. Smith, Kline

& French Laboratories, 188 F.2d 430, 432 (5th Cir. 1951).

The court "possesses broad discretion to vindicate the preliminary

injunction by prohibiting subsequent modifications that do not move a 'safe

distance' away from the trademark infringement."   Sunbeam Products, Inc. v.

W. Bend Co., 123 F.3d 246, 260 (5th Cir. 1997).   See also Scandia Down Corp.

v. Euroquilt, Inc., 772 F.2d 1423, 1432 (7th Cir. 1985) (The court "possesses

substantial discretion to decide how close is too close . . . .").   "The court may

require the [defendants] to choose a distinctively different mark rather than to

hew so close to the line that the parties must interminably return to court to

haggle about every mark."   Id.   "Having once determined that the plaintiff was

entitled to relief, the relief granted should be effective within the terms of the

[injunction]."   World's Finest Chocolate, Inc., 409 F. Supp. at 844.

The RPG Defendants' oral motion seeks leave of the court to use symbols

and artwork depicted in a number of schematics.   See Dockets 308-1 and

308-4.   Because of the grouping of images, the court will address each of SMRI's

objections separately.

5

**"Legendary Sturgis"**

All the images in Docket 308-1 incorporate the phrase "Legendary South Dakota" in one format or another.   SMRI opposes the RPG Defendants' use of the phrase in any form.   (Docket 347).   SMRI argues that during trial the RPG Defendants testified the phrase was used only by the defendants to identify the goods as being associated with the "STURGIS® Motorcycle Rally™ event . . . ."   Id. at p. 4.   Plaintiff uses Paul Niemann's testimony to support its argument.

> Q:   Looking at Exhibit 565, and the number 75 years, that's not a reference to Rushmore Photo & Gifts, Inc., is it?
>
> A:   No.
>
> Q:   That's a reference to the Sturgis Motorcycle Rally, isn't it?
>
> A:   Yes.
>
> Q:   As is the phrase Legendary Sturgis, correct?
>
> A:   Yes.

Id. (referencing Docket 315 at p. 61:20 -62:3).[2]

SMRI claims that during the May 13, 2016, motion hearing the RPG Defendants changed their position and now claim the phrase "referred to the 'legend' of the region . . . ."   Id.   SMRI references the motion hearing testimony of Brian Niemann in support of this argument.

> Q:   [W]hy does Rushmore Photo & Gifts, are they interested in using "legendary" as part of their -- "Legendary Sturgis, South Dakota" design series, Exhibit A [Docket 308-1]?

---

[2]References to citations contained in the trial transcript will refer to the CM/ECF docket page number and not to the transcript page.

A:     "Legendary" is for Rushmore Photo and with what we do. Pertains to the old west being basically South Dakota.   You know, after the Civil War all these towns popped up in South Dakota.   They sent the military out to the Black Hills.   And we use it for Legendary Deadwood, Legendary Sturgis, Legendary Custer.   We have done it for others, Legendary Wall Drug, Legendary Wall, South Dakota.   It pertains to when this region -- it's a legend.   It's kind of like the wild west.

. . .

Q:     Do these [referring to Docket 308-1] in any way pertain to the motorcycle rally?

A:     They do not.

. . .

Q:     The first . . . sentence . . . defendants [are] hereby immediately restrained and enjoined from activities [referring to Docket 299].   Do you see the phrase "Legendary Sturgis" there?

A:     I do.

Q:     Do you see any qualification or exception to that term that would allow you to use that term if you were referring to the old wild west?

. . .

A:     I don't see anything about the old wild west.

Id. at pp. 4-5 (referencing Docket 345 at pp. 86:15-87:1; 87:6-7; 117:11-17 & 24).   SMRI argues "[t]he Court should not hesitate to reject this *post hoc* redefining of the term 'Legendary Sturgis,' which is contrary to the [RPG] Defendants' own deposition and trial testimony."   Id. at p. 5.

The RPG Defendants object to plaintiff's interpretation of the testimony referenced in SMRI's argument.   (Docket 355 at p. 7).   The RPG Defendants claim SMRI took the testimony of Paul Niemann out of context to permit plaintiff

7

"to show that 'Legendary' is always a reference to the Sturgis Motorcycle Rally . . . ." Id.

SMRI's argument misinterprets Paul Niemann's testimony.   Trial Exhibit 565 contained the phrases "Legendary Sturgis," "2015," "75 years," and "Sturgis Motor Classic."[3]   When used with the motorcycle rally-related phrases "2015," "75 years," and "Sturgis Motor Classic," Mr. Niemann's testimony acknowledged that in that context "Legendary Sturgis" was a reference to the rally.   His testimony did not imply or suggest that "Legendary Sturgis" was always intended to be a reference to the rally.

SMRI makes a disingenuous argument when it claims that just because Brian Niemann admitted the phrase "old wild west" was not included in the language of the preliminary injunction, that the injunction intended to prohibit the RPG Defendants from using "Legendary Sturgis" in any context.   The RPG Defendants were specifically enjoined from using "Legendary Sturgis" in any context associated with the motorcycle rally.   (Docket 299 at p. 9).   The preliminary injunction excluded any use of the phrase when referring to the geographical location Sturgis, South Dakota.   "[U]se of the name Sturgis or other phrases which contain the name Sturgis in the distribution, marketing and sale of non-rally-related Sturgis, South Dakota, products is not enjoined or prohibited by this preliminary injunction."   Id. at p. 11.

---

[3]A copy of Trial Exhibit 565 appears in the RPG Defendants' reply brief. (Docket 355 at p. 7).

The Sturgis Public Library, located in City Hall, contains numerous volumes dedicated to Sturgis and its environs having nothing to do with the Sturgis Rally.   The following nonexhaustive list of 14 examples highlights the prehistorical and historical significance of the area which indeed makes it "legendary" without reference to the Rally:

Jay Monaghan, *The Book of the American West* (Bonanza Books, 1963);

Roger Darling, *Custer's Seventh Cavalry Comes to Dakota* (Potomac-Western Press, 1998);

Paul Horsted, *The Black Hills – Yesterday and Today* (Golden Valley Press, 2006);

Bob Karolevitz & Bernie Hunhoff, *Uniquely South Dakota* (The Donning Company Publishers, 1988);

Edward Raventon, *Buffalo Country – A Northern Plains Narrative* (Johnson Books, 2003);

Robert Lee, *Fort Meade & the Black Hills* (University of Nebraska Press, 1991);

Joyce L. Vander Lugt, *Behind the Scenes in South Dakota* (Think Print Publishing Co., 1994);

Robert Lee, *The Black Hills After Custer* (The Donning Company Publishers, 1997);

Charles W. Waldman, *Early Day History of Sturgis and Fort Meade in the Beautiful Black Hills of South Dakota*, Vol. 1 (compiled from the files of the Sturgis Weekly Record, established July 1, 1883);

*Sturgis Tribune – Black Hills Press – Centennial Edition* (October 25, 1978);

Robert J. Casey, *The Black Hills* (Bobbs-Merrill Co., Inc., 1949);

9

> Jack Crawford, *HO! For the Black Hills* (Paul L. Hedren, South
> Dakota State Historical Press, 2012);
>
> *More Meade County Memories 1990* (a compilation of historical
> reports, printed through a grant by the South Dakota Committee
> on the Humanities and the Sturgis Art Council); and
>
> E. Steve Cassells, *Prehistoric Hunters of the Black Hills* (Johnson
> Publishing Co., 1986).

A brief video on TripAdvisor makes the point that though the Rally is of consequence to the modern community, Sturgis is a center for Old West history and a gateway to other tourist attractions having nothing to do with the Rally.

> South Dakota Video: Tour of legendary Sturgis, South Dakota,
> tripadvisor (blackhills travel, March 2009)
> https://www.tripadvisor.com/LocationPhotoDirectLink-g2896
> 2-i19321642-South_Dakota.html, last viewed June 10, 2016.

Sturgis, South Dakota, was and remains a "legendary" town within the concept of the "wild west" and the history of western South Dakota.   SMRI has no right to prohibit the RPG Defendants' use of non-rally-related "Legendary Sturgis" or "Legendary Sturgis, South Dakota" as depicted in the artwork in Docket 308-1.

SMRI's objection is overruled.

### **Sturgis, South Dakota**

SMRI contends the RPG Defendants should not be permitted "to remove 'Sturgis Motor Classic' and substitute 'Sturgis, South Dakota' on the very same, or nearly identical, designs previously sold by them as 'rally merchandise' as SMRI's rights include the STURGIS® mark on goods relating to the STURGIS® Motorcycle Rally™."   (Docket 347 at p. 6).   SMRI also objects to the RPG

10

Defendants' "use of 'Sturgis' in a font much larger in size than the term 'South Dakota' . . . . [because] [t]his usage brings attention to the term 'Sturgis' rather than to the geographical term 'Sturgis, South Dakota.'" Id. SMRI submits the court should require any "Sturgis, South Dakota" product to "add some non-rally related indicia so as to be clear that the product fits within the Court's narrow expection of 'non-rally-related Sturgis, South Dakota' products." Id. SMRI claims "Sturgis" or "Sturgis, South Dakota" standing alone, or with minimal decorative art, is not a 'safe distance' for these Defendants, especially in light of their prior false advertising and unfair competition." Id. SMRI argues the RPG Defendants' use of "skulls, stylized eagles, American flags" on rally-related goods now make those symbols off-limits. Id. at p. 7. SMRI asserts "[t]he public deserves a respite from [the RPG Defendants'] confusing activities." Id. at p. 6.

The RPG Defendants counter that SMRI "is asking the Court to prevent all uses of phrases that contain the name Sturgis, even for non-rally-related Sturgis, South Dakota products, so as to eliminate the exception to the Court's injunction altogether." (Docket 355 at p. 2). The defendants argue "Plaintiff's attempt to extend its alleged intellectual property rights to preclude non-IP related business activities is anti-competitive, unfair competition, which constitutes unclean hands and is a violation of federal antitrust laws." Id. at p. 8 (referencing Phi Delta Theta Fraternity v. J.A. Buchroeder & Co., 251 F. Supp. 968, 979-80 (W.D. Mo. 1966)).

In closing argument during the jury trial, SMRI's attorney specifically told the jury that plaintiff's trademark claims were not asserted against the defendants or others "using Sturgis fairly to denote their geographic location. That's a fair use." (Docket 329 at p. 46:16-19).   During the May 13, 2016, hearing plaintiff's counsel reiterated the limitations of plaintiff's marks when he stated "Plaintiff['s] Sturgis mark is Sturgis relating to the Sturgis Motorcycle Rally." (Docket 345 at p. 96:7-8).   The preliminary injunction was issued with that concession, the limitations of SMRI's trademark registrations with the United States Patent and Trademark Office, and the jury verdict in mind.

SMRI does not have trademark rights to American flag images,[4] bald eagle images, gothic artwork, skull and crossbones images, flames, pistols, or any combination of those symbols or artwork.   Whether some members of the motorcycle community, rally attendees or SMRI may envision these symbols and artwork as signs of the rally, that argument was not the basis of plaintiff's claims at trial and not the foundation for the jury's verdict in favor of SMRI.   Nor was that argument pertinent to the court's decision to enter a preliminary injunction. What was pertinent for purposes of the injunction exception for "non-rally-related" products was plaintiff's own concessions and the Patent and Trademark Office registrations which restricted SMRI's trademarks to only "rally-related" products.

---

[4] See 15 U.S.C. § 1052 ("No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration . . . unless it – [c]onsists of or comprises the flag . . . of the United States . . . or any simulation thereof.").

The court concludes the RPG Defendants' use of the images proposed comport with the language and intent of the preliminary injunction.   The RPG Defendants' proposed symbols and artwork do not constitute a "close imitation or resemblance" to plaintiff's marks and are a "safe distance" from any trademark infringement or violation of the preliminary injunction.   World's Finest Chocolate, Inc., 409 F. Supp. at 845, and Sunbeam Products, Inc., 123 F.3d at 260.   SMRI's objection is overruled.

## ORDER

Based on the above analysis, it is

ORDERED that the RPG Defendants' oral motion for authorization to market the symbols and artwork contained in Exhibit A and Exhibit D of Docket 308-1 is granted.

IT IS FURTHER ORDERED that the RPG Defendants are authorized to market the symbols and artwork contained in Exhibits A-0 of Docket 308-1 and Exhibits A-L of Docket 308-4, which are attached to this order and incorporated by reference.

Dated June 10, 2016.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE





# LEGENDARY
# STURGIS
# SOUTH DAKOTA







EXHIBIT

C



CV-05052-JLV    Document 308-1    Filed 04/01/15    Page 5 of 15 Page





Case 5:11-cv-05052-JLV   Document 324-1   Filed 04/01/16   Page 8 of 15 PageID #: 6748

EXHIBIT

F





EXHIBIT

H





EXHIBIT

I







EXHIBIT

K





EXHIBIT

L



EXHIBIT

M



EXHIBIT

EXHIBIT

| Style #: CU4099 | Body Color: black | Body Style: Customer Providing | TH |





© RPG

EXHIBIT

Style #: CU4104

Case 5:11-cv-05052-JLV   Document 356-4   Filed 06/10/16   Page 2 of 7 PageID #: 9916

Body Color: Black

Body Style: customer providing

TH



Style #: CU4115

Body Color: BLK

Body Style: Customer providing

TH

| Style #: CU4114 | Body Color: Orange,Black,Military Green,Red | Body Style: G5000 | TH |
|---|---|---|---|

Case 5:11-cv-05052-JLV   Document 209-4   Filed 04/01/16   Page 4 of 7 PageID #: 6778



EXHIBIT
G

EXHIBIT
H



Case 5:11-cv-05052-JLV   Document 308-4   Filed 04/01/16   Page 6 of 7 PageID #: 6780





5:11-cv-05052-JLV   Document 308-4   Filed 04/01/16   Page 7 of 7 PageID #: 6