UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| STURGIS MOTORCYCLE RALLY, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>RUSHMORE PHOTO & GIFTS, INC.;<br>CAROL NIEMANN; PAUL A. NIEMANN;<br>BRIAN M. NIEMANN, and WAL-MART<br>STORES, INC.,<br><br>Defendants,<br><br>-AND-<br><br>RUSHMORE PHOTO & GIFTS, INC.;<br>CAROL NIEMANN; PAUL A. NIEMANN;<br>and BRIAN M. NIEMANN,<br><br>Counterclaimants,<br><br>vs.<br><br>STURGIS MOTORCYCLE RALLY, INC.,<br><br>Counterclaim Defendant. | CIV. 11-5052-JLV<br><br><br><br>ORDER |

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................... 2
II.     PROCEDURAL HISTORY...................................................... 3
III.    ISSUES TO BE RESOLVED................................................... 8
        A.    SMRI's Motion to Extend Deadlines ............................. 8
        B.    SMRI's Motion to Dismiss ACPA Claim ...................... 12
              1.    Defendants' efforts and expense involved in preparing
                    for trial ................................................................ 14
              2.    Excessive delay and lack of diligence by the plaintiff
                    in prosecuting the action ..................................... 16
              3.    Insufficient explanation of the need for dismissal ............. 17
              4.    The status of the lawsuit..................................... 19
        C.    Defendants' Motion for Judicial Notice....................... 21

D.     Defendants' Motion for Summary Judgment ............................... 22
     1.     Standard of review ...................................................... 22
     2.     Undisputed material facts ........................................... 23
     3.     Analysis ......................................................................... 27
E.     Defendants' Motion to Strike ACPA Jury Demand ....................... 30
F.     Defendants' Motion for Damages for Improvidently Issued
     Preliminary Injunction ............................................................... 30
     1.     Amended preliminary injunction .................................. 31
         A.     RP&G's claims ..................................................... 35
         B.     Analysis ............................................................... 38
     2.     Contempt of court ....................................................... 43
     3.     Attorneys' Fees ........................................................... 44
G.     Defendants' Motion for Application of Equitable Defenses ........... 46
     1.     Relevant facts .............................................................. 46
     2.     Legal background ......................................................... 50
         A.     Acquiescence ...................................................... 51
             1.     Analysis ...................................................... 52
             2.     Conclusion ................................................. 55
         B.     Laches .................................................................. 55
             1.     Analysis ...................................................... 58
             2.     Conclusion ................................................. 60
         C.     State claims ......................................................... 61
             1.     Deceptive trade practices ........................... 61
             2.     Laches ......................................................... 61
             3.     Conclusion ................................................. 61
         D.     Unclean hands .................................................... 62
             1.     Defendants' Conduct .................................. 64
                 A.     RP&G Defendants ............................... 65
                 B.     Wal-Mart ............................................ 67
             2.     SMRI conduct .............................................. 67
                 A.     2001-2015 ........................................... 68
                 B.     2018-2020 ........................................... 73
     3.     Defendants entitled to equitable defenses ........................ 79
         A.     Rushmore Photo & Gifts ..................................... 79
         B.     Carol Niemann ..................................................... 80
         C.     Paul Niemann ...................................................... 82
         D.     Brian Niemann ...................................................... 83
         E.     Wal-Mart. ............................................................ 84
IV.    ORDER ........................................................................................ 85

# I.    INTRODUCTION

Following remand from the United States Court of Appeals for the Eighth

Circuit, <u>Sturgis Motorcycle Rally, Inc. v. Rushmore Photo and Gifts, Inc., et al</u>,

908 F.3d 313 (8th Cir. 2018) ("<u>SMRI v. RP&G</u>"), another barrage of motions was filed. As detailed in this order:

1.   SMRI's motion to extend the discovery deadline is denied;

2.   SMRI's motion to dismiss its anti-cybersquatting consumer protection act ("ACPA") claim is denied;

3.   Defendants' motion for judicial notice is granted;

4.   Defendants' motion for summary judgment on SMRI's ACPA claim is granted;

5.   Defendants' motion to strike SMRI's jury demand on its ACPA claim is denied as moot;

6.   Defendants' motion for money damages based on an improvidently issued preliminary injunction is granted;

7.   Defendants' motion for an order to show cause premised on SMRI's failure to pay previously awarded attorneys' fees is granted;

8.   Defendants' motion for application of equitable defenses is granted; and

9.   SRMI's money judgment is vacated.

## II.   PROCEDURAL HISTORY

On April 24, 2012, plaintiff Sturgis Motorcycle Rally, Inc., ("SMRI") filed an amended complaint alleging trademark infringement and other claims. (Docket 52). On May 4, 2012, defendants Rushmore Photo & Gifts, Inc., JRE, Inc., Carol Niemann, Paul Niemann, and Brian Niemann (jointly referred to as the "RP&G Defendants") filed their answer and counterclaim. (Docket 55). On May 16, 2012, SMRI filed its reply to the RP&G Defendants' counterclaim.

(Docket 58).  On May 18, 2012, defendant Wal-Mart, Stores, Inc. ("Wal-Mart")
filed its answer.[1]  (Docket 60).

On October 30, 2015, after a ten-day trial, the jury returned a
unanimous verdict in SMRI's favor on the following counts: (1) registered
trademark infringement; (2) unregistered trademark infringement;
(3) trademark dilution; (4) deceptive trade practices; (5) violations of the Anti-
Cybersquatting Consumer Protection Act; (6) false advertising; and (7) unfair
competition.  (Docket 264).  The jury unanimously found in favor of SMRI on
its claims of infringement of the registered STURGIS®, STURGIS BIKE WEEK®,
and Composite Design marks and of the unregistered STURGIS MOTORCYCLE
RALLY™ and STURGIS RALLY & RACES™ marks (jointly referred to as "SMRI's
Marks").  (Docket 264).  The jury also unanimously found in favor of SMRI on
its claim of dilution of the famous STURGIS® mark.  Id.  The court entered
judgment on those claims in favor of SMRI on December 2, 2015.  (Docket
269).

Consistent with the jury's verdict, the court entered judgment in favor of
SMRI "and against the defendants as follows: Rushmore Photo & Gifts, Inc., for
the sum of $158,750; . . . Carol Niemann for the sum of $156,250; Paul A.
Niemann for the sum of $156,250; Brian M. Niemann for the sum of $158,750;
and Wal-Mart Stores, Inc., for the sum of $230,000."  (Docket 269 at pp. 1-2).

---

[1]For of the remainder of this order, "defendants" refer to Rushmore Photo
& Gifts, Inc., Carol Niemann, Paul Niemann, Brian Niemann and Wal-Mart,
unless otherwise indicated but not JRE, Inc.  On March 10, 2017, the court
granted "defendants' motion . . . for judgment as a matter of law as to JRE,
Inc.[.]"  (Docket 420 at p. 63).

On February 11, 2016, while defendants' post-trial motions were pending, the court entered a preliminary injunction in favor of SMRI and against the defendants.  (Docket 299).   On March 10, 2017, the court denied defendants' motions for judgment as a matter of law and for a new trial. (Docket 420 at p. 63).  The order granted in part and denied in part "defendants' motion . . . for the application of equitable defenses . . . . [And held] that SMRI is barred from recovering damages and profits from the defendants for the time period prior to October 30, 2015, the date of the jury verdict."  Id.

On July 21, 2017, the court entered a permanent injunction in favor of SMRI and against the defendants.  (Docket 451).  Among other things, the permanent injunction required the defendants to "impound and destroy" certain products and advertisements, to "transfer to SMRI [defendants'] domain name registrations . . . . and South Dakota trademark registrations[.]"  Id. at p. 3.  The provisions of the permanent injunction were "stayed until 60 days after all appeals are resolved."  Id.

On November 2, 2018, the Eighth Circuit issued a decision affirming in part, reversing in part and remanding for further proceedings consistent with the court's decision.  (Docket 468); see SMRI v. RP&G, 908 F.3d 313.  Based on the directive of the Eighth Circuit and the district court's analysis of the positions of the parties, this court held, among other things:

[T]hat the STURGIS mark is invalid.  (Docket 489 at p. 8);

[T]hat the jury finding the defendants infringed on the STURGIS mark . . . is vacated.  Id.;

5

[T]hat the jury finding the defendants did not infringe on the TAKE THE RIDE TO STURGIS mark . . . is affirmed.  Id.;

[T]hat the jury finding the STURGIS BIKE WEEK mark not invalid . . . is affirmed.   Id.

[T]hat the jury verdict in favor of SMRI on the STURGIS BIKE WEEK mark . . . is affirmed.  Id. at p. 9;

[T]hat the jury verdict in favor of SMRI on the BLACK HILLS MOTOR CLASSIC STURGIS RALLY & RACES BLACK HILLS S.D. mark ("Composite Design mark" or the "Monahan mark") . . . is affirmed.  Id.;

[T]hat the jury finding the defendants' Sturgis Designations are counterfeits of the Composite Design mark . . . is vacated.  Id.;

[T]hat the STURGIS MOTORCYCLE RALLY mark is invalid.  Id.;

[T]hat the jury finding the defendants infringed on the STURGIS MOTORCYCLE RALLY mark . . . is vacated.  Id.;

[T]hat the STURGIS RALLY & RACES mark is invalid.  Id. at p. 10;

[T]hat the jury finding the defendants infringed on the STURGIS RALLY & RACES mark . . . is vacated.  Id.;

[T]hat the jury verdict in favor of SMRI on the trademark dilution claim . . . is vacated.  Id.;

[T]hat the jury verdict in favor of SMRI on the deceptive trade practices claim . . . is affirmed.  Id.;

[T]hat the jury verdict in favor of SMRI on the anti-cybersquatting consumer protection act claim . . . is vacated.  Id.;

[T]hat the jury verdict in favor of SMRI on the false advertising claim . . . is affirmed.  Id.;

[T]hat the jury verdict in favor of SMRI on the unfair competition claim . . . is affirmed.  Id.;

[T]hat the portions of the March 10, 2017, order . . . granting in part defendant's motion for application of the equitable defenses . . . are vacated.  Id. at p. 11;

> [T]hat the portions of the March 10, 2017, order . . . vacating the money judgment and barring SMRI from recovering money damages for the time period prior to October 30, 2015, the date of the jury verdict . . . are vacated.   As modified by this order, any money judgment in favor of SMRI is held in abeyance pending the court's resolution of defendants' equitable defenses.  Id.;
>
> [T]hat the order on costs . . . The court will revisit costs after resolution of the issues to be addressed following this order.  Id. at p. 12; [and]
>
> [T]hat the order on attorneys' fees . . . is affirmed.  Id.

On February 15, 2019, the court vacated the earlier permanent injunction and entered an amended preliminary injunction.  (Docket 490).  The amended preliminary injunction enjoined the defendants from using "STURGIS BIKE WEEK," "BLACK HILLS MOTOR CLASSIC STURGIS RALLY & RACES BLACK HILLS S.D.," SMRI's marks and the Composite Design Mark.  Id. at p. 2.  Similar impound and destroy provisions were included but were "stayed until 60 days after all appeals are resolved."  Id. at p. 3.  Consistent with Fed. R. Civ. P. 65(d) the court imposed a bond on SMRI.  Id.

On March 15, 2019, SMRI filed a motion for reconsideration of the amended preliminary injunction together with a supporting legal memorandum.  (Dockets 501 & 502).  Relevant to the matters currently before the court, the SMRI motion asked the court to vacate the $376,539 bond requirement.  (Docket 501 at p. 2).  The court extended the deadline for SMRI to post the full amount of the bond until January 10, 2020.  (Docket 519 at p. 23).

Based on SMRI's failure to post bond, on March 24, 2020, the amended preliminary injunction imposed on the defendants on February 15, 2019, was

vacated.  (Docket 541 at pp. 5-6).  On SMRI's motion, the order struck

"plaintiff's claim for injunctive relief on . . . the [ACPA] claim[.]"  <u>Id.</u> at p. 6.

## III.   ISSUES TO BE RESOLVED

### A.   SMRI'S MOTION TO EXTEND DEADLINES

On December 11, 2019, the court granted the parties' motions for

discovery on plaintiff's ACPA claim.  (Docket 520 at p. 3).  In part, the order

allowed the following discovery:

> SMRI may serve interrogatories and requests for production of documents on the RP[&]G Defendants seeking information and documents regarding the ACPA claim for the time period beginning on October 31, 2015, to the present.  <u>Id.</u> at p. 4;

> SMRI and the RP[&]G Defendants may each take up to three depositions related to the written discovery permitted above.  <u>Id.</u>;

> [P]laintiff's expert disclosures, including a written report, shall be due on or before March 10, 2020, and that defendants' expert disclosures, including a written report, shall be due on or before April 10, 2020.  <u>Id.</u> (bold omitted); and

> [A]ll discovery, including expert depositions, must be concluded on or before June 19, 2020.  <u>Id.</u> at p. 5 (bold omitted).

On May 14, 2020, SMRI filed a motion to extend the remaining deadlines

by 120 days.  (Docket 549 at p. 1).  SMRI's grounds for its motion focused on

defendants' notice of a Fed. R. Civ. P. 30(b)(6) deposition of plaintiff.  <u>Id.</u> at p. 2.

Plaintiff argued that "due to travel restrictions related to COVID-19, and in the

interests of protecting the parties, their counsel and all related court personnel,

an in-person deposition is not feasible at this this time."  <u>Id.</u> at p. 2.  SMRI

represented that it "intends to provide its witness for a deposition at a mutually

agreeable time and date when health concerns dissipate, yet Plaintiff would not

intend to produce its witness until it is safe to do so." Id.  Because "the
discovery period is set to close on June 19, 2020," SMRI asserted "Defendants
will not be able to conduct a 30(b)(6) deposition in person before that time due
to general business disruptions and travel restrictions related to COVID-19."
Id.  SMRI submitted an "extension of 120 days would allow for flexibility in the
scheduling of a deposition and conclusion of any other necessary discovery."
Id.  Plaintiff's motion acknowledged the "Defendants would not consent to the
requested relief."  Id.

Defendants oppose SMRI's motion for extension of discovery.  (Docket
561).  Prior to SMRI's motion, defendants filed a motion for summary judgment
together with a legal memorandum, statement of undisputed material facts, six
declarations and a total of 20 exhibits.  (Dockets 550-57, 556-1 through 556-9,
557-1 through 557-11 & 558).

First, defendants oppose the motion because SMRI "failed to show good
cause to extend the written discovery deadline."  (Docket 561 at p. 1).
Defendants assert since December 10, 2019, "SMRI has not served any written
discovery[] [and] [t]he COVID-19 pandemic has nothing to do with that failure."
Id. at pp. 1-2.

Second, defendants believe only a 30-day extension is necessary for
deposition discovery not the 120-day extension requested by SMRI.  Id. at p. 2.
"As early as March 31, 2020," defendants argue "SMRI knew that Defendants
would object to a blanket 120-day extension. . . . Instead of diligently moving
this Court to extend the deadlines at that time, SMRI waited six weeks and

filed this motion a mere six days before the deadline to serve written discovery to comply with the present scheduling order." Id. at p. 3.  Defendants contend "[t]his is not the level of diligence required by a party to meet the Rule 16 'good cause' standard." Id.

Third, prior to and in SMRI's motion, defendants submit SMRI had not disclosed any information about who it intended to depose.  Id. at p. 2. Defendants submit they "confirmed with the defendants' expert, Dr. James Wright, and defendant Brian Niemann that they are both willing to attend in-person depositions so long as all necessary [COVID-19] precautions are taken." (Docket 562 ¶ 5).  Defendants only intend to take one deposition—a Rule 30(b)(6) deposition of SMRI's designated representative.  (Docket 561 at p. 2). While "[d]iscovery has been re-open[ed] for six months," defendants argue "SMRI's failure to even identify who it wishes to depose further demonstrates SMRI's lack of diligence in attempting to meet the discovery deadline." Id. at p. 4.

Finally, defendants assert that SMRI did not disclose "an ACPA expert by its March 10, 2020 deadline, despite the fact [SMRI] expressly demanded expert discovery be allowed on its ACPA claim." Id. at p. 3 (referencing Docket 520 at pp. 4-5).

SMRI chose not to file a reply in support of its motion.  Plaintiff's motion makes no mention of wanting to take the depositions of defendants' expert witness, Dr. Wright, defendant Brian Niemann or anyone else.  (Docket 549).

For that reason, the court will accept defendants' counsel's statements regarding the status of discovery.  Fed. R. Civ. P. 11(b)(3).

The Federal Rules of Civil Procedure emphasize the importance of compliance with the rules.  Under Rule 16, the court's scheduling order may only be modified "for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4); see also In re Milk Products Antitrust Litig., 195 F.3d 430, 437 (8th Cir. 1999) ("When the district court has filed a Rule 16 pretrial scheduling order, it may properly require that good cause be shown for leave to file an amended pleading that is substantially out of time under that order.") (citations omitted); Cf. Fed. R. Civ. P. 6(b)(1)(B) ("When an act . . . must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect.").  "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements."  Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir. 2001).  A district court's discovery rulings are reviewed for abuse of discretion.  Id.

SMRI fails to "make the requisite showing" of "good cause."  Id.  SMRI did not display any diligence in attempting to comply with the court's December 11, 2019, scheduling order.  Months before the expiration of the June 19, 2020, discovery deadline, procedures had developed to conduct remote depositions by video to avoid in-person contact and travel restrictions cause by the COVID-19 pandemic.  Despite this, plaintiffs took no steps to undertake discovery.  SMRI conducted *no* discovery whatsoever and thwarted defendants'

efforts to complete a Rule 30(b)(6) deposition.  SMRI's conduct does not constitute a good faith effort to comply with the court's scheduling order. SMRI's conduct borders on bad faith.  The court agrees with the defendants that the only reason SMRI wanted an extension of the discovery deadline was to "prolong this lawsuit to stall cancellation of its invalid STURGIS trademark." (Docket 561 at p. 4 n.1) (referencing id. at pp. 5-7).

Plaintiff's motion for an extension of the discovery schedule is denied.

B.    SMRI'S MOTION TO DISMISS ACPA CLAIM

SMRI moves to dismiss the ACPA claim of its amended complaint. (Docket 569).  Plaintiff makes two representations as the basis for its motion. First, SMRI "acquired through the open market the seven domain names subject to the claim after Defendants abandoned them last year . . . and no longer need . . . the equitable remedy of having the domain names transferred to it."  Id. at p. 1.  SMRI "discovered the domain names and their availability and acquired them on or about April 25, 2019."  (Docket 570 at p. 3).

Second, SMRI asserts that "despite its entitlement to monetary remedies against Defendants for violation of the ACPA . . . Plaintiff no longer can afford to devote its limited resources to pursuing the claim when faced with Defendants' insurance-funded defense."  (Docket 569 at p. 1).  Plaintiff contends "the costs associated with further litigation . . . have mounted substantially. . . . [And] the Defendants have . . . served two expert witness reports, filed numerous declarations, filed motions such as a motion to strike

and a summary judgment motion, and sought to take deposition testimony subject to Rule 30(b)(6)."  (Docket 570 at p. 3).

For these reasons, SMRI asks that its ACPA claim be dismissed with "each side bearing their own costs and fees, and for such other and further relief as to the Court deems just and reasonable."  Id. at pp. 3-4 (referencing Fed. R. Civ. P. 41(a)(2)).

Defendants resist plaintiff's motion.  (Docket 571).  Defendants argue all of the factors which must be considered under Rule 41(a)(2) "weigh against granting SMRI's motion."  Id. at p. 1.   Defendants argue the court may "impose conditions on a dismissal such as dismissing with prejudice, awarding costs and fees to the defendant, or declaring the defendant to be the prevailing party so it can pursue fees under a cost-shifting statute, such as the Lanham Act." Id. at p. 7.

In reply, SMRI agrees the court may dismiss the ACPA claim with prejudice as SMRI "has no intention to further litigate these claims[.]"  (Docket 575 at p. 1).   SMRI submits it "is not inclined in the context of these pleadings to address each and all of the Defendants' contentions resisting the motion to dismiss. . . . As to any further and additional terms or relief separate from SMRI's motion, the Court retains jurisdiction and Defendants' recourse (if any) is accommodated by other statutes or rules."  Id. at p. 2.

Rule 41 directs the court as to how and when a motion to dismiss may be granted under these circumstances.  "[A]n action may be dismissed at the plaintiff's request only by court order, on terms that the court considers

13

proper." Fed. R. Civ. P. 41(a)(2). "The purpose of Rule 41(a)(2) is primarily to prevent voluntary dismissals which unfairly affect the other side." Paulucci v. City of Duluth, 826 F.2d 780, 782 (8th Cir. 1987). The court's ruling is reviewed for abuse of discretion. Id. at pp. 782-83. When considering a voluntary motion to dismiss, the "court is not limited to considering just the expenses and costs related to the lawsuit." Id. at 783. The court is required to consider the four Paulucci factors to resolve SMRI's Rule 41(a)(2) motion. Id.

1.   Defendants' efforts and expense involved in preparing for trial

During the January 16, 2019, post-remand status conference, counsel for SMRI advised the court of plaintiff's view of the retrial of the ACPA claim.

> I will make a note about the retrial, that the cybersquatting claim was only a $5,000 claim to the jury, but when you are talking about statutory damages on a seven-domain name claim, each at $150,000 potential damages per domain name registered in bad faith, we are looking at a million fifty thousand dollars potential claim to be retried.

(Docket 495 at pp. 5:24-6:5).[2] With that claim in mind, plaintiff's counsel advised the court:

> [W]e also think new discovery and a new discovery period on the ACPA claims would be proper and appropriate. . . . [W]e think there should be a discovery period and an expert discovery period on these ACPA issues. . . .
>
> What's the nature of the bad faith in registering these domain names? What do these witnesses have to say about that? How are they registered? When were they registered? Have they been maintained? How have they been used? What consumer impressions have been derived at from that? What do the forensic computer analysts say about the use of those domain names

_____

[2]Because of the formatting of the status hearing transcript and all other transcripts the court cites to the pages in CM/ECF as opposed to the pages of the transcripts.

> before the Court orders them enjoined?  Those are some of the
> issues that could be addressed in discovery on that ACPA claim.

Id. at pp. 65:24-66:16.  SMRI's counsel argued "if Your Honor with the
authority of the Court is going to order things in additional discovery, then let's
have it on the ACPA case as well, because if there's some additional discovery, I
would like to take on that."  Id. at p. 67:11-15.

It was in part SMRI's argument which convinced the court to allow an
additional period of discovery.  (Docket 520 at pp. 2-3).  With plaintiff's request,
the court authorized SMRI to serve interrogatories and requests for production
of documents on the defendants "regarding the ACPA claim for the time period
beginning on October 31, 2015 [the day of the verdict], to the present."  Id. at
p. 4.  SMRI's expert disclosures and written reports were due on March 10,
2020.  Id. (bold omitted).  Defendants' expert disclosures and written reports
were due on April 10, 2020.  Id. (bold omitted).

It was this ruling that obligated the defendants to prepare their defense
to SMRI's ACPA claim.  Among the many things defendants did were:

> Retain an expert witness, Dr. James Wright, to address ACPA
> liability and damages issues and issue his report at a cost of
> $10,000.  (Docket 573 ¶ 9);
>
> Retain an internet digital company, Internet Archive, to
> authenticate captures of Rushmore Photo & Gifts historic internet
> content at a cost of $310.  Id.; and
>
> Prepare notices of depositions for the Rule 30(b)(6) deposition,
> develop counsel's deposition notes, travel from Minneapolis to
> Rapid City and return, and attend the June 19, 2020, deposition
> all at a cost of $5,000.  Id. ¶ 10.

The court adopts defendants' explanation of the process which occurred relating to the canceled Rule 30(b)(6) deposition because SMRI's counsel failed to appear for the deposition or seek a motion to quash from the court in advance of the date set by the notice of deposition.  Fed. R. Civ. P. 45(d)(3).

This factor weighs heavily in defendants' favor.

2.    <u>Excessive delay and lack of diligence by the plaintiff in prosecuting the action</u>

As described above, SMRI vehemently insisted on engaging in pretrial discovery, including written interrogatories, retaining experts and taking depositions on the ACPA claim.  Yet, over the course of the next eighteen months, SMRI did nothing.  <u>See</u> Docket 562 ¶¶ 4 & 5.

For over six months, SMRI waffled as to if and when a Rule 30(b)(6) deposition would take place.  SMRI's counsel failed to work with defense counsel to set the deposition in light of the COVID-19 pandemic.  Knowing full well defendants' notice of deposition was issued for June 19, 2020, counsel for SMRI failed to discuss the matter further with defense counsel or to file a motion to quash.

SMRI's lack of candor with the court and opposing counsel is further illustrated by the fact that on April 25, 2019, it purchased the seven domain names which were the subject of plaintiff's ACPA claim yet did not disclose this information to the court or the defendants.  Instead, SMRI waited a full fourteen months to announce it was no longer interested in pursuing the ACPA claim.  All the while, defendants were preparing their defense for the ACPA trial, filing a motion for summary judgment and other motions.

16

While doing nothing on the ACPA claim, plaintiff misled the United States Patent and Trademark Office ("PTO") by asserting the STURGIS mark was not invalid because the decisions of the Eighth Circuit and this court were merely interlocutory. See Docket 562-4 at p. 3 ("Respondent [SMRI] contends that the civil action [SMRI v. RP&G, CIV. 11-5052 (D.S.D. 2011)] is not yet final and that the Eighth Circuit decision [SMRI v. RP&G, 908 F.3d 313] in which the mark STURGIS was declared invalid is subject to appeal.").

By doing nothing, SMRI extended the period of time during which the STURGIS mark was apparently in limbo with the PTO. SMRI continued to promote the STURGIS mark during the 2019 and 2020 Sturgis Motorcycle Rallies, a mark the Eighth Circuit held in 2018 was invalid. SMRI v. RP&G, 908 F.3d 313.

This factor weighs heavily in defendants' favor.

3.   Insufficient explanation of the need for dismissal

In a Rule 41(a)(2) inquiry, the court is required to determine "whether a party has presented a proper explanation for its desire to dismiss." Donner v. Alcoa, Inc., 709 F.3d 694, 699 (8th Cir. 2013) (internal quotation marks and citation omitted). SMRI's motion to dismiss its ACPA claim is based on its acquisition of the seven domain names "via self-help," and it "no longer needs or seeks the equitable remedy of having the domain names transferred to it." (Docket 569 at p. 1). Plaintiff's second basis for the motion is "despite its entitlement to monetary remedies against Defendants for violation of the ACPA should it prevail on its ACPA claim again, Plaintiff no longer can afford to

17

devote its limited resources to pursuing the claim when faced with Defendants' insurance-funded defense."  Id.

SMRI's motion was filed 14 months after SMRI acquired the seven domain names and only two days after Brian Niemann inquired of GoDaddy, a domain name registry, and discovered legendarysturgis[3] had been listed for sale by SMRI for $6,884.  (Docket 572 ¶¶ 2 & 3).  SMRI's response to defendants' motion for summary judgment was due on June 12, 2020.  D.S.D. Civ. LR 7.1(B).  Yet SMRI's motion to dismiss the ACPA claim was not filed until ten days later.  (Docket 569).

Plaintiff's deadline for disclosure of experts had expired and defendants' designated expert witness stood ready to testify:

> None of the Rushmore Defendants' seven domain names use any of the three SMRI trademarks in their entirety.  (Docket 552 ¶ 13) (internal citation omitted);

> Five of the seven domain names (sturgiscentral.com, legendary-sturgis.com, authenticsturgis.com, official-sturgis.com, and licensedsturgis.com) use the public domain "Sturgis" combined with a single, additional word none of which is used in any of SMRI's three trademarks.  Id. ¶ 14 (internal citation omitted);

> The sturgisrallyonline.com domain name uses the public domain "Sturgis" and a portion of the public domain phrase "Sturgis Rally & Races" combined with "Online," which is not used in any of the three SMRI trademarks.  Id. ¶ 15 (internal citation omitted); and

> The sturgismotorclassic.com domain name uses the public domain "Sturgis" and a portion of the public domain phrase "Sturgis Motorcycle Rally" combined with "Classic," which is not used in

---

[3]The court does not include the "www" or ".com" in the domain names to make the domain names easier to read and to avoid creating a direct link to each site.

STURGIS BIKE WEEK or TAKE THE RIDE TO STURGIS.  <u>Id.</u> ¶ 16 (internal citation omitted).

Either individually or in combination it is highly unlikely a jury would find confusion between defendants' Sturgis Designations and plaintiff's valid marks or award SMRI money damages on its ACPA claim.

It defies logic that a plaintiff would abandon an alleged million dollar claim unless the plaintiff knew it would be defeated at trial.  *Both* by the fact a jury would not support pursuit of a claim for adverse use of a domain name when the plaintiff owned the domain names at least two years prior to trial *or* the fact that one-seventh of a million dollar valued claim was being offered for sale for $6,884.

It would constitute an abuse of discretion for the court to "fail[] to consider whether a motion to dismiss was being used for the improper purpose of avoiding an unfavorable ruling[.]"  <u>Blaes v. Johnson & Johnson</u>, 858 F.3d 508, 514 (8th Cir. 2017).  The court finds SMRI has not "presented a proper explanation for its desire to dismiss" the ACPA claim.  <u>Donner</u>, 709 F.3d at 699 (internal citation omitted).

This factor weighs in favor of the defendants.

4.    <u>The status of the lawsuit</u>

"The time and effort invested by the parties, and the stage to which the case had progressed are the most important factors to consider when the court decides whether to grant a dismissal with conditions."  <u>Blaes</u>, 858 F.3d at 516 (internal quotation marks and citation omitted).  Defendants spent nearly two years preparing their defense to plaintiff's ACPA claim.  <u>Id.</u>

Defendants filed a motion for summary judgment on May 21, 2020. (Docket 550).  Defendants' filings occurred 30 days prior to plaintiff's motion to dismiss.  On the same day SMRI filed its motion to dismiss the ACPA claim, plaintiff filed a response to defendants' motion for summary judgment declaring "[t]he District of South Dakota very recently stated that a dismissal of a claim 'without question' would render a summary judgment motion on that claim to be moot[.]"  (Docket 568 at 4) (citing East v. Dooley, 4:19-CV-04126, 2020 WL 528451, at *1 (D.S.D. February 3, 2020)).  On that basis, SMRI asked the court to dismiss its ACPA "claim and deem Defendants' motion for summary judgment on that claim denied as moot."  Id. at p. 5.

Troubling to the court is SMRI's baseless presumption it did not have to comply with Fed. R. Civ. P. 56, D.S.D. Civ. LR 7.1(B) and LR 56.1(B).  The local rules require within 21 days of the service of defendants' motion for summary judgment SMRI was required to respond to defendants' statement of material facts and file a brief supporting plaintiff's position on defendants' motion. D.S.D. Civ. LR 7.1(B) and LR 56.1(B).

SMRI's cited cases do not save plaintiff from the court's concern.  In East, the court was faced with plaintiff's motion for summary judgment and defendant Adams' motion to dismiss.  East, 2020 WL 528451, at *1.  Defendant Adams filed a motion to stay the deadline to respond to plaintiff's motion.  Id. The court opined that granting the defendant's motion to dismiss would render plaintiff's summary judgment motion moot.  Id.  The court did not, as SMRI suggests, rule the motion to dismiss would trump the summary judgment

20

motion.  Rather, the court granted defendant Adams' motion for a stay and
ordered the deadline to respond to plaintiff's motion for summary judgment
"enlarged to 28 days after this Court denies, if it were to deny, Adams' Motion
to Dismiss." Id., 2020 WL 528451, at *2.  In East, the court was not asked to
address the interplay between Rule 41(a)(2) and Rule 12(b) or Rule 56.  The
same deficiency exists in the other cases cited by SMRI.  See Docket 568 at
pp. 4-5.

Contrary to SMRI's argument, the court is required to consider the Rule
41(a)(2) factors when resolving plaintiff's motion.  "Rule 41(a)(2) [is] applicable
once an answer or motion for summary judgment has been served[.]" Paulucci,
826 F.2d at 782.  It is clear SMRI filed its motion to dismiss the ACPA claim to
avoid an adverse decision on defendants' motion for summary judgment.
Donner, 709 F.3d at 697 ("a party is not permitted to dismiss merely to escape
an adverse decision[.]"); Blaes, 858 F.3d at 514 ("[I]t was an abuse of discretion
when the district court failed to consider whether a motion to dismiss was
being used for the improper purpose of avoiding an unfavorable ruling[.]").

This factor weighs heavily in defendants' favor.

All of the Rule 41(a)(2) factors weigh heavily in defendants' favor.  SMRI's
motion to dismiss the ACPA claim is denied.

C.    DEFENDANTS' MOTION FOR JUDICIAL NOTICE

Defendants move the court to take judicial notice of certain webpage
screenshots which are attached to Dr. Wright's report.  (Docket 559).  Those
screenshots were "taken from the Internet Archive Wayback Machine[.]" Id. at

p. 1.  Defendants argue the accuracy of the exhibits is "readily determined from sources whose accuracy cannot be reasonably be questioned."  (Docket 560 at pp. 1-2) (referencing Fed. R. Evid. 201).  Defendants filed a declaration of authenticity from Wayback Machine.  Id. at p. 2 (referencing Docket 560-1 at p. 1).  SMRI did not file a response to defendants' motion.  See D.S.D. Civ. LR 7.1(B).

Rule 201 provides "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot be reasonable be questioned." Fed. R. Evid. 201(b)(2).  Defendants provided the court with the information necessary to consider taking judicial notice of the exhibits.  Fed. R. Evid. 201(c)(2); see also Docket 560-1.  The court finds the webpage screenshots attached to Dr. Wright's report can be "accurately and readily determined" from the publicly available website of Wayback Machines.   Fed. R. Evid. 201(b)(2).

The court grants defendants' motion and takes judicial notice of the webpage screenshots attached to Dr. Wright's report.

D.     DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1.   Standard of Review

Under Rule 56(a), "a movant is entitled to summary judgment if the movant 'shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' "  Fed. R. Civ. P. 56(a). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in the pleadings, but rather must produce

affirmative evidence setting forth specific facts showing that a genuine issue of material fact exists.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).  "[A]dmissions in the pleadings . . . are in the nature of judicial admissions [and are] binding upon the parties, unless withdrawn or amended."  <u>Missouri Housing Development Commission v. Brice</u>, 919 F.2d 1306, 1314 (8th Cir. 1990).

However, the moving party is entitled to judgment as a matter of law if the nonmoving party fails to "make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  In such a case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  <u>Id.</u> at 323.

If the undisputed evidence is such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate.  <u>Anderson</u>, 477 U.S. at 256.  "Summary judgment must be denied even if no opposing evidentiary matter is presented" if the moving party cannot meet the Rule 56 standard.  <u>Heath v. John Morrell & Co.</u>, 768 F.2d 245, 249 (8th Cir. 1985).

2.    <u>Undisputed material facts</u>

On May 21, 2020, defendants filed a motion for summary judgment on SMRI's ACPA claim together with a legal memorandum, statement of undisputed material facts, six declarations and a total of 20 exhibits.  (Dockets

550-57, 556-1 through 556-9, 557-1 through 557-11 & 558).  Pursuant to

D.S.D. Civ. LR 7.1(B) and LR 56.1(B), on or before June 12, 2020, SMRI was

required to respond to defendants' statement of material facts and file a brief

supporting SMRI's position on defendants' motion.  The local rules provide that

"all material facts set forth in the movant's statement of material facts will be

deemed to be admitted unless controverted by the opposing party's response to

the moving party's statement of material facts."  D.S.D. Civ. LR 56.1(D).  SMRI

failed to comply with the local rules and further failed to receive a stay or

extension of the deadlines imposed by the local rules.  Pursuant to LR 56.1(D),

the court finds all of defendants' statement of material facts, Docket 552, are

deemed admitted.  Those facts are summarized as follows.

In 2006, Defendant Brian Niemann as the representative of JRE, Inc.,

registered the seven domain names at issue in SMRI's ACPA claim.  (Docket

552 ¶¶ 21, 22 & 27; see also Docket 558 at pp. 13-14).  Six domain names

directed consumers to the "sturgismotorclassic" web page, which contained a

disclaimer of any affiliation with SMRI.  Id. ¶¶ 32-34.  The webpage also used a

™ designation with "legendary-sturgis," "authenticsturgis" and

"sturgismotorclassic."  Id. ¶ 36.  Six domain names expired in July 2012 and

the domain name "sturgismotorclassic" expired in March 2013.  Id. ¶¶ 29 & 30.

Defendants' submission included the expert opinion report of James

Wright, Ph.D.  (Docket 558).  Dr. Wright evaluated SMRI's three surviving

marks and defendants' seven domain names during the critical period of

January 1, 2006 and December 31, 2013.  Id. at p. 5.  He concluded:

24

None of the seven (7) domain names use any of the three SMRi trademarks in their entirety;

None of the seven (7) domain names look like any of the three SMRi trademarks

None of the seven (7) domain names sound like any of the three SMRi trademarks

Five (5) of the domain names use the public domain word "Sturgis" combined with an additional word ("Central," "Legendary," "Authentic," "Official," or "Licensed"), none of which is used in any of SMRi's three trademarks;

One (1) of the domain names uses the public domain Sturgis and a portion ("Sturgis Rally") of the public domain Sturgis Rally & Races, combined with an additional word ("Online") that is not used in any of SMRi's three trademarks; [and]

One (1) of the domain names uses the public domain Sturgis and a portion ("Sturgis Motor") of the public domain Sturgis Motorcycle Rally, combined with an additional word ("Classic") that is not used in any of SMRi's three trademarks.

Id. at p. 6.

"With these characteristics in mind," Dr. Wright made "direct

comparisons between" SMRI's three marks and defendants' seven domain

names:

"Take the Ride to Sturgis" can be distinguished immediately from each of the seven domain names because none of them use the trademark. . . . None of the seven (7) Defendant domain names are even remotely similar to the "Take the Ride to Sturgis" mark and there are no conceivable points of confusion.

The Monahan Composite Mark does not lend itself to domain names directly because it is comprised of text and images, the latter of which cannot be incorporated into a domain name. . . . "Sturgis Bike Week" again only shares the geographic descriptor "Sturgis" with the seven defendant domain names. Neither word components of "Bike" or "Week" are contained in any of the seven Defendant domain names. . . . As with the other two trademarks, there is no evidence supporting a conclusion that any of the

Defendants' domain names could dilute or be viewed as confusingly similar to "Sturgis Bike Week."

In direct evaluation of the Defendants' 7 domains, there are not any elements that overlap or appear to tap any aspects specific to the Plaintiff's 3 marks. None of the 7 domains visibly resemble any of the 3 . . . marks, apart from the "Sturgis" geographic descriptor. None of the 7 domains audibly sound like any of the 3 . . . marks, apart from the "Sturgis" geographic descriptor. Lastly, none of the 7 domains harbor the same meanings as any of the 3 . . . marks, apart from the "Sturgis" geographic descriptor. Beyond sharing a purely geographic descriptor, none of the 7 Defendant domains share commonality in sight, sound or meaning with the 3 Plaintiff trademarks.

Id. at pp. 6-7.

After investigating the navigational history, or use, of defendants' domain names, Dr. Wright opined "[t]he Defendants overtly displayed the trademark designation TM in the website content that appeared on the only two domains that had any content record, during the period in question. . . . This represents an open declaration of Defendant's belief in their intellectual property rights." (Docket 558 at p. 15). Defendants' use of the domain names to list a "catalog-style directory . . . listing products for sale," in Dr. Wright's opinion "demonstrates a genuine offering of goods or services for sale and runs contrary to any inference of bad faith." Dr. Wright found

No evidence of diversion was found across any of the 7 domain names. None of the domains . . . have any text, images or features that included any of the Plaintiff's 3 marks. . . . There was no evidence about the content on these domain names related to the Plaintiff's 3 trademarks, thus it does not appear plausible the Defendant domains diverted anyone.

26

Id. at p. 16.  Addressing plaintiff's ACPA claim Dr. Wright's concluded:

> Based on clear and concrete differences, and the weakness of the three [SMRI] trademarks, it is highly unlikely that reasonable consumers would find any of the 7 Defendant domains confusingly similar with any of the Plaintiff's 3 marks.  Likewise, it is highly unlikely that internet users would have been diverted by any of the 7 Defendant[] domains. Particularly implausible considering that for most of the time frame in question the Plaintiff did not have a consistent web presence and the domains were inactive. Finally, several noted actions by the Defendants demonstrate evidence that runs contrary to bad faith.

Id. at p. 17.

The court incorporates the remainder of defendants' statement of material facts by reference.  See Docket 552.

3.    Analysis

The 2015 verdict identified only RP&G and Brian Niemann as the defendants responsible under the ACPA.  (Docket 263 at p. 16).  When the Eighth Circuit declared the "STURGIS" mark invalid, the court vacated the "jury's finding that the defendants engaged in cybersquatting." SMRI v. RP&G, 908 F.3d at 333.  The court found "[t]he district court submitted SMRI's cybersquatting claim to the jury based in part on the theory that the 'Sturgis' mark is valid.  Since that theory was not submissible and we cannot tell whether the jury based its finding on the theory 'in whole or in part,' we must vacate the cybersquatting verdict." Id. (referencing Friedman & Friedman, Ltd. v. Tim McCandless, Inc., 606 F.3d 494, 502 (8th Cir. 2010)).

At trial, the jury found none of the defendants infringed on SMRI's "TAKE THE RIDE TO STURGIS" mark.  (Docket 263 at p. 4).  It is difficult to understand how the jury would have found none of the defendants infringed on

the "Take The Ride To Sturgis" mark, but then concluded RP&G or Brian Niemann violated the ACPA. Despite this concern, the court will continue to include "Take The Ride to Sturgis" in its analysis of SMRI's ACPA claim.

Based on the jury's verdict and the Eighth Circuit's rulings, a new trial would focus only on SMRI's ACPA claim against these two defendants and only as that claim relates to "STURGIS BIKE WEEK," "TAKE THE RIDE TO STURGIS" and the Composite Design Mark. To prevail on its ACPA claim, SMRI must prove:

(1)   The defendant had a bad faith intent to profit from SMRI's trademark;

(2)   The defendant registered, trafficked in or used a domain name;

(3)   SMRI's trademark was famous or distinctive at the time of the registration of the domain; and

(4)   The defendant's domain name was identical to or confusingly similar to SMRI's trademark.

Coca-Cola Co. v. Purdy, 382 F.3d 774, 782-83 (8th Cir. 2004) (referencing 15 U.S.C. § 1125(d)(1)(A)). Under the ACPA the question is whether a defendant's domain is "identical or confusingly similar to [SMRI's] mark." Id. at 783. "The inquiry under the ACPA is thus narrower than the traditional multifactor likelihood of confusion test for trademark infringement." Id. "The fact that confusion about a website's source or sponsorship could be resolved by visiting the website is not relevant to whether the domain name itself is identical or confusingly similar to a plaintiff's mark." Id.

SMRI's amended complaint alleged the STURGIS mark was famous, but only that its other marks were distinctive.  (Docket 52 ¶¶ 29, 30 & 49).  It is SMRI's burden to prove each of its three remaining marks were distinctive and were confusingly similar to defendants' seven domain names.  15 U.S.C. § 1125(d)(1)(A).  SMRI offers no direct evidence, whether by consumer testimony or consumer surveys, to demonstrate the defendants' domain names are confusingly similar.  See Heartland Bank v. Heartland Home Financial, Inc., 335 F.3d 810, 821 (8th Cir. 2003) ("[T]here are at least three evidentiary routes to prove a likelihood of confusion—survey evidence, evidence of actual confusion, and/or argument based on an inference arising from a judicial comparison of the conflicting marks themselves and the context of their use in the marketplace."); Lovely Skin, Inc. v. Ishtar Skin Care Products, LLC, 745 F.3d 877, 888 (8th Cir. 2014) ("Lovely Skin presented no direct evidence, such as consumer surveys or consumer testimony, to demonstrate that its marks enjoy strong secondary meaning."); Frosty Treats Inc. v. Sony Computer Entertainment America, Inc., 426 F.3d 1001, 1005 (8th Cir. 2005) ("[D]irect evidence such as consumer testimony or surveys are most probative of secondary meaning[.]").  Nor has SMRI offered expert testimony to address the confusion which might exist when comparing its three marks with defendants' seven domain names.

Based on the undisputed material facts, no reasonable juror could find any one or more of defendants' seven domain names were either "identical or confusingly similar to" SMRI's three marks.  Coca-Cola Co., 382 F.3d at 782

29

(citing 15 U.S.C. § 1125(d)(1)(A)(ii)(I)).  Nor could a reasonable jury find either RP&G or Brian Niemann had "a bad faith intent to profit from" SMRI's three marks.  Id. (citing 15 U.S.C. § 1125(d)(1)(A)(i)).  Defendants RP&G and Brian Niemann are "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  See also Heath, 768 F.2d at 249.

Defendants' motion for summary judgment is granted.  SMRI's ACPA claim is dismissed with prejudice.

E.    DEFENDANTS' MOTION TO STRIKE ACPA JURY DEMAND

Based on the court's ruling on defendants' motion for summary judgment, defendants' motion to strike SMRI's jury demand on its ACPA claim, (Docket 563), is denied as moot.

F.    DEFENDANTS' MOTION FOR DAMAGES FOR IMPROVIDENTLY ISSUED PRELIMINARY INJUNCTION

As used in this section, "defendant" relates solely to RP&G.  There is no claim the individuals, Carol Niemann, Paul Niemann, Brian Niemann, or Wal-Mart, suffered any alleged damages as the result of the issuance of the amended preliminary injunction.  See Docket 538.

RP&G's motion for damages actually seeks three remedies.  (Docket 537).  First, defendant seeks recovery of damages it incurred by the issuance of the amended preliminary injunction of February 15, 2019, which allegedly "improperly enjoined . . . [the] use of STURGIS MOTOR CLASSIC."  Id. at pp. 1-2.  Second, defendant seeks money "damages and an order to show cause as to why SMRI should not be held in contempt of court for its violation of . . . two 2019 Court orders[.]"  Id. at p. 2.  Third, defendant seeks an order requiring

SMRI "to pay $17,953.24" awarded to defendant as "attorney's fees as a sanction in post-verdict discovery." Id.  Each of these claims will be separately addressed.

1.   Amended Preliminary Injunction

Following the Eighth Circuit remand, on February 15, 2019, the court issued an amended order.  (Docket 489).  The amended order was issued after conducting a January 16, 2019, status conference and considering the parties' "joint statement [Docket 481] regarding modifications to the permanent injunction (Docket 451) necessitated by SMRI v. RP&G, 908 F.3d at 346." Id. at p. 4.  Relevant to the current motion, the amended preliminary injunction included the following provisions pertinent to the present motion:

> ORDERED that this preliminary injunction shall immediately issue and remain in effect until further order of the court.
>
> IT IS FURTHER ORDERED that defendants RUSHMORE PHOTO & GIFTS, INC., CAROL NIEMANN, PAUL A. NIEMANN, BRIAN M. NIEMANN and WAL-MART STORES, INC., ("the enjoined defendants") are hereby immediately restrained and enjoined from engaging in the following activities:
>
>> 1.  Using the following trademarks and composite design trademark:
>>
>>> A.   STURGIS BIKE WEEK, U.S. Reg. Nos. 2,070,955; 3,825,398; 3,838,171; 3,911,270; and 3,923,236; and
>>>
>>> B.   BLACK HILLS MOTOR  CLASSIC STURGIS RALLY & RACES BLACK HILLS S.D., U.S. Reg. No. 1,948,097;
>>
>> or any colorable imitations of these marks in any advertisement, promotion, offer for sale, or sale of any goods; and
>>
>> 2.  Using in commerce any reproduction, counterfeit, copy or colorable imitation of SMRI's Marks, STURGIS BIKE WEEK

or BLACK HILLS MOTOR CLASSIC STURGIS RALLY & RACES BLACK HILLS S.D., including defendants' "Sturgis Motor Classic," without SMRI's consent in a manner likely to cause confusion, mistake, or deception as to the source, origin, sponsorship or approval of the defendants' product; and

3. Acting, using, or employing any deceptive act or practice, fraud, false pretense, false promise or misrepresentation or concealed, suppressed or omitted material facts in connection with the sale or advertisement of any merchandise, including the use of "Officially Licensed Sturgis," "Licensed Sturgis," "Authentic Sturgis" and "Official Sturgis."

IT IS FURTHER ORDERED that, pursuant to 15 U.S.C. § 1118, the enjoined defendants shall impound and destroy all products together with all labels, signs, prints, packages, wrappers, receptacles, and advertisements bearing SMRI's Marks, STURGIS BIKE WEEK or BLACK HILLS MOTOR CLASSIC STURGIS RALLY & RACES BLACK HILLS S.D., including defendants' "Officially Licensed Sturgis," "Licensed Sturgis," "Authentic Sturgis," or "Official Sturgis," or any reproduction, counterfeit, copy, or colorable imitation thereof, and all plates, molds, matrices, and other means of making the same.

IT IS FURTHER ORDERED that the provisions of this preliminary injunction requiring the destruction of impounded products is stayed until 60 days after all appeals are resolved.

IT IS FURTHER ORDERED that SMRI shall post security for purposes of this preliminary injunction in the amount of $376,539 on or before March 15, 2019.

(Docket 490 at pp. 2-3) (bold omitted).  The court retained jurisdiction to

modify and enforce the terms of the amended preliminary injunction.  Id. at

p. 4.

On March 15, 2019, SMRI filed a motion for reconsideration of both the

amended order and the amended preliminary injunction together with a

supporting legal memorandum.  (Dockets 501 & 502).  Relevant to defendant's current motion, SMRI's motion for reconsideration asserted:

> [T]he District Court's imposition of a bond requirement on SMRI in the amount of $376,539 is a manifest error because the Court has failed to identify with particularity what, if anything, is secured, what conduct would result in a release or return of the bond, and why a bond of hundreds of thousands of dollars is required of the non-profit successful Plaintiff in this action.  SMRI fully prevailed on several of its claims and should not now have to pay monetary security for the relief to which it is entitled under the law.

(Dockets 501 at p. 2 & 502 at p. 3).

In response to SMRI's motion for reconsideration, defendant filed a legal memorandum, five affidavits and four exhibits.  (Dockets 506-507, 507-1 through 507-2, 508, 508-1, 509, 509-1, 510 & 511).  The essence of defendant's response is highlighted by the following paragraph from its memorandum:

> Rushmore continues to lose sales of Sturgis rally-related goods. SMRI's representations that it will defend all trademarks, even three invalid ones, have harmed and confused the public. . . . Some people that have seen SMRI's recent email to its licensees and vendors fear SMRI will sue them if they do business with Rushmore. . . . Last week, Bob Davis, owner of Sturgis Photo & Gifts on Main St. in Sturgis, South Dakota, refused to buy from Rushmore because SMRI told him it will defend all of its marks. . . . He also said that his current licensing agreement with SMRI mentions Rushmore and the Niemanns and that the agreement prevents him from doing business with Rushmore. . . . Fearing retaliation from SMRI, other store owners that previously have bought 600-700 Sturgis pieces of merchandise from Rushmore are now buying far fewer pieces or none at all.

(Docket 506 at p. 8).

In its December 11, 2019, order addressing the cancellation of the STURGIS Registrations, the court took up SMRI's motion for reconsideration of the amended order and the amended preliminary injunction. (Docket 519 at pp. 18-22). Responding to SMRI's objection to the court's calculation of the bond amount, the court reviewed Brian Niemann's May 2016 testimony concerning the loss which would be suffered by an injunction and found "Mr. Niemann's testimony credible." Id. at p. 21. The court also found "SMRI's argument that it is a poor, not-for-profit corporation . . . disingenuous. The trial evidence disclosed SMRI took in hundreds-of-thousands of dollars each year. SMRI leadership testified its trademark leasing agreements controlled hundreds of vendors during the Sturgis Motorcycle Rally." (Docket 519 at p. 21). "While the court believes a bond requirement of $376,539 may not fully cover defendants' damages in the event the amended preliminary injunction was wrongfully issued, the court finds that sum consistent with defendants' summary of their minimum losses and adequate to meet the requirements of [Fed. R. Civ. P.] 65(c)." Id. at p. 22. Based on that analysis, SMRI's motion for reconsider was denied and SMRI was ordered to "post security in the amount of $376,539 on or before January 10, 2020." Id. at pp. 22-23 (bold omitted).

On January 10, 2020, SMRI filed a second motion for relief from the terms of the amended preliminary injunction. (Docket 525). In this motion, SMRI declared that "[d]ue to its inability to post bond in the amount ordered by the Court in the Bond Order, Plaintiff hereby withdraws its request for preliminary or permanent injunctive relief against the Defendants." Id. at p. 2.

As justification for this motion, SMRI asserted that while it took in significant revenue from the Sturgis Rally, "with a mission of providing funds to other non-profit organizations from Rally income, [it] is able to only provide a token amount to those organizations due to SMRI's legal costs." (Docket 526 at p. 4).

After considering further briefing by the parties, on March 24, 2020, the court entered an order, which among other things, found "SMRI did not post the security required. The court finds it appropriate to vacate the injunction based on SMRI's failure to post security and its motion for relief from the injunction." (Docket 541 at p. 5.). The order granted "plaintiff's motion (Docket 525)" and ordered "the amended preliminary injunction (Docket 490) . . . vacated." Id. at p. 6.

A.      RP&G's Claims

RP&G argues "[f]or more than a year, SMRI has paid no heed to the Court Order to obtain security to protect the Defendants all the while availing itself of the benefits of the injunction." (Docket 538 at p. 1). "Given the Eighth Circuit's invalidation of STURGIS, STURGIS MOTORCYCLE RALLY and STURGIS RALLY & RACES," RP&G submits "after remand SMRI had no basis to demand an injunction prohibiting use of STURGIS MOTOR CLASSIC." Id. at pp. 1-2.

Because "the Amended Preliminary Injunction was wrongly issued," RP&G contends "Rushmore Photo[] [was] harmed." Id. at p. 2. During the time SMRI was delaying posting security, RP&G argues it "remain[ed] under the restrictions of the Amended Preliminary Injunction, which will prevent [it] from

selling any STURGIS MOTOR CLASSIC merchandise for a second straight

selling season." Id. at p. 6.  RP&G submits

> SMRI sought the Amended Preliminary Injunction to prevent
> Defendants' use of its signature brand, STURGIS MOTOR
> CLASSIC.  While use of STURGIS BIKE WEEK was also enjoined,
> trial testimony from seven of SMRI's witnesses was unanimous
> that Defendants had never used the term. . . . So too the Monahan
> mark, where the same seven SMRI witnesses testified to never
> having seen it used by Defendants. . . . And while the phrases
> "Officially Licensed Sturgis," "Licensed Sturgis," "Authentic
> Sturgis," and "Official Sturgis" were also enjoined, the trial
> evidence demonstrated that Defendants voluntarily stopped using
> all of those terms in 2011, more than four years before both the
> 2015 jury verdict and injunction. . . . Thus, the value to SMRI of
> the Amended Preliminary Injunction was against STURGIS MOTOR
> CLASSIC.

Id. at pp. 8-9 (internal citations to the trial record omitted).

"[T]o justify the preliminary injunction against STURGIS MOTOR

CLASSIC," RP&G asserts "SMRI must establish confusion and similarity

between 'Week' and 'Classic.' " Id. at p. 12.  This argument is "baseless" in

RP&G's view.  Id.  "Given the direction provided by the Eighth Circuit," RP&G

submits "it is clear there was no basis after remand to justify continued

enjoining of the use of STURGIS MOTOR CLASSIC." Id.  Vacating the

injunction in 2020 does not, in RP&G's view, "reverse the damages already

suffered . . . . Rushmore Photo has been harmed as a result of SMRI seeking an

improper injunction, which limited its ability to compete for the 2019 and 2020

selling seasons." Id. at p. 13.

RP&G alleges it suffered the following damages by the wrongfully issued

amended preliminary injunction.

| | |
|---|---|
| 2019 lost profits | $  72,992 - $  97,322 |
| 2020 lost profits | $134,163 - $178,883 |

| | |
|---|---|
| Lost value of | |
| Impounded merchandise | $  45,253 - $  45,253 |
| Warehouse activities | $    5,112 - $    5,112 |
| Employee oversight | $    5,250 - $    5,250 |
| Customer service issues | $  19,571 - $  19,571 |
| Total losses | $282,341 - $351,391 |

Id. at pp. 16-17.

SMRI opposes defendant's motion.  (Docket 544).  SMRI's response asserts that "[f]ollowing the Court's March 24, 2020 Order . . . vacating the prior orders . . . imposing a bond requirement on Plaintiff . . . [SMRI] . . . should not need to respond to Defendant's motion for damages pertaining to an 'improper preliminary injunction' or in the alternative, for an order that Plaintiff show cause to avoid contempt."  Id. at p. 1.  SMRI argues "because authority no less than the U.S. Supreme Court has held that a defendants' sole recourse for harm caused by an injunction, whether proper or even erroneously imposed, is the bond."  Id. at p. 5; see also id. at p. 7 (citing W.R. Grace & Co. v. Local Union 759, 461 U.S. 757, 770 n.14 (1983) ("A party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond."); also referencing Russell v. Farley, 105 U.S. 433, 437 (1881); Cagan v. Mutual Benefit Life Ins. Co., 28 F.3d 654, 656 (7th Cir. 1994); Buddy Systems, Inc. v. Exer-Genie, Inc., 545 F.2d 1164, 1167-68 (9th Cir. 1976)).  SMRI submits " '[d]amages' cannot be imposed on Plaintiff who, it bears noting, remains the prevailing plaintiff as to at least three claims set forth in its operative complaint[.]"  Id. at p. 5.

SMRI argues RP&G's damages calculations "are wildly speculative and flat-out unsupportable. . . . Mr. Niemann has not identified or calculated how

much of the inventory enjoined for several years falsely touts 'officially licensed' or 'authentic' merchandise, or constitutes infringing STURGIS MOTOR CLASSIC goods as opposed to other 'Sturgis' goods that the Eighth Circuit would deem allowable under its ruling." Id. at p. 7.  In SMRI's view, "these wild calculations beg to be cross-examined based on Mr. Niemann's supporting documents, Defendants' detailed inventory records and sales records, and full disclosure of Mr. Niemann's top-secret formula." Id. at p. 8.

In reply, RP&G submits the cases cited by SMRI "do not lead to SMRI's suggested conclusion, nor does equity permit Defendant[] to be left without recourse." (Docket 548 at p. 3).  "Because SMRI was ordered to post security," RP&G argues it is "entitled to have this Court assess its damages as a result of being wrongfully enjoined." Id. at p. 5 (referencing Russell, 105 U.S. at 443). RP&G argues Cagan and Buddy Systems are distinguishable on their facts.  Id. at pp. 5-6.  "[S]ince remand from the Eighth Circuit," RP&G argues it "had the right to sell [its] STURGIS MOTOR CLASSIC merchandise." Id. at p. 8 (referencing Slidell, Inc. v. Millennium Inorganic Chemicals, Inc., 460 F.3d 1047, 1059 (8th Cir. 2006) ("a party has been wrongfully enjoined if it is ultimately found that the enjoined party had at all times the right to do what it was enjoined from doing").

B.    Analysis

While it was proper to preliminarily enjoin RP&G's use of STURGIS BIKE WEEK and the Composite Design Mark, the court was wrong to enjoin RP&G's use of STURGIS MOTOR CLASSIC.  SMRI has no claim to "Sturgis," "Motor," or

38

"Classic."  The STURGIS mark is invalid.  SMRI v. RP&G, 908 F.3d at 332.

"[T]he [Composite Design Mark], the federal registration . . . *disclaims* the

exclusive right to use 'Motor Classic'[.]"  Id. at 334 (emphasis added).  The

Eighth Circuit repeated this disclaimer later in its decision.  Id. at 337 ("the

federal registration for the [Composite Design Mark] disclaims the exclusive

right to use the words 'Motorcycle Classic'[.]").  RP&G was "wrongfully enjoined"

as it "at all times [had] the right to do what it was enjoined from doing."  Slidell,

Inc., 460 F.3d at 1059.

The process of determining RP&G's damages requires the court to

evaluate the purpose of a bond.  Rule 65 provides a "court may issue a

preliminary injunction . . . only if the movant gives security in an amount that

the court considers proper to pay the costs and damages sustained by any

party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P.

65(c).  "When the court sees no just cause for . . . suspending the effect of an

injunction bond . . . it should be enforced in pursuance of its terms; and the

party for whose benefit it was given will be entitled to an assessment of

damages."  Russell, 105 U.S. at 443.  "[T]he governing principle that it is the

duty of a court of equity granting injunctive relief to do so upon conditions that

will protect all . . . whose interests the injunction may affect."  Inland Steel Co.

v. United States, 306 U.S. 153, 157 (1939).

Generally, "[a] party injured by the issuance of an injunction later

determined to be erroneous has no action for damages in the absence of a

bond."  W.R. Grace & Co., 461 U.S. 757, 770 n.14 (1983) (referencing Russell,

105 U.S. at 437; Buddy Systems, Inc., 545 F.2d at 1167-68). But this declaration is not as clear as SMRI might think. "Where no bond . . . has been required, it is clear that the court has no power to award damages sustained by either party in consequence of the litigation, except by making such a decree in reference to the costs of the suit as it may deem equitable and just." Russell, 105 U.S. at 436. When no bond is imposed as security for an injunction, the court already concluded "that the damage arising from the injunction [would be] *damnum absque injuria*,[4] and that there could be no recovery[.]" United Motors Service, Inc., v. Tropic-Aire, 57 F.2d 479, 483 (8th Cir. 1932) (referencing Russell, 105 U.S. 433).

In United Motors Service, the United States Court of Appeals for the Eighth Circuit acknowledged "that a formal injunction bond was not an indispensable prerequisite to the determination of damages on the dissolution of the injunction," where "the order of the court provided that 'complainant pay the defendant such resulting damages as it may sustain in case it be finally decided that said injunction ought not to have been granted.'" United Motors Service, 57 F.2d at 483 (citing Mica Insulator Co. v. Commercial Mica Co., 157 F. 92, 94 (C.C.N.D. Ill. 1907)). "[T]he court has power at the granting of the injunction to impose as a condition that complainant shall pay any damages sustained by defendant if it turns out that the injunction was improvidently granted, and that if complainant acts under the order of the court he is bound by the condition." Id. As the United Motors Service court observed:

---

[4] "Loss or harm that is incurred from something other than a wrongful act and occasions no legal remedy." BLACK'S LAW DICTIONARY (2009 ed.).

It is through no fault of the defendant that it is before the court on this motion without a formal bond.  It relied upon the order of court, which was . . . clearly either a condition upon which the injunction would be issued, or, having been issued, continued in force.  Not only that, it imposed upon the complainant an obligation to make good to the defendant any damages sustained within its terms in case it was continued in force.  The complainant accepted and acted under it.  To hold otherwise under the circumstances of this case would be most inequitable.  When complainant proceeded to avail itself of the injunction, it became obligated to make good to defendant its damages . . .; so that the case comes wholly within the foregoing decisions of the Supreme Court.

Id. (citing Mica Insulator Co., 157 F.2d at 94-59).  The court concluded:

[Mica Insulator Co.] does not impair in any way the proposition that when neither an injunction bond nor a similar undertaking . . . has been required by the court there can be no assessment of damages for the improvident issuance of the injunction either in the equity suit proper or in a subsequent action at law . . . and when a formal injunction bond alone is required by the court, as in the instant case, the amount of the bond is the maximum amount of damages which can be assessed[.]

Id. at 483.  "The court in granting an injunction has a right to make such restrictions and limitations as it deems just and hence can provide for a bond or other adequate method of protecting the party against whom the injunction is granted in recovering damages if it be improvidently issued."  Id.

SMRI's argument that Cagan permits it to escape the assessment of defendant's damages is misplaced as "the district court did not require Cagan to post an injunction bond[.]"  Cagan, 28 F.3d at 656.  In similar fashion, Buddy Systems, Inc. does not support SMRI's argument.  "Once the security is returned to the plaintiff there can no longer be [an] . . . action on a bond."  Buddy Sys., Inc., 545 F.2d at 1168-69.

When dealing with an injunction, the court is exercising its inherent powers, "as a court of equity." Russell, 105 U.S. at 438. It is through no fault of RP&G that it presently stands before the court without a formal bond paid for by SMRI. RP&G, and SMRI for that matter, relied on the amended preliminary injunction as a directive of the court which was in effect and was to be enforced. The amended preliminary injunction imposed on SMRI "an obligation to make good to the defendant any damages sustained within its terms in case it was continued in force." United Motors Service, 57 F.2d at 483 (internal citation omitted).

The court imposed the bond in the amended preliminary junction of February 15, 2019. (Docket 490 at p. 3). SMRI filed a motion to vacate the bond requirement because it believed plaintiff was entitled to a permanent injunction. (Dockets 501 at p. 2 & 503 at pp. 7-8). But at no time did SMRI ask the court to suspend imposition of the amended preliminary injunction because plaintiff could not or would not post bond. It was not until its January 10, 2020, motion for relief from judgment or order that SMRI withdrew "its request for preliminary or permanent injunctive relief against the Defendants." (Docket 525 at p. 2).

SMRI "accepted and acted under" the amended preliminary injunction for the better part of 18 months. Id. When SMRI availed itself of the power of the amended preliminary injunction, "it became obligated to make good to [RP&G for] its damages." Id. "To hold otherwise under the circumstances of this case would be most inequitable." Id.

42

In this case, the court concluded that if the amended preliminary injunction issued for SMRI's benefit against RP&G was improvidently granted the "bond requirement of $376,539 may not fully cover defendants' damages . . . [but] that sum [is] consistent with defendants' summary of their minimum losses and adequate to meet the requirements of [Fed. R. Civ. P.] 65(c)." (Docket 519 at p. 22).  The court earlier found credible Brian Niemann's calculations regarding the business financials of RP&G.  Id. at p. 21.  The formula he employed in the 2016 hearing is the same proprietary formula Mr. Niemann used to arrive at RP&G's damages suffered by the improvidently granted amended preliminary injunction.  Compare Dockets 364 and 539. SMRI's argument Mr. Niemann's calculations "are wildly speculative and flat-out unsupportable," is simply without merit.  See Docket 544 at p. 7.  The court finds Mr. Niemann's March 6, 2020, testimony credible and by the greater weight of the evidence supports the loss suffered by RP&G.

Based on the record, the court finds RP&G is entitled to $282,341 to be paid by SMRI for the damages caused to RP&G by the wrongfully issued amended preliminary injunction.  Fed. R. Civ. P. 65(c); United Motors Service, 57 F.2d at 483.

2.    Contempt of Court

RP&G asserts that if it is "barred from obtaining damages as a result of SMRI failing to post the required security, SMRI must be found in contempt of court for failing to post the Court-Ordered security."  (Docket 548 at p. 10).  Because

the court determined RP&G is entitled to money damages pursuant to Fed. R. Civ. P. 65(c), defendant's motion for contempt of court is denied as moot.

3.   Attorneys' Fees

All defendants move the court to find SMRI in contempt of court for failing to pay $17,953.24 awarded to the defendants as attorneys' fees by a March 20, 2017, order ("Attorneys' Fee Order").  (Docket 538 at p. 22). Defendants acknowledge this sum was originally intended to constitute a setoff against their obligation imposed by a separate March 20, 2017, order assessing costs ("Costs Order").  Id. at p. 23 (referencing Docket 423 at p. 21) (referencing Docket 421).  Defendants contend that changed following the Eighth Circuit's remand because the Costs Order was vacated and the Attorneys' Fee Order was affirmed.  Id. (referencing Docket 489 at p. 12).   Now, defendants seek recovery of "$17,953.24 plus accrued interest [effective May 17, 2019], in addition to defendants' attorneys' fees and costs relating to bring[ing] this motion."  Id.

SMRI opposes defendants' motion.  (Docket 544).  SMRI contends "[t]he parties, through their counsel, for many months treated the amounts as partly offsetting, but recognized that when the Court issued a final bill of costs at the conclusion of this action, the amounts would be 'settled up.' "  Id. at pp. 8-9. "[W]ith the cost matter unsettled," SMRI argues "[t]he Court should deny Defendants' opportunistic calling of the fee award prior to this case being made final."  Id.

SMRI also contends since defendants' legal fees may have been paid by an insurance company, defendants should not be entitled to an award of

44

attorneys' fees whatsoever.  (Docket 544 at p. 9).  This argument is wholly without merit and does not warrant further comment.

In reply, defendants argue "it is not within SMRI's purview to dictate that it need not comply with the Court's order to pay fees until resolution of the remaining issues. . . . [I]t is not up to SMRI to decide when and how Court Orders will be enforced."  (Docket 548 at p. 14) (referencing Chicago Truck Drivers v. Brotherhood Labor Leasing, 207 F.3d 500, 504 (8th Cir. 2000) ("One of the overarching goals of a court's contempt power is to ensure that litigants do not anoint themselves with the power to adjudge the validity of orders to which they are subject.").

Once again, SMRI has chosen to decide if, when and how it will comply with this court's orders.  Once the Costs Order was vacated on February 15, 2019, it was incumbent on SMRI to either pay the sum due to defendants, to file a motion for clarification or to file a motion to stay the effective implementation of the Attorneys' Fee Order.  Instead, as of the date of this order, an additional 26 months since the February 15, 2019, order was entered, and 11 months since defendants' filed their motion asking the court to hold SMRI in contempt of court, have lapsed.  SMRI has done nothing.

Based on defendants' submission and SMRI's response, the court will enter an order to show cause as to why SMRI should not be held in contempt of court of its failure to comply with the Attorneys' Fee Order, as affirmed by the February 15, 2019, order.

45

G.     DEFENDANTS' MOTION FOR APPLICATION OF EQUITABLE DEFENSES

RP&G Defendants' answer to plaintiff's amended complaint asserted equitable defenses: "Plaintiff's claims are barred in whole or in part by the doctrines of acquiescence . . . estoppel . . . and/or laches." (Docket 55 at p. 8 ¶ 66). Their answer specifically referenced the Lanham Act as part of their equitable defenses: "Plaintiff's claims are barred in whole or in part pursuant to 15 U.S.C. § 1115(b)(9) inasmuch as equitable principles, including laches, estoppel, and acquiescence, are applicable." Id. at p. 10 ¶ 81. Wal-Mart's answer asserted the same equitable defenses. See Docket 60 ¶¶ 66 and 81. In response to the RP&G Defendants' counterclaim, SMRI's reply asserted by affirmative defense that "Defendants' claims are barred by Defendants' own unclean hands." (Docket 58 at p. 9 ¶ 5). For this section of the order, "defendants" refer to RP&G, Carol Niemann, Paul Niemann, Brian Niemann and Wal-Mart, unless otherwise specifically indicated.

1.     Relevant Facts

The critical time period for the defendants' acquiescence defense and laches defense was 1999 through 2009. The court finds the following trial evidence relevant to the issues:

> The STURGIS BIKE WEEK registration was owned by Sturgis Bike Week, Inc., [Virginia Rhodes] since June 17, 1997. (Exhibits 1 at p. 7 and 19 at p. 4).

> Paul Niemann created Sturgis Motor Classic around 1997-98 with the help of Light Images owner Mike Wolforth. (Docket 315 at p. 89:7-17).

Before becoming a co-owner of RP&G, Brian Niemann testified he had seen many Sturgis Motor Classic items being sold in 1998 and 1999.  (Docket 316 at pp. 21:21-22:6).

Brian Niemann, an officer and employee of RP&G, testified that Sturgis Bike Week, Inc., conducted business with RP&G from at least 1999 through 2009. (Docket 316 at pp. 33:9-34-1).

RP&G sold Sturgis Bike Week, Inc., products bearing the "Sturgis Motor Classic" mark, including shot glasses, key chains, magnet lanyards, head wraps and bandanas.  Id. at p. 33:12-19.

Sturgis Bike Week, Inc., resold these products through its own retail store.  Id. at p. 33:20-34:1.

Sturgis Bike Week, Inc., never complained to RP&G about the use of "Sturgis" or "Sturgis Motor Classic" on rally products.  Id. at p. 34:2-13.

As early as 2000, RP&G sold thousands of "Sturgis Motor Classic" hats and shot glasses.  (Docket 315 at pp. 79:14-20, 80:4-11, 87:1-4 and 10-17; 87:22-88:12; see also Trial Exhibits 785B, 785J & 785K).

As early as 2003, RP&G used "Officially Licensed Sturgis" for its Sturgis Rally products.  (Docket 315 at p. 178:15-179:1).  That phrase first went on the cover of RP&G's product catalog in 2007. (Docket 315 at p. 179:2-6).

In 2006, JRE, Inc., had a retail store across the street from Sturgis Bike Week, Inc.'s retail store.  Id. at p.44:2-13.  JRE's 4′ x 8′ sign advertised "Officially Licensed Sturgis Products."  Id. at p. 44:16-21.  Sturgis Bike Week, Inc., pointed its camera across the street and published on its website JRE's sign.  Id. at p. 44:22-45:1.

Between March 1992 when Paul and Carol Niemann purchased RP&G and 2015, RP&G product codes went from between 65-100 to approaching 7,000 inventory codes.   (Docket 315 at p. 68:22-69:6 and 72:3-19).

During the 1999-2009 time period, RP&G continued to grow and develop its inventory and marketed "Sturgis" and "Sturgis Motor Classic" rally products.  Id. at pp. 28:2-29:10.

47

The STURGIS BIKE WEEK registrations were not assigned to the Sturgis Chamber and then SMRI until 2010 and 2011, respectively.  (Exhibit 1 at pp. 8-12 and Exhibit 19 at pp. 4-6).

Paul Niemann testified his company sold "Sturgis" rally products to the Sturgis Chamber as far back as the 1990s.  (Docket 315 at p. 114:3-8.).  At no time did the Sturgis Chamber complain to RP&G about the use of the "Sturgis" mark.  Id. at p. 115:10-19.

RP&G sold "Sturgis" rally products to Black Hills Harley, a founding member of SMRI, "since the early '80s.' " Id. at pp. 91:23-92:2; see also Trial Exhibit 727.  Sales continued in the 1990s.  (Docket 315 at p. 113:17-21).  Black Hills Harley resold those products at retail.  Id. at p. 92:3-4.  Black Hills Harley never complained to RP&G about its use of the "Sturgis" mark.  Id. at pp. 92:3-4; 115:10-19.

Jim Burgess, an owner of Black Hills Harley, was a member of the board of directors of SMRI at the time of its incorporation in 2010. (Trial Exhibit 727 at p. 2).

RP&G sold "Sturgis" rally products to Mr. Berkowitz, a founding member of SMRI and its principal licensee, and his companies Good Sports and Hot Leather in the 1990s and those companies in turn sold the RP&G products at retail.  (Docket 315 at  pp. 91:23-92:4; 113:22-24; see also Docket 313 at p. 64:7-10 and Trial Exhibit 727).  Mr. Berkowitz and his companies never complained to RP&G about its use of the "Sturgis" mark.  (Docket 315 at p. 92:10-19).

Mr. Berkowitz was a member of the board of directors of SMRI at the time of its incorporation in 2010.  (Trial Exhibit 727 at p. 2).

RP&G sold "Sturgis" rally products to Black Hills Rally & Gold, now a major SMRI licensee, in the 1990s.  (Docket 315 at pp. 113:25-114:2).  Black Hills Rally & Gold never complained to RP&G about its use of the "Sturgis" mark.  Id. at p. 115:10-19.

From the 1990s through the 2000s RP&G continued to grow and develop its inventory and marketed "Sturgis" rally products.  Id. 315 at pp. 113:9-115:19.

RP&G expanded its employee workforce from only family members to 20 employees in 2015 and invested heavily in its Sturgis-related rally products.  (Docket 315 at p. 70:4-19; 71:8-15; 811:3-19; 816:16-20; 203:14-204:15; 207:24-209:2; Trial Exhibit 74a).

As of the time of trial, RP&G's "Sturgis Motor Classic" line of products was the top fourth or fifth revenue producer.  (Docket 315 at p. 202:10-13).  The "Sturgis" product line has remained relatively stable at 20 percent of RP&G's profits over the years.  (Docket 316 at p. 28:2-11).

RP&G's profits from the "Sturgis Motor Classic" line of products increased at an annual growth rate of five percent between 2006 and 2014.  (Trial Exhibit 74A).  RP&G's profits from the "Sturgis Motor Classic" line increased from $385,318 to $536,739 during the same period.  Id.

On behalf of SMRI, a cease and desist letter dated August 8, 2006, was served on Paul Niemann and Carol Niemann.  (Exhibit 52).  The letter demanded the RP&G [D]efendants "discontinue the use of the terms, 'Sturgis Motor Classic,' " and " 'Officially Licensed Sturgis™' Products" because the Sturgis Chamber owned what it called the "STURGIS Logo."  Id. at pp. 1-2.  The letter claimed the "STURGIS Logo" had been owned as Registration No. 1,948,097 since January 16, 1996.  Id. at p. 2.

SMRI's complaint was not filed until June 22, 2011.  (Docket 1).

Until the filing of the complaint, the Sturgis Chamber, its successor-in-interest SMRI, and their major business members never asserted a claim of ownership to "STURGIS," "Sturgis Motor Classic" or the "Officially Licensed Sturgis™ Products" then being produced and marketed by the RP&G Defendants. (Docket 1).

Brian Niemann testified RP&G "specifically tried very hard to differentiate" its products with (i) a disclaimer expressly disavowing any affiliation with SMRI; (ii) the designation  SMC©; and (iii) identifying RP&G's webpage as the source of its merchandise.  (Docket 316 at p. 8:5-25).  RP&G used a color scheme on its tags to differentiate its products from SMRI.  Id. at p. 9:1-7.  SMRI went out of its way to make its tags similar to the tags of RP&G.  Id. at p. 9:5-7.

After the complaint was filed, RP&G permitted its state trademark applications and domain name registrations to lapse and

abandoned its federal trademark application for "Sturgis Motorcycle Classic." (Trial Exhibit 11). RP&G also stopped using "Officially Licensed Sturgis," "Licensed Sturgis," and "Authentic Sturgis." (Docket 316 at p. 81:4-11).

2.   Legal background

The Lanham Act specifically recognizes the equitable defenses of acquiescence and laches. "[T]he right to use [a] registered mark shall be . . . subject to the following defenses[:] . . . equitable principles, including laches, estoppel, and acquiescence, are applicable." 15 U.S.C. § 1115(b)(9)).

"Generally, where one party brings legal and equitable claims, the jury's factual determination is binding on the court's equitable determination." Blue Cross Blue Shield of Minnesota v. Wells Fargo Bank, N.A., 816 F.3d 1044, 1049 (8th Cir. 2016). "[W]hen legal and equitable actions are tried together, the right to a jury in the legal action encompasses the issues common to both." Id. (citing Song v. Ives Lab., Inc., 957 F.2d 1041, 1048 (2d Cir. 1992)). This principle is subject to waiver. Id. The question is whether the parties have "prospectively waived [the] ability to bind the court to the jury's verdict in a separately tried [equitable] claim." Id.

"When there are discrete legal and equitable claims, the common questions of fact on the legal claim must be tried first before a jury." 6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32:126 (4th ed.) (referencing Dairy Queen, Inc. v. Wood, 369 U.S. 469 (1962)). "[W]hen both legal and equitable issues are presented in the federal courts, the rule is 'jury issues come first.' " Id. "It is clear that a judge sitting at equity may not render a verdict which is inconsistent with that of a jury sitting at law on a

claim involving the same essential elements.  This is because '[w]hen legal and equitable actions are tried together, the right to a jury in the legal action encompasses the issues common to both.' "  <u>Song</u>, 957 F.2d at 1048 (citing <u>Lincoln v. Board of Regents of University System</u>, 697 F.2d 928, 934 (11th Cir. 1982) (citing <u>Dairy Queen</u>, 369 U.S. at 470-73).  "When a party has the right to a jury trial on an issue involved in a legal claim, the judge is of course bound by the jury's determination of that issue as it affects his disposition of an accompanying equitable claim."  <u>Lincoln</u>, 697 F.2d at 934.  "Where an irreconcilable inconsistency exists between a bench decision and a jury verdict on different claims arising out of the same transaction, the jury finding must take precedence in the Seventh Amendment context[.]"  <u>Perdoni Brothers, Inc. v. Concrete Systems, Inc.</u>, 35 F.3d 1, 5 (1st Cir. 1994).

A.   <u>Acquiescence</u>

The equitable defense of estoppel by acquiescence is "created by a plaintiff's knowing acquiescence in a defendant's activities."  <u>Minnesota Mining & Mfg. Co. v. Shurtape Technologies, Inc.</u>, No. CIV. 98-2134, 2001 WL 530551, at *7 (D. Minn. May 17, 2001).  Acquiescence occurs when a trademark holder "through affirmative word or deed, expressly or impliedly consents to the infringement."  <u>Id.</u> (referencing 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 32.105 (4th ed.).  The elements of estoppel applicable to an acquiescence defense in this case are:

(1)   knowledge by SMRI or its predecessors-in-interest of the RP&G Defendant's use of a mark;

(2)    SMRI's or its predecessors-in-interest's implied or express
       consent to the use of the mark by the RP&G Defendants; and

(3)    A change in position by the RP&G Defendants in reliance on
       the  conduct of SMRI or its predecessors-in-interest.

See Pennzoil-Quaker State Co. v. Miller Oil & Gas Operations, 779 F.3d 290,

294 (5th Cir. 2015) (the court analyzes the elements of acquiescence used by

the circuits).

1.    Analysis

       The jury made no finding of fact on any element of defendants' equitable

defense of acquiescence.  The court is free to resolve whether defendants'

acquiescence defense is applicable to SMRI's claims.

       While the 2006 cease and desist letter's statement was true as it relates

to the Composite Design Mark, SMRI's suggestion that registration for

STURGIS had been approved was not true and was deceptive.  In fact, the

"STURGIS Logo" was the Composite Design Mark.  (Exhibit 52 at p. 2).  The

Composite Design Mark registration specifically acknowledged that it made "no

claim . . . to the exclusive right to use 'MOTOR CLASSIC' or 'RALLY & RACES

BLACK HILLS S.D.' apart from the mark as shown."  (Exhibit 1 at p. 6) (some

capitalization omitted).

       On the matters relevant to this issue, the testimony of Brian Niemann

and Paul Niemann was unchallenged by SMRI or any of plaintiff's witnesses at

trial.  The court finds the testimony of Brian Niemann and Paul Niemann

credible on these matters.

It is incomprehensible that for over 10 years no one at Sturgis Bike Week, Inc., would have knowledge of these rally products being purchased at wholesale from RP&G and then being resold at retail in its own store. By purchasing "Sturgis" and "Sturgis Motor Classic" items from RP&G and then reselling them through its own retail locations, Sturgis Bike Week, Inc., expressly or impliedly represented that it would not assert a right or exclusive claim to use those terms. Sturgis Bike Week, Inc., acquiesced to RP&G's use of "Sturgis" and "Sturgis Motor Classic" during the time period before Sturgis Bike Week, Inc., assigned "Sturgis Bike Week" to the Sturgis Chamber. Minnesota Mining & Mfg. Co., 2001 WL 530551, at *7.

The same is true regarding the Sturgis Chamber. RP&G sold "Sturgis" rally products to the Sturgis Chamber dating back into the 1990s which the Chamber then sold at retail. It is incomprehensible that for over 20 years no one at the Sturgis Chamber would have knowledge of these rally products being purchased at wholesale from RP&G and then being resold at retail in its own store. By purchasing "Sturgis" and "Sturgis Motor Classic" items from RP&G and then reselling them through its own retail location, the Sturgis Chamber expressly or impliedly represented that it would not assert a right or exclusive claim to use those terms. The Sturgis Chamber acquiesced to RP&G's use of "Sturgis" and "Sturgis Motor Classic" during the time period from when Sturgis Bike Week, Inc., assigned "Sturgis Bike Week" to the Sturgis Chamber and ultimately to SMRI. Minnesota Mining & Mfg. Co., 2001 WL 530551, at *7.

The conduct of Sturgis Bike Week, Inc., and the Sturgis Chamber, both SMRI's predecessors-in-interest, satisfies the first two elements of the acquiescence defense.  <u>Pennzoil-Quaker State Co.</u>, 779 F.3d at 294.

The final element requiring resolution before the court may apply an acquiescence defense is that the defendants must show a "change in position based [on plaintiff's conduct] to [defendants'] injury, detriment or prejudice."  <u>Id.</u> at 2001 WL 530551, at *8.  Over the 1999-2006 time period, the RP&G Defendants continued to build their Sturgis product line and market to its customers, including Sturgis Bike Week, Inc., the Sturgis Chamber, Black Hills Harley, Good Sports, and Black Hills Rally & Gold.

There was no evidence presented at trial or now offered by SMRI indicating the reasons, if any, why plaintiff waited 4 years and 10 months to initiate litigation to protect SMRI's trademark claims.  The evidence presented at trial showed it was more probable than not had Sturgis Bike Week, Inc., and the Sturgis Chamber asserted their rights back in 1999 or shortly thereafter, or had SMRI filed its lawsuit shortly after the 2006 cease and desist letter, the growth and expansion of the "Sturgis" product line by the RP&G Defendants would not have occurred to the extent it did.  <u>Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.</u>, 182 F.3d 598, 602 (8th Cir. 1999) ("The defendant spent large sums in reliance upon its apparent immunity . . . . When for eight years one plans one's business on the assumption that one may use a mark, it is a grave dislocation of business to stop its use . . . .") (internal citations omitted).

It is disingenuous of SMRI to suggest the defendants "did not change their position in a way that would not have occurred had SMRI or its predecessors-in-interest notified them [or filed suit] . . . even sooner." (Docket 582 at p. 5) (internal quotation marks omitted). The RP&G Defendants held a good faith belief that they had the right to use the "Sturgis" marks, a belief ultimately vindicated by the Eighth Circuit in 2018. Notwithstanding that belief, once sued the RP&G Defendants promptly scaled back their business model by allowing state trademark applications to lapse, abandoning a federal trademark application and terminating the use of "Officially Licensed Sturgis," "Licensed Sturgis," and "Authentic Sturgis."

The RP&G Defendants have shown significant prejudice. <u>Id.</u> The court finds the facts satisfy the third element of the acquiescence defense. <u>Pennzoil-Quaker State Co.</u>, 779 F.3d at 294.

2.   <u>Conclusion</u>

The RP&G Defendants' equitable defense of estoppel by acquiescence is a meritorious defense to SRMI's trademark claims.

B.   <u>Laches</u>

"Laches is an equitable defense to an action to enforce a trademark." <u>Roederer v. J. Garcia Carrion, S.A.</u>, 569 F.3d 855, 858 (8th Cir. 2009). "Laches applies when a claimant inexcusably delays in asserting its claim and thereby unduly prejudices the party against whom the claim ultimately is asserted." <u>Id.</u> at 858-59. <u>See</u> <u>also</u> <u>Hubbard Feeds, Inc.</u>, 182 F.3d at 602 (same). "[L]aches denotes a merely passive consent, while acquiescence implies active consent."

6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 31:41 (4th ed.) (citations omitted).

"For laches, timeliness is the essential element." Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. 663, 685 (2014). "[T]he District Court, in determining appropriate injunctive relief . . . may take account of [plaintiff's] delay in commencing suit." Id. at 687. One reason for the consideration of timeliness "is the difficulty in proving damages long after the fact: Proving damages in infringement cases is notoriously difficult, and delay in bringing the question to court can increase those difficulties substantially. Another reason is the inequity of a plaintiff waiting for defendant to build up its business and profits and years later files suit and demands an accounting of those profits." 6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 31:4 (4th ed.) (internal quotation marks and citation omitted).

In order to prevail on a laches defense, the defendants are obligated to prove the following:

(1)    A delay [by SMRI] in asserting a right or a claim;

(2)    That the delay [by SMRI] was not excusable; and

(3)    That there was undue prejudice to the [RP&G Defendants] against whom the claim is asserted.

Roederer, 569 F.3d at 859. "In addition, in trademark suits, courts consider two additional factors when evaluating the merits of a laches defense: (1) the doctrine of progressive encroachment, and (2) notice to the defendant of the plaintiff's objections to the potentially infringing mark." Id.

56

"[U]nder the doctrine of progressive encroachment, the time of delay is to be measured not from when the plaintiff first learned of the potentially infringing mark, but from when such infringement became actionable and provable."  Id.  The laches defense is not available "when the defendant knew that the plaintiff objected to the use of the mark," as "[a]ny acts after receiving a cease and desist letter are at the defendant's own risk."  Id. (internal citation omitted).  "[T]he determination of whether laches applies . . . [is] a matter within the sound discretion of the district court . . . review[ed] . . . for an abuse of discretion."  Id. at 858 (internal citation omitted).  "Whether laches should be applied depends upon the facts of the particular case. . . ."  Id. (internal citation omitted).  "When a defendant has invested generally in an industry, and not a particular product, the likelihood of prejudicial reliance decreases in proportion to the particular product's role in the business."  Id. at 861.  The defense of laches is not available when "the defendant's investment was in an entire industry, not the plaintiff's particular mark."  Id. (internal citation omitted).

Courts have applied the doctrine of laches when a claimant delays enforcement of a trademark for any number of years depending upon the particular facts of each case.  See Tough Traveler, Ltd. v. Outbound Products, 60 F.3d 964, 968 (2d Cir. 1995) (one-year delay); MCV, Inc. v. King-Seeley Thermos Co., 870 F.2d 1568, 1571-72 (Fed. Cir. 1989) (four-year delay); Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 192-93 (2d Cir. 1996) (five-year delay); Hilton International Co. v. Hilton Hotels Corp., 888 F. Supp. 520,

535 (S.D.N.Y.1995) (eight-year delay); and Hubbard Feeds, Inc., 182 F.3d at
602 (9-year delay).  Although the expenditure of significant funds by a
defendant to build up a business or increase inventory is not dispositive,
"[w]hen . . . one plans one's business on the assumption that one may use a
mark, it is a grave dislocation of the business to stop its use . . . ."  Hubbard
Feeds, Inc., 182 F.3d at 602 (citing Hilton International Co., 888 F. Supp. at
535).

"Laches is an equitable defense.  The doctrine, therefore, is flexible; no
fixed or arbitrary period of time controls its applicability."  Hot Stuff Foods, LLC
v. Mean Gene's Enterprises, Inc., 468 F. Supp. 2d 1078, 1092 (D.S.D. 2006).
"In determining whether the doctrine of laches should bar a lawsuit, all the
particular circumstances of each case must be considered, including the length
of delay, the reasons for it, its effect on the defendant, and the overall fairness
of permitting the plaintiff to assert [its] action."  Id. at 1093.

1.    Analysis

The jury made no finding of fact on any element of defendants' equitable
defense of laches.  The court is free to resolve whether defendants' laches
defense is applicable to plaintiff's claims.

On August 8, 2006, the Sturgis Chamber sent a cease and desist letter to
the RP&G Defendants.  (Trial Exhibit 52).  The letter demanded the RP&G
Defendants "discontinue the use of the terms, 'Sturgis Motor Classic," and
"Officially Licensed Sturgis™ Products" because the Sturgis Chamber owned
what it called the "STURGIS Logo."  Id. at pp. 1-2.  The letter claimed the

STURGIS Logo had been owned as Registration No. 1,948,097 since January 16, 1996. Id. at p. 2.

While that statement is true as it relates to the Composite Design Mark, SMRI's suggestion that registration for STURGIS had been approved was not true and was deceptive. In fact, the "STURGIS Logo" was the Composite Design Mark. Id. The Composite Design Mark registration specifically acknowledged that it made "no claim . . . to the exclusive right to use 'MOTOR CLASSIC' or 'RALLY & RACES BLACK HILLS S.D.' apart from the mark as shown." (Exhibit 1 at p. 6) (some capitalization omitted).

SMRI presented no evidence at trial, or now for that matter, identifying the reasons, if any, why plaintiff waited 4 years and 10 months to initiate litigation to protect SMRI's trademark claims. By itself, this failure by SMRI to justify its delay in asserting its claims satisfies the first two elements of the laches defense. Roederer, 569 F.3d at 859.

After the 2006 cease and desist letter, RP&G continued to engage in the sale of "Sturgis" rally products in the good-faith belief that the term "Sturgis" was generic. Over the relevant time period, the RP&G Defendants continued to market its Sturgis product line to its customers, including the Sturgis Chamber, Black Hills Harley, Good Sports, and Black Hills Rally & Gold. RP&G expanded its employee workforce from only family members to 20 employees in 2015 and invested millions of dollars in its Sturgis-related rally products. (Docket 315 at p. 70:4-19; 71:8-15; 811:3-19; 816:16-20; 203:14-204:15; 207:24-209:2; Trial Exhibit 74a). Until the filing of the complaint, the

Sturgis Chamber and SMRI never asserted a claim of ownership to STURGIS, Sturgis Motor Classic or the "Officially Licensed Sturgis™ Products" then being produced and marketed by the RP&G Defendants.

The evidence discussed above regarding the acquiescence defense is equally relevant and applicable to the equitable defense of laches.  Again, the court finds the testimony of Paul Niemann and Brian Niemann credible on these matters.

The decision of the Eighth Circuit that the term "Sturgis" was generic, supports the court's finding that RP&G's belief that "Sturgis" was generic was a belief held in good faith.  SMRI v. RP&G, 908 F.3d at 333.  Without reciting all of the evidence set out in detail in Section G(1) above, the court finds it was more probable than not had the Sturgis Chamber and SMRI asserted their rights back in 1999, 2006 or shortly thereafter, the massive investment in and expansion of Sturgis rally lines by the RP&G Defendants would not have occurred to the extent it did.  Hubbard Feeds, Inc., 182 F.3d at 602.  The RP&G Defendants have shown significant prejudice.  Id.  The court finds the facts satisfy the third element of the laches defense.  Roederer, 569 F.3d at 859.

2.   Conclusion

The RP&G Defendants' equitable defense of estoppel by laches is a meritorious defense to SRMI's trademark claims.

60

C.     State Claim

1.     Deceptive Trade Practices

In South Dakota "[i]t is a deceptive act or practice for any person to . . . [k]nowingly and intentionally act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation . . . in connection with the sale or  advertisement of any merchandise[.]"  S.D.C.L. § 37-24-6(1). "Any person who claims to have been adversely affected by any act or a practice declared to be unlawful by § 37-24-6 shall be permitted to bring a civil action for the recovery of actual damages suffered as a result of such act or practice." S.D.C.L. § 37-24-31.

2.     Laches

South Dakota recognizes the affirmative defense of laches.  Lamar Advertising of South Dakota, Inc. v. Heavy Constructors, Inc., 745 N.W.2d 371, 375 (S.D. 2008).  To support the affirmative defense of laches in South Dakota,

> [It] must be found that, (1) [SMRI] had full knowledge of the facts upon which the action is based, (2) regardless of this knowledge, [SMRI] engaged in an unreasonable delay before commencing this suit, and (3) that allowing [SMRI] to maintain the action would prejudice [defendants].

Id. (citing Burch v. Bricker, 724 N.W.2d 604, 608 (S.D. 2006)).

3.     Conclusion

The RP&G Defendants' equitable defense of estoppel by laches is a meritorious defense to SRMI's deceptive trade practices claim based on the court's previous findings.

61

D.    Unclean hands

All defendants pled unclean hands as a separate equitable defense to
plaintiff's claims.  (Dockets 55 ¶ 67 & 60 ¶ 67).  The defendants argue "SMRI's
[own] unclean hands preclude recovery."  (Docket 578 at p. 38).  Defendants
contend "SMRI's deliberate decision to ignore multiple orders from this Court
and the Eighth Circuit is misconduct of 'serious proportions' that justifies a
finding of unclean hands."  Id. (citing Saxon v. Blann, 968 F.2d 676, 680 (8th
Cir. 1992) (internal citation omitted).

Because the Eighth Circuit upheld the jury verdict on SMRI's STURGIS
BIKE WEEK mark and the Composite Design Mark due to defendants' "willful
and intentional" infringement of those marks, SMRI argues defendants' own
unclean hands bar them from prevailing on their equitable defenses of
acquiescence and laches.[5]  (Docket 582 at pp. 4, 6 & 19).   SMRI submits
defendants have "the concept of 'unclean hands' backwards."  (Docket 582 at
p. 29).  SMRI argues "[u]nclean hands looks to the conduct of the *accused*, who
are asserting other defenses to avoid or minimize liability, not to the conduct of
the Plaintiff."  Id. (emphasis in original).  SMRI submits the unclean hands
doctrine "in practice . . . acts as a bar to the defenses of the violators of the
law."  Id. (referencing Hermes International v. Lederer de Paris Fifth Ave., Inc.,
219 F.3d 104, 107 (2d Cir. 2000); Abraham v. Alpha Chi Omega, 708 F.3d 614,

_____

[5]When addressing plaintiff's verdicts on its false advertising and unfair
competition claims, SMRI does not incorporate the elements of those claims
into its unclean hands argument.  See Docket 582 at pp. 23-30.

620 (5th Cir. 2013); National Lead Co. v. Wolfe, 223 F.2d 195, 202 (9th Cir. 1955)).

"[H]e who comes into equity must come with clean hands." Precision Instrument Mfg. Co. v. Automobile Maintenance Machinery Co., 324 U.S. 806, 814 (1945). "This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." Id. (internal citation omitted). "This maxim necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant. It is not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." Id. at 815 (internal quotation marks and citation omitted). The clean hands "doctrine is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith. This presupposes a refusal on [the court's] part to be 'the abetter of iniquity.'" Id. at 814. "[O]ne's misconduct need not necessarily have been of such a nature as to be punishable as a crime or as to justify legal proceedings of any character. Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim[.]" Id. at 815.

"[T]he unclean hands doctrine bars a party that acted inequitably from obtaining equitable relief[.]" Safeway Transit LLC v. Discount Party Bus, Inc., 954 F.3d 1171, 1181-82 (8th Cir. 2020) (internal citation omitted). "The

doctrine of 'unclean hands' bars a party who acted inequitably from obtaining equitable relief. . . . However, the party with unclean hands is not barred from opposing a request for equitable relief by the other side." Wyeth v. National Biologics, Inc., 395 F.3d 897, 902 (8th Cir. 2005) (internal citation omitted).

1.      Defendants' Conduct

Plaintiff bears "the burden of proving that [defendants'] hands were unclean." Conan Properties, Inc., v. Conans Pizza, Inc., 752 F.2d 145, 150 (Fifth Cir. 1985). "To foreclose the laches and acquiescence defenses, [SMRI] must offer something more than mere objective evidence to demonstrate that the defendant[s] employed the allegedly infringing mark with the wrongful intent of capitalizing on its goodwill." Conan Properties, Inc., 752 F.2d at 150 (internal citation omitted). SMRI's "burden . . . is [a] heavy [one]." Id.

The jury was not asked to determine whether the defendants were "intentional, bad faith infringer[s]." Id. "[T]he jury's findings of trademark infringement and unfair competition did not constitute a finding that [defendants] acted with the wrongful intent to capitalize on [SMRI's] goodwill, since wrongful intent is merely one of at least seven critical elements contributing to a finding of likelihood of confusion." Id. at 150. See also SMRI v. RP&G, 908 F.3d at 339 ("the standard of willfulness contained in the court's instruction is simply one of the many definitions that courts have used.") (referencing Western Diversified Services, Inc., v. Hyundai Motor America, Inc., 427 F.3d 1269, 1273-74 (10th Cir. 2005)).

Other willfulness standards consider (1) whether "the defendant deceives the plaintiff into thinking [defendant] has ceased infringing the trademark when in fact the illegal action continues, a finding of willfulness might be appropriate[;] . . . ." (2) "misrepresentation to the courts might constitute willful infringement[;] . . . ." and (3) "if the wrongdoer uses its own economic muscle to weaken a plaintiff who has threatened an infringement action, a finding of willfulness might be justified." Western Diversified Services, Inc., 427 F.3d at 1274. The jury was not presented with any evidence supportive of these alternative standards and SMRI does not now argue one or more of these alternative standards apply to the issues presently before the court.

    A.    RP&G Defendants

The RP&G Defendants willfully and intentionally infringed the Composite Design mark. SMRI v. RP&G, 908 F.3d at 339. That conclusion is based on a single product, a shot glass. Id. at 338. But, "the differences between the glass's design and the Monahan mark are so obvious," the Eighth Circuit ruled "the jury did not have any basis in the record [to support a] finding [the shot glass was] a counterfeit." Id. at 340. Other than the Composite Design mark itself and the shot glass, SMRI presented no evidence to support the jury's damages verdict on this infringement. Id. at 338.

The record does not support the jury's finding the RP&G Defendants infringed on SMRI's "STURGIS BIKE WEEK" mark "with the conscious intent to benefit from [SMRI's] goodwill or reputation." Id. at 344 (internal quotation marks omitted). The RP&G Defendants used the word "Sturgis" in the good

faith belief that SMRI's "STURGIS" mark was invalid.  When the RP&G
Defendants used "Sturgis" and "STURGIS MOTOR CLASSIC," they did so "in
the face of [SMRI's] disputed title" and they did so in good faith.  SMRI v.
RP&G, 908 F.3d at 344 (internal citation omitted).

　　　After 2006, the RP&G Defendants specifically employed its own labels
and tags to differentiate their products from SMRI's products.  See, i.e., Trial
Exhibits 239 and 276a.  Those labels confirmed the products were a "STURGIS
MOTOR CLASSIC" product and "not affiliated with, sponsored or endorsed by
SMRI."  Conan Properties, Inc., 752 F.2d at 150.  The court finds the RP&G
Defendants were subjectively intending to differentiate their products from
SMRI's products and not confuse buyers.  Id.  RP&G built its own goodwill with
its wholesale customers and consumers.  That goodwill was the basis of
RP&G's continuing use of its Sturgis designations in expanding its business
over decades.  RP&G Defendants' conduct did "not constitute 'willful
infringement.' "  SMRI v. RP&G, 908 F.3d at 344 (internal citation omitted).

　　　The court further finds "[t]he record . . . fails to reveal the subjective and
knowing bad faith necessary to foreclose the equitable defenses."  Conan
Properties, Inc., 752 F.2d at 151.  SMRI "has not carried its burden of proving
that [RP&G Defendants] subjectively and knowingly intended to use [their
marks] for the purpose of deriving benefit from [SMRI's] goodwill."  Id.

　　　Were the court to conclude the RP&G Defendants had unclean hands,
which the court has not done, SMRI failed to "prove that the defendant[s] [have]
engaged in particularly egregious conduct."  SMRI v. RP&G, 908 F.3d at 345

(internal citation omitted).  The court exercises its "discretion not to apply the doctrine of unclean hands."  Id. at 344.

The RP&G Defendants' conduct does not rise to the level of unclean hands so as to defeat the defendants' right to assert acquiescence and laches.

      B.    <u>Wal-Mart</u>

SMRI failed to present any evidence Wal-Mart was a "willful infringer." <u>Conan Properties, Inc.</u>, 752 F.2d at 150.  In 2011, the first year Wal-Mart carried any of RP&G's products, a manager observed the RP&G Defendants' tags disclaiming any relationship with SMRI but proclaiming the products to be "official Sturgis Motorcycle Rally products."  <u>SMRI v. RP&G</u>, 908 F.3d at 341. Even though the manager of the Rapid City Wal-Mart called SMRI's licensing agent and learned the RP&G products were not officially licensed by SMRI, Wal-Mart continued to sell RP&G's products with the RP&G Defendants' tags on them.  Id.  While this may have been bad business judgment on the part of Wal-Mart, the conduct does not rise to the level of "subjective . . . bad faith," <u>Conan Properties, Inc.</u>, 752 F.2d at 151, or "particularly egregious conduct." <u>SMRI v. RP&G</u>, 908 F.3d at 345.

Wal-Mart's conduct does not rise to the level of "unclean hands" so as to defeat that defendant's right to assert acquiescence and laches.

2.    <u>SMRI Conduct</u>

SMRI's argument that the court cannot examine plaintiff's conduct to determine if it has unclean hands is without merit.  "The defense of unclean hands will bar enforcement of a valid copyright when a plaintiff commits

wrongdoing 'of serious proportions.' " <u>Saxon</u>, 968 F.2d at 680 (internal citation omitted).  In <u>Saxon</u>, the court held "[t]he district court did not err in finding that Saxon's conduct barred him from enforcing his copyright[.]"  <u>Id.</u> Defendants bear "the burden of proving that [SMRI's] hands were unclean. <u>Conan Properties, Inc.,</u> 752 F.2d at 150.

    A.    <u>2001-2015</u>

To assess SMRI's conduct for equity purposes, the court is compelled to look back to 2001.  On May 8 of that year, an examining attorney with the PTO rejected the application by the Sturgis Chamber to register the term STURGIS. (Trial Exhibit 769 at pp. 544-51).  In arriving at the decision to reject the application, the examiner concluded "the mark is primarily geographically descriptive of the applicant's goods and services . . . . The primary significance of the term "STURGIS" is geographic, and the applicant's goods and services come from the geographical place named in the mark.  Therefore, a public association of the goods and services with the place is presumed. . . . The proposed mark is unregistrable on the Principal Register."  <u>Id.</u> at p. 546) (internal citations and references omitted).

On November 1, 2001, Marlin Martin, then-President of the Sturgis Chamber,  filed a sworn declaration with the PTO seeking reconsideration of the Chamber's application.  In his declaration, Mr. Martin stated he had "overall management responsibility for the activities of the Chamber, including the marketing and promotion of the STURGIS motorcycle rally (the "Rally") held each August in Sturgis, South Dakota, and the marketing, distribution and

sales of a variety of products in connection with the Rally by the Chamber and its authorized licensees." Id. at p. 583 ¶ 1; see also Trial Exhibit 540 ¶ 1.  Mr. Martin further stated that "[t]he Sturgis Chamber has used the STURGIS mark in commerce in connection with the promotion of motorcycle and vehicle rallies, exhibits and competitions and the promotion of the City of Sturgis and the Black Hills area of South Dakota and Wyoming since at least as early as July 1, 1986." (Trial Exhibit 769 at pp. 583-84 ¶ 2).  Mr. Martin's declaration concluded:

> It is my opinion that, as a result of the extensive marketing and promotional efforts of the Sturgis Chamber in connection with the Rally and the Sturgis Chamber's continuous and substantially exclusive use of the STURGIS mark in connection with the marketing and promotion of the Rally since at least as early as July 1, 1987, the purchasing public has come to identify the STURGIS mark with the source of the Sturgis Chamber's Rally Products and its Rally promotion and entertainment services and to recognize that the STURGIS mark distinguishes the Sturgis Chamber's Rally Products and promotion and entertainment services from those sold by others.

Id. at pp. 584-85 ¶ 4.

In its opposition to the Sturgis Chamber's application with the PTO, Sturgis Motorcycles, Inc., d/b/a Black Hills Harley-Davidson, d/b/a Sturgis Harley-Davidson (jointly referred to as "Sturgis Motorcycle") on December 11, 2002, declared under oath, among other things:

> Sturgis Motorcycles . . . have continuously used the name STURGIS in commerce on and in connection with the sale of "Rally Products"  . . . . at the Sturgis Motorcycle Rally . . . held in and around Sturgis, including Rapid City, SD, in the Black Hills area of South Dakota each year since at least 1981.  (Trial Exhibit 539 at p. 6 ¶ 1).

Sturgis Motorcycles . . . have continuously used the name
STURGIS in commerce in connection with the promotion of the
Rally including organizing and sponsoring events at the Rally since
at least 1991.  Id. ¶ 2.
. . .
Sturgis Motorcycles has had gross sales of Rally Products bearing
the name STURGIS totaling approximately $9 million since 2000.
Id. at p. 7 ¶ 9.
. . .
Many of over 700 vendors use the name STURGIS in connection
with the sale of Rally Products each year at the Rally.  Id. at p. 8
¶ 11.

Many of over 700 vendors use the name STURGIS in connection
with the promotion of the Rally.  Id. ¶ 12.

On December 11, 2002, Good Sports Sturgis, Inc., through its owner

Jerry Berkowitz, filed a separate notice of opposition to the Sturgis Chamber's

application with the PTO.  (Trial Exhibit 538).  The notice of opposition under

oath declared:

Good Sports has continuously used the name STURGIS in
commerce on or in connection with the sale of "Rally Products" as
defined in the Application, . . . at the Sturgis Motorcycle Rally . . .
since at least 1985.  Id. at pp. 5-6.

Good Sports has continuously used the name STURGIS in
promotion of the Rally since at least 1985.  Id. at p. 6.
. . .
[Sturgis Chamber] knows it has not used the name STURGIS
substantially exclusively in conjunction with the sale of Rally
related products in the five years preceding November 1, 2001.  Id.
at p. 12.

[Sturgis Chamber] has knowledge of the substantial use by others
of the name STURGIS in conjunction with the promotion of the
Rally.  Id.;

[Sturgis Chamber] knows that many of the over 700 vendors use
the name STURGIS on or in connection with Rally Products.  Id.;
and

> At least as early as 1990, [Sturgis Chamber] knew of Good Sports
> use of the name STURGIS in commerce in connection with the sale
> of Rally Products.  Id.

At trial, Jim Burgess, one of the owners of Sturgis Motorcycle,
testified his company told Mr. Martin four times before the Chamber's
application with the PTO was filed that Sturgis Motorcycle had been
making substantial use of STURGIS for two decades before November 1,
2001.  (Docket 336 at pp. 63:11-64:5; see also Trial Exhibit 539 ¶¶ 57-
64).  SMRI, as the successor of the Chamber, and Sturgis Motorcycle
reached an agreement to end their almost 10-year fight.  Trial Exhibit
514.  In exchange for Sturgis Motorcycle's withdrawal of its opposition to
the Chamber's original PTO application, SMRI agreed Sturgis Motorcycle
could use the STURGIS mark without any licensing agreement with
either the Chamber or SMRI.  Trial Exhibit 514; see also Docket 336 at
pp. 34:23-36:22.

Mr. Berkowitz testified at trial his companies, Good Sports and Hot
Leathers, operated in Sturgis.  (Docket 314 at pp. 71:13-17 & 72:19-23).  In an
agreement to dismiss his company's opposition to SMRI's application with the
PTO, Good Sports became the exclusive licensee of SMRI's trademarks.  Id. at
pp. 78:1-18; 81:7-10 & 116:9-13;  see also Trial Exhibits 167 & 165.  Mr.
Berkowitz also became a member of the board of directors of SMRI at its
inception as part of the deal.  (Docket 314 at p. 73:6-11).

Good Sports pays SMRI "to use their family of trademarks.  [His]
company does generate money from the sublicensee . . . contracts. . . . And

part of that royalty goes to Good Sports." (Docket 314 at p. 97:13-18).   Good Sports "licensed over 50 sublicensees in 2015 on Sturgis product[s]." Id. at p. 117:13-15.  Since 2011, Good Sports has generated $16.25 million in revenue from the Sturgis Rally.  Id. at p. 118:3-7.

After Sturgis Motorcycle and Good Sports withdrew their notices of opposition to SMRI's trademark applications, the PTO granted the "STURGIS" trademarks to SMRI.  (Trial Exhibits 16 & 17).

The court instructed the jury that whether SMRI's "STURGIS" registration was fraudulently obtained had to be "proven by clear and convincing evidence."  (Docket 235 at pp. 36 & 57).  The jury was required to consider whether "SMRI or the Sturgis Chamber . . . knowingly made inaccurate statements, misrepresentations or knowingly failed to disclose material information to the [PTO]. . . . with the intent to deceive the [PTO]." Id. at p. 36.  The jury by its verdict concluded SMRI had not obtained the STURGIS trademark registration fraudulently.  (Docket 263 at p. 2).

The Eighth Circuit best described Mr. Martin's submission to the PTO.

> The only way that Martin was able to assert that the Chamber had substantially exclusively used the word "Sturgis" for decades to promote the rally was by denying that virtually anyone else promoted it when they independently used the word to sell their own rally-related goods and services. . . . Although it was patently unreasonable for Martin to think that only Chamber-approved uses of the mark counted as rally-related uses, it was this logic that enabled him to tell the Trademark Office that the word "Sturgis" had become distinctive through the Chamber's substantially exclusive use of it in connection with the marketing and promotion of the rally.

> Martin's logic was so incoherent and self-serving that no
> reasonable jury could accept it. . . . The fact that non-Chamber-
> affiliated producers were using the word ["Sturgis"] on their rally-
> related products was directly relevant to whether the Chamber was
> its substantially exclusive user.   Martin, however, ignored those
> third-party uses since he believed that only the Chamber actually
> promoted the rally. But he had no right to declare that by fiat. . . .
> Martin thus had no right to declare that only the Chamber's
> promotions actually promoted the rally.   It is irrelevant to our
> conclusion here that the jury also found that Martin did not
> "knowingly" lie in his affidavit: A person can be indisputably, but
> sincerely, wrong.

SMRI v. RP&G, 908 F.3d at 328.  The appellate court's ruling frees the district

court from the jury's finding.

B.   2018-2020

On June 14, 2018, the Eighth Circuit ruled the STURGIS mark was

invalid.  SMRI v. RP&G, 908 F.3d at 333.  Since that date, SMRI continues to

irrationally assert its STURGIS marks are valid.  On February 15, 2019, the

court observed that "[n]otwithstanding the Eighth Circuit decision, SMRI

'continues to claim ownership of [STURGIS, STURGIS RALLY & RACES, and

STURGIS MOTORCYCLE RALLY], despite the Eighth Circuit's opinion that

Plaintiff insufficiently proved infringement against Defendants.' " (Docket 489

at pp. 4-5) (citing Docket 482 at pp. 3-4).  In response to SMRI's posturing, the

court stated: "SMRI's arguments fail.  *The word 'Sturgis' is not a valid*

*trademark.*  The terms STURGIS, STURGIS RALLY & RACES, and STURGIS

MOTORCYCLE RALLY when used by the defendants, or by anyone else for that

matter, *do not infringe on SMRI's marks.  SMRI is bound by this decision under*

*the doctrines of res judicata and collateral estoppel.*"  Id. at p. 7 (emphasis

added).

As part of defendants' motion to cancel the "Sturgis" registrations, the court was asked to take judicial notice of "SMRI's February 22, 2019 Status Report filing before the Trademark Trial and Appeal Board ("TTAB")."  (Docket 519 at p. 2) (citing Docket 496).  In a TTAB proceeding brought by Concerned Citizens of Sturgis, Inc., SMRI stated:

> Respondent states further that . . . the civil action for which the Board suspended this proceeding, Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc., et al. (5:11-cv-05052-JLV), has not yet reached finality and the Amended Order for Remand concluding that "the STURGIS mark is invalid" is subject to appeal and not based in law, such that [Concerned Citizens for Sturgis, Inc.'s] request for cancellation of U.S. Reg. Nos. 3,923,284 and 4,440,406 is not final or likely to become final. . . .
>
> In view of the foregoing, Respondent respectfully requests that the present cancellation remain suspended pending full resolution of the civil action.

(Docket 497-1 at pp. 1-2).

SMRI opposed defendants' motion for judicial notice.  (Docket 505). SMRI argued "[a]lthough the filing of the status report is indisputable, the contents of the report are not. . . . The issues contained in the status report are not capable of accurate and ready determination without supporting evidence or further argument and they can be reasonably questioned[.]"  Id. at p. 4. Based on its argument, SMRI asked the court to "take judicial notice only of the filing of the status report with the Trademark Trial and Appeal Board and *not consider the truth of the contents of the report.*"  Id. (emphasis added).

The court granted defendants' motion for judicial notice.  (Docket 519 at p. 23).  "In the proceeding before the TTAB, Concerned Citizens for Sturgis, Inc., seeks cancellation of the Sturgis mark."  (Docket 519 at p. 17 n.4)

74

(referencing TTAB, Cancellation 92054714, Docket #1).  In the TTAB proceeding "SMRI defends against cancellation alleging its Sturgis Registration No. 3,923,284 is and remains valid."  Id. (referencing TTAB, Cancellation 92054714, Document #2).

SMRI's statement and representations to the TTAB are patently misleading.   It is incomprehensible SMRI would suggest the court not look to the contents of plaintiff's filing with a federal agency for truthfulness.  See Fed. R. Civ. P. 11(b), 37 CFR § 2.116(a) & Roux Laboratories, Inc. v. La Cade Products Co., 558 F.2d 33 (C.C.P.A. 1977) (The Federal Rules of Civil Procedure are applicable to interparty proceedings before the TTAB).

During the same time period, defendants filed a motion for cancellation of the STURGIS registrations pursuant to 15 U.S.C. § 1119.  (Docket 493). SMRI opposed the motion.  (Docket 500).  SMRI again "argue[d] the court's declaration that the STURGIS mark is invalid is wrong because the court 'misreads the Eighth Circuit's [decision] by relying on it to make such declaration, as the Eighth Circuit merely cited Plaintiff for its failure to offer sufficient proof of validity, without going so far as to declare the mark invalid." (Docket 519 at p. 6) (citing Docket 500 at p. 3).

For the third time, on December 11, 2019, the court was compelled to remind SMRI that its "argument the STURGIS mark is still valid and can be enforced against others *ignores the 8th Circuit's holding that STURGIS is not a valid mark.*"  Id. at p. 12 (citing SMRI v. RP&G, 908 F.3d at 323 & 333).  To make it clear the court declared:

> The United States Court of Appeals for the Eighth Circuit has
> spoken.   *The STURGIS mark is invalid.* As long as the public
> records in the Patent and Trademark Office continue to represent
> that the STURGIS Registrations are valid, the public will be
> confused.   Section 1119 gives authority to the court to remove
> that confusion. . . . Because SMRI's STURGIS mark has been
> shown to be invalid, cancellation is not merely appropriate, it is
> the best course.

Id. at p. 13 (internal citations and quotation marks omitted).  The court found

"SMRI's continuing effort to perpetuate misleading assertions before the TTAB

are a calculated attempt to confuse not only the TTAB and USPTO but also the

public about the STURGIS Registrations."  Id. at p. 17.

Based on these findings and others made in the order, the court "ordered

the STURGIS mark evidenced by Registration Nos. 3,923,284 and 4,440,406 is

canceled and this order of cancellation is certified to the Director of the United

States Patent and Trademark Office so that appropriate entries may be made to

its records."  Id. at p. 23 (some capitalization omitted).  The court

> FURTHER ORDERED the United States Patent and Trademark
> Office is notified pursuant to Trademark Manual of Examining
> Procedure § 1610 that the following proceedings before the
> Trademark Trial and Appeal Board, namely:
>
> 1.   Concerned Citizens for Sturgis, Inc., v. Sturgis Motorcycle
>      Rally Inc., Cancellation No. 92054714; and
>
> 2.   Sturgis Motorcycle Rally, Inc., v. Sturgis Black Hills Rally
>      S.D., LLC, Opposition No. 91202965
>
> involve the STURGIS registrations.

Id.  A certified copy of the court's order was received by the Office of the

Solicitor of the PTO on December 16, 2019.  (Docket 522).

Despite the rulings of the Eighth Circuit and this district court, on January 24, 2020, SMRI continued to hold itself out as the owner of "Sturgis®," "Sturgis® Motorcycle Rally™," and "Sturgis Rally & Races™."  (Docket 529-6).  As part of its deception, SMRI's website intimidates or at least impliedly intimidates Sturgis Rally venders to "Apply to Become a Sturgis® Licensee" and "Fill out the form below to begin the Official Sturgis® Motorcycle Rally™ Brand licensing application process."   (Dockets 529-6 & 529-7) (some capitalization omitted).  These efforts by SMRI are a continuing "calculated attempt to confuse . . . the public about the STURGIS Registrations." (Docket 519 at p. 17).

In May 2020, the TTAB adopted SMRI's deceptive November 2019 submission and did not cancel the Sturgis registrations on the mistaken belief the cancellation order was an "interlocutory decision."  (Docket 562-4 at p. 2).  When challenged by the RP&G Defendants to "immediately correct its prior misrepresentations to the TTAB," SMRI did nothing.  (Dockets 561 at p. 6 & 562-5 at p. 3).

*For the fourth time, those three marks were invalided by the Eighth Circuit in 2018.*  The public has an interest in respect for court orders and a "right not to be deceived or confused" by SMRI's misrepresentations about its marks. <u>Community of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church</u>, 683 F. Supp. 2d 1006, 1018 (W.D. Mo. 2010).

During the August 2020 Sturgis Rally, at which an estimated 365,979 people attended,[6] SMRI continued its deception.  SMRI's website perpetuated the misconception that rally vendors had to "Fill out the form . . . to begin the Official Sturgis® Motorcycle Rally™ Brand licensing application process" and "Apply to Become a Sturgis® Licensee."   (Docket 579-2 at p. 2) (some capitalization omitted).  The website furthered perpetuated this deception by identifying as SMRI's intellectual property "Sturgis® When used in conjunction with The Sturgis® Motorcycle Rally™," "Sturgis® Motorcycle Rally™," and "Sturgis Rally & Races™."  Id. at p. 4.  SMRI through its sublicensee vendors continued to sell products with the "STURGIS®" on them.  See Docket 579-1 at pp. 1, 4 & 7-8.

SMRI does not come into this equity proceeding with clean hands. Precision Instrument Mfg. Co., 324 U.S. at 814.  Instead, SMRI "tainted" these proceedings with conduct which can only be described as "bad faith."  Id.  The court sitting in equity "refus[es] to aid [SMRI,] the unclean litigant" in its misrepresentations and deception.  Id.  SMRI's conduct since 2001 through trial, and after the Eighth Circuit decision through 2020 "transgress[es] [the] equitable standards of conduct" and candidness the court is entitled to require of litigants appearing before it.  Id. at 815.

Defendants satisfied their burden of proof as to SMRI's unclean hands. The court finds SMRI "acted inequitably" and is barred "from obtaining

---

[6]See https://www.rideapart.com/news/439496/sturgis-2020-attendance-crime-numbers/ (last visited January 13, 2021).

equitable relief." Safeway Transit LLC, 954 F.3d at 1181-82 (emphasis removed). SMRI's four claims of (1) trademark infringement of STURGIS BIKE WEEK under 15 U.S.C. § 1114; (2) trademark infringement of the Composite Design Mark under 15 U.S.C. § 1114; (3) false advertising under 15 U.S.C. § 1125(a)(1)(B); and (4) deceptive trade practices under SDCL §§ 37-24-6(1) & 37-24-31 must be dismissed.

3.    Defendants entitled to equitable defenses

In the event a reviewing court disagrees with the court's conclusion regarding SMRI's unclean hands, the court will identify whether each of the defendants can assert the equitable defenses of acquiescence and laches and to which claims remaining against that defendant.

A.    Rushmore Photo & Gifts

The court finds the conduct of the corporation, RP&G, prior to the October 30, 2015, did not "not constitute 'willful infringement.' "[7] SMRI v. RP&G, 908 F.3d at 344 (internal citation omitted). The court further finds "[t]he record . . . fails to reveal the subjective and knowing bad faith [on the part of the corporation] necessary to foreclose the equitable defenses." Conan Properties, Inc., 752 F.2d at 151. SMRI "has not carried its burden of proving [the corporation] subjectively and knowingly intended to use [its marks] for purpose of deriving benefit from [SMRI's] goodwill." Id.

_____

[7]This finding is not intended to suggest RP&G engaged in willful infringement after October 30, 2015. SMRI offers no evidence that such a claim existed then or now.

79

RP&G is entitled to assert both equitable defenses against all four of SMRI's claims.  See <u>San Francisco Association for the Blind v. Industrial Aid for the Blind</u>, 152 F.2d 532, 537 (8th Cir. 1946) ("The delay of plaintiff [eight years] in bringing this action . . . will, under the circumstances of this case, deprive the plaintiff of any right to damages or an accounting.") (referencing <u>Menendez v. Holt</u>, 128 U.S. 514, 523-25 (1888); <u>Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons</u>, 523 F.2d 1331, 1344 (2d Cir. 1975) (the court vacated money damages); <u>Minnesota Mining and Manufacturing Co. v. Beautone Specialties, Co., Ltd.</u>, 82 F. Supp. 2d 997, 1005 (D. Minn. 2000) ("The general rule is that a finding of laches bars a plaintiff's ability to recover for past wrongs[.]") (referencing <u>A.C. Aukerman Co. v. R.L. Chaides Construction Co.</u>, 960 F.2d 1020, 1040 (Fed. Cir. 1992) (*en banc*)).

The money damages awarded by the jury against RP&G on the claims of (1) trademark infringement of STURGIS BIKE WEEK under 15 U.S.C. § 1114; (2) trademark infringement of the Composite Design Mark under 15 U.S.C. § 1114; (3) false advertising under 15 U.S.C. § 1125(a)(1)(B); and (4) deceptive trade practices under SDCL §§ 37-24-6(1) & 37-24-31 are vacated.

B.    <u>Carol Niemann</u>

"A corporate officer is personally liable for the corporation's trademark infringement if the officer participates in that infringement." <u>Safeway Transit LLC v. Discount Party Bus, Inc.</u>, 334 F. Supp. 3d 995,  1007 (D. Minn. Aug. 13, 2018) (citing <u>Microsoft Corp. v. Ion Techs. Corp.</u>, No. 01-1769, 2003 WL 21356084, at *5 (D. Minn. May 30, 2003) ("An individual is liable for copyright

80

infringement if [s]he has the ability to supervise the infringing activity and a financial interest in that activity, or if [s]he personally participates in that activity.") (internal citation omitted) (affirmed by <u>Safeway Transit LLC v. Discount Party Bus, Inc.</u>, 954 F.3d 1171 (8th Cir. 2020)).

SMRI identified no case which prohibits the court from extending RP&G's right to invoke these equitable defenses on behalf of the corporation's board members and employees.  Application of the equitable defenses in this setting is within the discretion of the court.  <u>SMRI v.</u> RP&G, 908 F.3d at 343.

There is no evidence Carol Niemann engaged in any conduct outside of her corporate and employee status which would give rise to personal liability on SRMI's claims.  Carol Niemann's conduct does "not constitute 'willful infringement.' "[8] <u>SMRI v. RP&G</u>, 908 F.3d at 344 (internal citation omitted). The court further finds "[t]he record   . . . fails to reveal the subjective and knowing bad faith [by Carol Niemann] necessary to foreclose the equitable defenses." <u>Conan Properties, Inc.</u>, 752 F.2d at 151.  SMRI "has not carried its burden of proving that [Carol Niemann] subjectively and knowingly intended to use [RP&G's marks] for the purpose of deriving benefit from [SMRI's] goodwill." <u>Id.</u>  Carol Niemann is entitled to assert both equitable defenses against all four of SMRI's claims.  <u>San Francisco Association for the Blind</u>, 152 F.2d at 537 (internal references omitted).

---

[8]This finding is not intended to suggest Carol Niemann engaged in willful infringement after October 30, 2015.  SMRI offers no evidence that such a claim existed then or now.

The money damages awarded against Carol Niemann on the claims of
(1) trademark infringement of STURGIS BIKE WEEK under 15 U.S.C.
§ 1114; (2) trademark infringement of the Composite Design Mark under
15 U.S.C. § 1114; (3) false advertising under 15 U.S.C. § 1125(a)(1)(B); and
(4) deceptive trade practices under SDCL §§ 37-24-6(1) & 37-24-31 are vacated.

    C.    <u>Paul Niemann</u>

A significant portion of SMRI's evidence at trial focused on Paul
Niemann.  But there is no evidence Paul Niemann engaged in any conduct
outside of his corporate and employee status which gives rise to personal
liability on SRMI's claims.  The evidence of Paul Niemann's conduct developed
by SMRI does "not constitute 'willful infringement.' "[9] <u>SMRI v. RP&G</u>, 908 F.3d
at 344 (internal citation omitted).  The court further finds "[t]he record . . . fails
to reveal the subjective and knowing bad faith [by Paul Niemann] necessary to
foreclose the equitable defenses." <u>Conan Properties, Inc.</u>, 752 F.2d at 151.
SMRI "has not carried its burden of proving that [Paul Niemann] subjectively
and knowingly intended to use [RP&G's marks] for the purpose of deriving
benefit from [SMRI's] goodwill." <u>Id.</u>  Paul Niemann is entitled to assert both
equitable defenses against all four of SMRI's claims. <u>San Francisco Association</u>
<u>for the Blind</u>, 152 F.2d at 537 (internal references omitted).

The money damages awarded against Paul Niemann on the claims of
(1) trademark infringement of STURGIS BIKE WEEK under 15 U.S.C.

---

[9]This finding is not intended to suggest Paul Niemann engaged in willful infringement after October 30, 2015.  SMRI offers no evidence that such a claim existed then or now.

§ 1114; (2) trademark infringement of the Composite Design Mark under

15 U.S.C. § 1114; (3) false advertising under 15 U.S.C. § 1125(a)(1)(B); and

(4) deceptive trade practices under SDCL §§ 37-24-6(1) & 37-24-31 are vacated.

    D.   <u>Brian Niemann</u>

Even more than Paul Niemann, SMRI focused its evidence at trial on the

conduct of RP&G through Brian Niemann.  Once he took over product

development and retail relations for RP&G, Brian Niemann became the primary

corporate board member and employee whom SMRI alleged spawned plaintiff's

claims at trial.  Brian Niemann was adamant SMRI could not claim "Sturgis" as

its trademark and he maintained that claim, in good faith, before, during and

after trial.  The Eighth Circuit proved Brian Niemann was correct in his belief.

<u>SMRI v. RP&G</u>, 908 F.3d at 333 ("In sum, the jury's finding that the "Sturgis"

word mark is valid cannot stand[.]").

There is no evidence Brian Niemann engaged in any conduct outside of

his corporate and employee status which would give rise to personal liability on

SRMI's claims.  Brian Niemann's conduct does "not constitute 'willful

infringement.' "[10] <u>Id.</u>, at 344 (internal citation omitted).  The court further finds

"[t]he record . . . fails to reveal the subjective and knowing bad faith [by Brian

Niemann] necessary to foreclose the equitable defenses."  <u>Conan Properties,</u>

<u>Inc.</u>, 752 F.2d at 151.  SMRI "has not carried its burden of proving that [Brian

Niemann] subjectively and knowingly intended to use [RP&G's marks] for

---

[10]This finding is not intended to suggest Brian Niemann engaged in
willful infringement after October 30, 2015.  SMRI offers no evidence that such
a claim existed then or now.

purpose of deriving benefit from [SMRI's] goodwill." Id.  Brian Niemann is

entitled to assert both equitable defenses against all four of SMRI's claims.

San Francisco Association for the Blind, 152 F.2d at 537 (internal references

omitted).

The money damages awarded against Brian Niemann on the claims of

(1) trademark infringement of the STURGIS BIKE WEEK under 15 U.S.C.

§ 1114; (2) trademark infringement of the Composite Design Mark under

15 U.S.C. § 1114; (3) false advertising under 15 U.S.C. § 1125(a)(1)(B); and

(4) deceptive trade practices under SDCL §§ 37-24-6(1) & 37-24-31 are vacated.

E.    Wal-Mart

Wal-Mart did not develop or sell its own Sturgis rally products.  Wal-

Mart's association with Sturgis rally merchandise came through its

relationship with RP&G and its Sturgis Motor Classic products.  A Wal-Mart

representative did call SMRI about the differences in its merchandise tags and

those of RP&G.  SMRI v. RP&G, 908 F.3d at 341.  But Wal-Mart took RP&G at

its word for intellectual property issues associated with the Sturgis Motor

Classic merchandise.  (Docket 316 at pp. 128:5-129:17).

Equity demands Wal-Mart benefit from both defenses.  It would be

inequitable to permit SMRI to recover against Wal-Mart when RP&G is

protected by both equitable defenses.  Wal-Mart is not a "willful infringer."

Conan Properties, Inc., 752 F.2d at 150.  Wal-Mart's conduct did not rise to the

level of "subjective . . . bad faith," Id., at 151, or "particularly egregious

conduct."  SMRI v. RP&G, 908 F.3d at 345.  The court further finds "[t]he

84

record . . . fails to reveal the subjective and knowing bad faith [on the part of Wal-Mart] necessary to foreclose the equitable defenses." <u>Conan Properties, Inc.</u>, 752 F.2d at 151.  SMRI "has not carried its burden of proving that [Wal-Mart] subjectively and knowingly intended to use [RP&G's marks] for purpose of deriving benefit from [SMRI's] goodwill." <u>Id.</u>  Wal-Mart is entitled to assert both equitable defenses against all four of SMRI's claims.  <u>San Francisco Association for the Blind</u>, 152 F.2d at 537 (internal references omitted).

The money damages awarded by the jury against Wal-Mart on the claims of (1) trademark infringement of STURGIS BIKE WEEK under 15 U.S.C. § 1114; (2) trademark infringement of the Composite Design Mark under 15 U.S.C. § 1114; (3) false advertising under 15 U.S.C. § 1125(a)(1)(B); and (4) deceptive trade practices under SDCL §§ 37-24-6(1) & 37-24-31 are vacated.

**IV.**                                        **ORDER**

Based on the above analysis, it is

ORDERED that SMRI's motion to extend the discovery deadline (Docket 549) is denied.

IT IS FURTHER ORDERED that SMRI's motion to dismiss the ACPA claim (Docket 569) is denied.

IT IS FURTHER ORDERED that defendants' motion for judicial notice (Docket 559) is granted.

IT IS FURTHER ORDERED that defendants' motion for summary judgment (Docket 550) is granted.

IT IS FURTHER ORDERED that SMRI's ACPA claim (Docket 52 at p. 13) is dismissed with prejudice.

IT IS FURTHER ORDERED that defendants' motion to strike SMRI's jury demand on its ACPA claim (Docket 563) is denied as moot.

IT IS FURTHER ORDERED that the motion of RP&G for damages for an improvidently issued amended preliminary injunction (Docket 537) is granted.

IT IS FURTHER ORDERED that Rushmore Photos & Gifts, Inc., is entitled to a money judgment against Sturgis Motorcycle Rally, Inc., in the amount of $282,341.

IT IS FURTHER ORDERED that the motion of RP&G asking the court to find SMRI in contempt of court (Docket 548 at p. 10) is denied as moot.

IT IS FURTHER ORDERED that defendants' motion asking the court to issue an order to show cause (Docket 538 at pp. 22-23) is granted.  A separate order to show cause as to why SMRI should not be held in contempt of court for its failure to failure to pay $17,053.24 awarded to the defendants as attorneys' fees by a March 20, 2017, order, (Docket 421), as confirmed by the February 15, 2019, order, (Docket 489 at p. 12), will issue.

IT IS FURTHER ORDERED that defendants' motion for the application of equitable defenses (Docket 276) is granted.

IT IS FURTHER ORDERED that SMRI is barred from recovering damages from the defendants for the time period prior to October 30, 2015.

IT IS FURTHER ORDERED that the money judgment (Docket 269) in favor of plaintiff Sturgis Motorcycle Rally, Inc., and against the defendants

Rushmore Photo & Gifts, Inc., for the sum of $68,750; Carol Niemann for the

sum of $68,750; Paul A. Niemann for the sum of $68,750; Brian M. Niemann

for the sum of $68,750; and Wal-Mart Stores, Inc., for the sum of $105,000, is

vacated.

Dated March 29, 2021.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE